**CASE NO. 25-3225**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

Cozy Inn, Incorporated,
d/b/a The Cozy Inn, *et al*.

Plaintiffs-Appellees,

v.

City of Salina, Kansas

Defendant-Appellant.

---

On Appeal from the United States District Court
For the District of Kansas
The Honorable Judge Toby Crouse
D.C. No. 6:24-cv-01027-TC

---

**APPENDIX OF APPELLANT CITY OF SALINA, KANSAS**
**Volume 16 of 16, Pages 1-85**

---

Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com
*Attorneys for Defendant-Appellant*
*City of Salina, Kansas*

Date: February 23, 2026

**TABLE OF CONTENTS**

D.C. No. 6:24-cv-01027-TC (D. Kan): Relevant Docket Entries


| Volume No. | Page No. | Doc No. | Title of Pleading | Filer | Date of Filing |
|---|---|---|---|---|---|
| **Volume 1, Pages 1- 292** | | | | | |
| Volume 1 | 7 | | Civil Docket Sheet for Case No. 24-cv-01027-TC | | |
| Volume 1 | 26 | 16 | Verified Amended Complaint for Declaratory Judgment and Injunctive Relief; Designation of Place of Trial; Verification; Exhibits A-D | Plaintiffs | 04/10/24 |
| Volume 1 | 177 | 26 | Defendant's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) | Defendant | 05/09/24 |
| Volume 1 | 180 | 27 | Brief in Support of Defendant's Motion to Dismiss | Defendant | 05/09/24 |
| Volume 1 | 195 | 31 | Plaintiffs' Opposition to Defendant's Motion to Dismiss | Plaintiffs | 05/30/24 |
| Volume 1 | 211 | 33 | Reply Brief in Support of Defendant's Motion to Dismiss | Defendant | 06/13/24 |
| Volume 1 | 216 | 97 to 97-4 | Plaintiffs' Motion to Strike or Exclude Opinions of Attorney Mark White; Index of Exhibits; Exhibits A-C | Plaintiffs | 12/20/24 |
| **Volume 2, Pages 1-275** | | | | | |
| Volume 2 | 7 | 97-5 to 97-7 | Exhibits D-F to Plaintiffs' Motion to Strike or Exclude Opinions of Attorney Mark White | Plaintiffs | 12/20/24 |

| | | | | | |
|---|---|---|---|---|---|
| Volume 2 | 57 | 98 | Defendant's Motion to Exclude Plaintiffs' Rebuttal Expert Pursuant to F.R.E. 702 with Exhibits | Defendant | 12/20/24 |
| Volume 2 | 183 | 99 to 99-5 | Plaintiffs' Response to Defendant's Motion to Exclude Plaintiffs' Rebuttal Expert; Index of Exhibits; Exhibits A-D | Plaintiffs | 01/10/25 |
| **Volume 3, Pages 1-288** | | | | | |
| Volume 3 | 7 | 99-6 to 99-10 | Exhibits E-I to Plaintiffs' Response to Defendant's Motion to Exclude Plaintiffs' Rebuttal Expert | Plaintiffs | 01/10/25 |
| Volume 3 | 80 | 100 | Defendant's Response to Plaintiffs' Motion to Strike or Exclude Opinions of Attorney Mark White with Exhibits | Defendant | 01/10/25 |
| Volume 3 | 104 | 101 | Amended Pretrial Order | Court | 01/16/25 |
| Volume 3 | 125 | 102 | Plaintiffs' Reply Brief; Index of Exhibits; Exhibit A; Certificate of Service | Plaintiffs | 01/24/25 |
| Volume 3 | 133 | 103 | Defendant's Reply in Support of its Motion to Exclude (ECF 98) with Exhibits | Defendant | 01/24/25 |
| Volume 3 | 286 | 104 | Plaintiffs' Motion for Summary Judgment; Request for Oral Argument; Certificate of Service | Plaintiffs | 02/07/25 |
| **Volume 4, Pages 1-262** | | | | | |
| Volume 4 | 7 | 105 to 105-12 | Plaintiffs' Memorandum in Support of their Motion for Summary Judgment; Exhibits A-L | Plaintiffs | 02/07/25 |
| **Volume 5, Pages 1-275** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Volume 5 | 7 | 105-13 to 105-28 | Exhibits M-BB to Plaintiffs' Memorandum in Support of their Motion for Summary Judgment | Plaintiffs | 02/07/25 |
| **Volume 6, Pages 1-220** | | | | | |
| Volume 6 | 7 | 105-29 to 105-36 | Exhibits CC-JJ and Index of Exhibits to Plaintiffs' Memorandum in Support of their Motion for Summary Judgment | Plaintiffs | 02/07/25 |
| **Volume 7, Pages 1-278** | | | | | |
| Volume 7 | 7 | 105-37 to 105-39 | Exhibits KK-LL; Index of Exhibits to Plaintiffs' Memorandum in Support of their Motion for Summary Judgment | Plaintiffs | 02/07/25 |
| Volume 7 | 37 | 106 | Defendant's Motion for Summary Judgment | Defendant | 02/07/25 |
| Volume 7 | 40 | 107 to 107-11 | Brief in Support of Defendant's Motion for Summary Judgment; Index of Exhibits; Exhibits A-J | Defendant | 02/07/25 |
| **Volume 8, Pages 1-266** | | | | | |
| Volume 8 | 7 | 107-12 to 107-21 | Exhibits K-T to Defendant's Motion for Summary Judgment | Defendant | 02/07/25 |
| Volume 8 | 91 | 108 to 108-5 | Plaintiffs' Response to Salina's Motion for Summary Judgment; Exhibits A-E | Plaintiffs | 02/28/25 |
| **Volume 9, Pages 1-259** | | | | | |
| Volume 9 | 7 | 108-6 to 108-25 | Exhibits F-Y of Plaintiffs' Response to Salina's Motion for Summary Judgment | Plaintiffs | 02/28/25 |
| **Volume 10, Pages 1-259** | | | | | |
| Volume 10 | 7 | 108-26 to 108-36 | Exhibits Z-JJ of Plaintiffs' Response to Salina's Motion for Summary Judgment | Plaintiffs | 02/28/25 |
| **Volume 11, Pages 1-251** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Volume 11 | 7 | 108-37 to 108-42 | Exhibits KK-OO and Index of Exhibits to Plaintiffs' Response to Salina's Motion for Summary Judgment | Plaintiffs | 02/28/25 |
| Volume 11 | 103 | 109 to 109-4 | Response to Plaintiffs' Motion for Summary Judgment; Index of Exhibits and Exhibits 1-3 | Defendant | 02/28/25 |
| **Volume 12, Pages 1-252** | | | | | |
| Volume 12 | 7 | 109-5 to 109-16 | Exhibits 4-15 to Response to Plaintiffs' Motion for Summary Judgment | Defendant | 02/28/25 |
| **Volume 13, Pages 1-283** | | | | | |
| Volume 13 | 7 | 109-17 to 109-25 | Exhibits 16-24 of Response to Plaintiffs' Motion for Summary Judgment | Defendant | 02/28/25 |
| Volume 13 | 168 | 110 | Plaintiffs' Motion to Correct or Supplement Plaintiffs' Memorandum in Support of their Motion for Summary Judgment; Exhibit MM; Corrected Index of Exhibits | Plaintiffs | 03/05/25 |
| Volume 13 | 176 | 112 to 112-10 | Plaintiffs' Reply in Support of Motion for Summary Judgment; Exhibits A-J | Plaintiffs | 03/14/25 |
| **Volume 14, Pages 1-270** | | | | | |
| Volume 14 | 7 | 112-11 to 112-28 | Exhibits K-AA of Plaintiffs' Reply in Support of Motion for Summary Judgment; Index of Exhibits | Plaintiffs | 03/14/25 |
| **Volume 15, Pages 1-271** | | | | | |
| Volume 15 | 7 | 113 | Defendant's Reply in Support of Motion for Summary Judgment with Exhibits; Index of Exhibits | Defendant | 03/14/25 |

| | | | | | |
|---|---|---|---|---|---|
| Volume 15 | 245 | 114 | Defendant's Motion to Correct or Supplement Defendant's Response to Plaintiffs' Motion for Summary Judgment (ECF 109) with Exhibit | Defendant | 03/28/25 |
| Volume 15 | 262 | 117 | Plaintiffs' Notice of Supplemental Authority; Certificate of Service | Plaintiffs | 05/30/25 |
| Volume 15 | 264 | 118 | Response to Plaintiffs' Notice of Supplemental Authority | Defendant | 06/04/25 |
| Volume 15 | 267 | 119 | Order (Regarding Defendant's Motion to Dismiss) | Court | 06/20/25 |
| Volume 15 | 269 | 120 | Plaintiffs' Notice Regarding Non-Party Injunctive Relief; Certificate of Service | Plaintiffs | 06/30/25 |
| **Volume 16, Pages 1-85** | | | | | |
| Volume 16 | 7 | 121 | Answer to Verified Amended Complaint for Declaratory Judgment and Injunctive Relief | Defendant | 07/07/25 |
| Volume 16 | 47 | 136 | Memorandum and Order (Regarding Motions for Summary Judgment and Motions to Exclude Expert Testimony) | Court | 11/19/25 |
| Volume 16 | 82 | 139 | Notice of Appeal | Defendant | 12/18/25 |
| Volume 16 | 84 | 148 | Judgment in a Civil Case | Court | 01/07/26 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Cozy Inn, Incorporated,<br>d/b/a The Cozy Inn; Stephen Howard,<br><br>Plaintiffs,<br><br>v.<br><br>City of Salina, Kansas,<br><br>Defendant. | Civil Action No.<br><br>6:24-cv-01027-TC-ADM |

**ANSWER TO VERIFIED AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Defendant, City of Salina, Kansas ("Defendant" or "City"), by and through its attorneys Fairfield and Woods, P.C., and Clark, Mize & Linville, Chartered, hereby Answers Plaintiffs, Cozy Inn, Incorporated, d/b/a The Cozy Inn and Stephen Howard's ("Plaintiffs") Verified Amended Complaint for Declaratory Judgment and Injunctive Relief; and Designation of Place of Trial (the "Amended Complaint") as follows:

The Court's Order (ECF 119) noted that the Pre-Trial Order supersedes the pleadings. The Amended Pre-Trial Order (ECF 101) contemplated that the City would file an Answer. Accordingly, the City submits this Answer out of an abundance of caution, and states that by submitting the Answer to the Amended Complaint it does not intend to alter the Amended Pre-Trial Order (ECF 101).

1. Paragraph 1 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the statements set forth in paragraph 1, and specifically denies that the sign on the North wall of The Cozy Inn

("Cozy Sign") is a mural, and that the phrase "mural-sign code regime" is an appropriate characterization of the City's Sign Code.[1]

2. The City admits only that on November 6, 2023, the City informed Mr. Howard the Cozy Sign was too big to qualify for a sign permit. The City denies all other allegations and statements set forth in paragraph 2 of the Amended Complaint.

3. The City denies the allegations set forth in paragraph 3 of the Amended Complaint. The first sentence of paragraph 3 of the Amended Complaint does not set forth factual allegations to which a response is required and to the extent a response is required, the City denies the same as it is unclear what Plaintiffs mean using the term "mural."

4. The City denies the allegations set forth in paragraph 4 of the Amended Complaint.

5. Paragraph 5 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City admits that the Complaint does not include a claim for damages, and denies all other allegations in paragraph 5.

6. The City admits the allegations set forth in paragraph 6 of the Amended Complaint.

7. The City admits the allegations set forth in paragraph 7 of the Amended Complaint.

8. The City admits the allegations set forth in paragraph 8 of the Amended Complaint.

[1] The City regulates signs through the Salina Code of Ordinances ("Salina Code") Chapter 42 Article X, along with related definitions in Chapter 42 Article XIV ("Sign Code"). The City denies all of Plaintiffs' allegations that characterize the Sign Code as the "mural-sign code regime."

9. The City admits the allegations set forth in paragraph 9 of the Amended Complaint.

10. The City is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 10 of the Amended Complaint, and, accordingly, deny the same.

11. Paragraph 11 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the allegations set forth in paragraph 11 of the Amended Complaint.

12. Paragraph 12 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the allegations set forth in paragraph 12 of the Amended Complaint.

13. The City admits this Court has jurisdiction as set forth in the Amended Pre-Trial Order (ECF 101). The City denies it has deprived Plaintiffs of any constitutional rights.

14. The City admits that venue is proper pursuant to 28 U.S.C. § 1391. The City denies the remaining allegations set forth in paragraph 14 of the Amended Complaint.

15. The City admits the Cozy is located in downtown Salina, the City admits the Cozy has served sliders (which are also referred to as hamburgers) for more than 100 years. The City denies the remaining allegations set forth in paragraph 15 of the Amended Complaint.

16. The City admits the Cozy serves around 45,000 customers a year. The remaining statements in paragraph 16 of the Amended Complaint do not set forth factual allegations to which a response is required, and to the extent a response is required, the City denies the same.

17. The City admits the allegations set forth in paragraph 17 of the Amended Complaint, except to the extent that they imply that Steve Howard is the sole owner of the Cozy (Steve Howard is a co-owner of the Cozy).

18. The City admits the allegations set forth in paragraph 18 of the Amended Complaint.

19. The City admits the allegations set forth in paragraph 19 of the Amended Complaint.

20. The City admits that the paint on the walls at the Cozy was white, but as the walls contained other signs, the City denies the remaining allegations set forth in paragraph 20 of the Amended Complaint.

21. The City denies the allegations set forth in paragraph 21 of the Amended Complaint.

22. The City admits the allegations contained in the first sentence of paragraph 22 of the Amended Complaint. Respecting the second sentence, the City admits that the Cozy has a distinctive pungent onion-esque aroma. The City is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 22 of the Amended Complaint and accordingly denies the same.

23. The City denies the allegations set forth in paragraph 23 of the Amended Complaint.

24. The City denies the allegations set forth in paragraph 24 of the Amended Complaint.

25. The City admits that Plaintiffs started painting the Cozy Sign on November 3, 2023. The City denies the remaining allegations set forth in paragraph 25 of the Amended Complaint.

26. The City admits only that on November 6, 2023, the City informed Mr. Howard the Cozy Sign was a sign and was too big to qualify for a sign permit. The City denies all other allegations set forth in paragraph 26 of the Amended Complaint.

27. The City admits that the photograph contained in paragraph 27 of the Amended Complaint is an accurate representation of the state of the sign as of November 6, 2023. The City denies all other allegations set forth in paragraph 27 of the Amended Complaint.

28. The City admits only that the photograph contained in paragraph 28 of the Amended Complaint is what Plaintiffs intend to be the final sign painted on the wall. The City denies the remaining allegations set forth in paragraph 28 of the Amended Complaint.

29. The City admits the first sentence of paragraph 29 of the Amended Complaint. Respecting the second sentence of paragraph 29, the City only admits that the quotations are from statements purportedly made by Mr. Howard in a news article and the article speaks for itself. The City denies all other allegations set forth in paragraph 29 of the Amended Complaint.

30. The City denies the allegations set forth in paragraph 30 of the Amended Complaint.

31. The City admits that it regulates signs through its written Sign Code, which is codified in the Salina Code and speaks for itself. The City denies the remaining allegations set forth in paragraph 31 of the Amended Complaint.

32. The City denies the allegations set forth in paragraph 32 of the Amended Complaint.

33. The City denies the allegations set forth in paragraph 33 of the Amended Complaint.

34. The City denies the allegations set forth in paragraph 34 of the Amended Complaint.

35. The City denies the allegations set forth in paragraph 35 of the Amended Complaint, as they do not refer to all of the provisions of the City Code that define and regulate signs.

36. The allegations set forth in paragraph 36 of the Amended Complaint contain characterization and/or argument of counsel to which no response is required. To the extent a response is required, the City admits only that the text of Salina Code Sec. 42-764, which is copied and pasted into the body of paragraph 36 of the Amended Complaint and speaks for itself, is accurate. The City denies the remaining allegations set forth in paragraph 36 of the Complaint.

37. The City denies the allegations set forth in paragraph 37 of the Amended Complaint.

38. The City denies the allegations set forth in paragraph 38 of the Amended Complaint.

39. The City denies the allegations set forth in paragraph 39 of the Amended Complaint.

40. The allegations set forth in paragraph 40 of the Amended Complaint contain characterization and/or argument of counsel to which no response is required. To the extent a

response is required, the City admits only that the quoted text of Salina Code Sec. 42-504(1), (8), (9), which is codified and speaks for itself, is accurate. The City denies the remaining allegations set forth in paragraph 40 of the Amended Complaint.

41. The City admits that the text of Salina Code Sec. 42-781, which is copied and pasted into the body of paragraph 41 of the Amended Complaint and speaks for itself, is accurate.

42. The City admits the allegations set forth in paragraph 42 of the Amended Complaint.

43. The City admits that size limitations are applied by zoning district. The City denies all other allegations set forth in paragraph 43 of the Amended Complaint.

44. The City denies the allegations set forth in paragraph 44 of the Amended Complaint. The Sign Code applies to displays that announce, direct attention to or advertise. The Sign Code is codified and speaks for itself.

45. The City denies the allegations set forth in paragraph 45 of the Amended Complaint.

46. The City denies the allegations set forth in paragraph 46 of the Amended Complaint. The Sign Code is codified and speaks for itself.

47. The City admits the allegations set forth in paragraph 47 of the Amended Complaint.

48. The City admits the allegations set forth in paragraph 48 of the Amended Complaint.

49. The City denies the allegations set forth in paragraph 49 of the Amended Complaint.

50. The City denies the allegations set forth in paragraph 50 of the Amended Complaint.

51. The City denies the allegations set forth in paragraph 51 of the Amended Complaint.

52. The City denies the allegations set forth in paragraph 52 of the Amended Complaint.

53. The City denies the allegations set forth in paragraph 53 of the Amended Complaint.

54. The City denies the allegations set forth in paragraph 54 of the Amended Complaint.

55. The City denies the allegations set forth in paragraph 55 of the Amended Complaint.

56. The City denies the allegations set forth in paragraph 56 of the Amended Complaint. Salina Code § 42-502(b) is codified and speaks for itself.

57. The City denies the allegations set forth in paragraph 57 of the Amended Complaint.

58. The City admits the allegations set forth in paragraph 58 of the Amended Complaint.

59. The City denies the allegations set forth in paragraph 59 of the Amended Complaint. Salina Code § 2-207(a) is codified and speaks for itself. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

60. The City denies the allegations set forth in paragraph 60 of the Amended Complaint. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

61. The City denies the allegations set forth in paragraph 61 of the Amended Complaint. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

62. The City denies the allegations set forth in paragraph 62 of the Amended Complaint. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

63. The City denies the allegations set forth in paragraph 63 of the Amended Complaint. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

64. The City denies the allegations set forth in paragraph 64 of the Amended Complaint. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

65. The City denies the allegations set forth in paragraph 65 of the Amended Complaint. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

66. Salina Code § 42-599 is codified and speaks for itself. The City denies the allegations set forth in paragraph 66 of the Amended Complaint.

67. The City admits only that the penalty provisions of Salina Code § 1-10 apply to violations of Salina Code § 2-200, *et seq*. Salina Code § 2-200, *et seq*. and § 1-10 are codified and speak for themselves. The City denies the remaining allegations set forth in paragraph 67 of the Amended Complaint. Further, allegations regarding Salina Code § 2-200, *et seq*., are moot.

68. The City denies the allegations set forth in paragraph 68 of the Amended Complaint, as it is unclear what Plaintiffs are referring to by use of the phrase "mural scene," and the terms "thriving" and "dynamic" are subjective.

69. The City denies the allegations set forth in paragraph 69 of the Amended Complaint.

70. The City denies the allegations set forth in paragraph 70 of the Amended Complaint.

71. The City denies the allegations set forth in paragraph 71 of the Amended Complaint. Further, allegations regarding the Certificate of Compatibility and Salina Code § 2-200, *et seq*., are moot.

72. The City denies the allegations set forth in paragraph 72 of the Amended Complaint. Further, allegations regarding the Certificate of Compatibility and Salina Code § 2-200, *et seq*., are moot.

73. The City denies the allegations set forth in paragraph 73 of the Amended Complaint.

74. The photograph contained in paragraph 74 of the Amended Complaint speaks for itself. The City admits that the photograph contained in paragraph 74 of the Amended Complaint is an accurate representation of the display located at Fire Station # 2. The City denies the remaining allegations set forth in paragraph 74 of the Amended Complaint, specifically Plaintiffs' characterization and use of term mural.

75. The City denies the allegations set forth in paragraph 75 of the Amended Complaint.

76. The City denies the allegations set forth in paragraph 76 of the Amended Complaint, specifically Plaintiffs' characterization and use of term mural.

77. The City denies the allegations set forth in paragraph 77 of the Amended Complaint.

78. The City denies the allegations set forth in paragraph 78 of the Amended Complaint.

79. The City denies the allegations set forth in paragraph 79 of the Amended Complaint.

80. The City denies the allegations set forth in paragraph 80 of the Amended Complaint.

81. The City denies the allegations set forth in paragraph 81 of the Amended Complaint.

82. The City denies the allegations set forth in paragraph 82 of the Amended Complaint.

83. The City denies the allegations set forth in paragraph 83 of the Amended Complaint.

84. The City denies the allegations set forth in paragraph 84 of the Amended Complaint.

85. The City denies the allegations set forth in paragraph 85 of the Amended Complaint.

86. The City denies the allegations set forth in paragraph 86 of the Amended Complaint.

87. The City denies the allegations set forth in paragraph 87 of the Amended Complaint.

88. The City denies the allegations set forth in paragraph 88 of the Amended Complaint.

89. The City denies the allegations set forth in paragraph 89 of the Amended Complaint.

90. The City denies the allegations set forth in paragraph 90 of the Amended Complaint. The photo in paragraph 90 of the Amended Complaint shows two displays, one is the University of Kansas School of Medicine and School of Nursing Salina Campus sign, which is a permitted sign.

91. The City denies the allegations set forth in paragraph 91 of the Amended Complaint.

92. The City denies the allegations set forth in paragraph 92 of the Amended Complaint. The photo in paragraph 90 of the Amended Complaint shows two displays, one is the University of Kansas School of Medicine and School of Nursing Salina Campus sign, which is a permitted sign.

93. The City denies the allegations set forth in paragraph 93 of the Amended Complaint.

94. The City denies the allegations set forth in paragraph 94 of the Amended Complaint.

95. The City denies the allegations set forth in paragraph 95 of the Amended Complaint. The photo in paragraph 90 of the Amended Complaint shows two displays, one is

the University of Kansas School of Medicine and School of Nursing Salina Campus sign, which is a permitted sign.

96. The photograph contained in paragraph 96 of the Amended Complaint speaks for itself. The City admits that the photograph contained in paragraph 96 of the Amended Complaint is an accurate representation of a portion of the front façade of the Salina Art Center. The City denies the remaining allegations set forth in paragraph 96 of the Amended Complaint, specifically Plaintiffs' characterization and use of term mural.

97. The City denies the allegations set forth in paragraph 97 of the Amended Complaint.

98. The City denies the allegations set forth in paragraph 98 of the Amended Complaint.

99. The City denies the allegations set forth in paragraph 99 of the Amended Complaint.

100. The City denies the allegations set forth in paragraph 100 of the Amended Complaint. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

101. The City denies the allegations set forth in paragraph 101 of the Amended Complaint.

102. The City denies the allegations set forth in paragraph 102 of the Amended Complaint.

103. The City denies the allegations set forth in paragraph 103 of the Amended Complaint.

104. The photograph contained in paragraph 104 of the Amended Complaint speaks for itself. The City admits that the photograph contained in paragraph 104 of the Amended Complaint is an accurate representation of the display known as "Mural at the Mill" completed by Australian artist Guido Van Helten. The City denies the remaining allegations set forth in paragraph 104 of the Amended Complaint.

105. Paragraph 105 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same.

106. The City denies the allegations set forth in paragraph 106 of the Amended Complaint.

107. The City denies the allegations set forth in paragraph 107 of the Amended Complaint. Further, allegations regarding the DRB and Salina Code § 2-200, *et seq*., are moot.

108. The City denies the allegations set forth in paragraph 108 of the Amended Complaint.

109. The City denies the allegations set forth in paragraph 109 of the Amended Complaint.

110. The City denies the allegations set forth in paragraph 110 of the Amended Complaint.

111. The City denies the allegations set forth in paragraph 111 of the Amended Complaint.

112. The City denies the allegations set forth in paragraph 112 of the Amended Complaint.

113. The City denies the allegations set forth in paragraph 113 of the Amended Complaint.

114. The City denies the allegations set forth in paragraph 114 of the Amended Complaint.

115. The City denies the allegations set forth in paragraph 115 of the Amended Complaint.

116. The City is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 116 of the Amended Complaint, and, accordingly, denies the same.

117. The City is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 117 of the Amended Complaint, and, accordingly, denies the same

118. The City denies the allegations set forth in paragraph 118 of the Amended Complaint.

119. The City admits that the City Commission met on November 13, 2023 and discussed the Cozy Sign. The City denies the remaining allegations set forth in paragraph 119 of the Amended Complaint.

120. The City denies the allegations set forth in paragraph 120 of the Amended Complaint.

121. Paragraph 121 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the allegations

set forth in paragraph 121, specifically as to the phrase "relevant portion," and state the transcript speaks for itself.

122. The City admits the allegations set forth in paragraph 122 of the Amended Complaint.

123. The City admits the allegations set forth in paragraph 123 of the Amended Complaint and states § 42-521(4)(b) speaks for itself.

124. The City admits the allegations set forth in paragraph 124 of the Amended Complaint.

125. The City admits the allegations set forth in paragraph 125 of the Amended Complaint.

126. The City admits only that the Cozy Sign is approximately 528 square feet and is too large to qualify for a sign permit under the sign code. The City denies all other allegations and characterizations set forth in paragraph 126 of the Amended Complaint.

127. The City denies the allegations set forth in paragraph 127 of the Amended Complaint.

128. The City denies the allegations set forth in paragraph 128 of the Amended Complaint.

129. The City denies the allegations set forth in paragraph 129 of the Amended Complaint.

130. The City denies the allegations set forth in paragraph 130 of the Amended Complaint.

131. The City denies the allegations set forth in paragraph 131 of the Amended Complaint.

132. The City denies the allegations set forth in paragraph 132 of the Amended Complaint.

133. The City denies the allegations set forth in paragraph 133 of the Amended Complaint.

134. The City denies the allegations set forth in paragraph 134 of the Amended Complaint.

135. The City denies the allegations set forth in paragraph 135 of the Amended Complaint.

136. The City denies the allegations set forth in paragraph 136 of the Amended Complaint.

137. The City denies the allegations set forth in paragraph 137 of the Amended Complaint.

138. The City denies the allegations set forth in paragraph 138 of the Amended Complaint.

139. The City denies the allegations set forth in paragraph 139 of the Amended Complaint.

140. The City denies the allegations set forth in paragraph 140 of the Amended Complaint.

141. The City denies the allegations set forth in paragraph 141 of the Amended Complaint.

142. The City denies the allegations set forth in paragraph 142 of the Amended Complaint.

143. The City denies the allegations set forth in paragraph 143 of the Amended Complaint.

144. The City denies the allegations set forth in paragraph 144 of the Amended Complaint.

145. The City denies the allegations set forth in paragraph 145 of the Amended Complaint.

146. The City denies the allegations set forth in paragraph 146 of the Amended Complaint.

147. The City denies the allegations set forth in paragraph 147 of the Amended Complaint.

148. The City denies the allegations set forth in paragraph 148 of the Amended Complaint.

149. Paragraph 149 of the Amended Complaint does not set forth factual allegations to which a response is required, but to the extent a response is required, the City incorporates its responses to each of the cross-referenced paragraphs.

150. The City denies the allegations set forth in paragraph 150 of the Amended Complaint.

151. The City admits that Plaintiffs want to complete the Cozy Sign as shown in paragraph 28 of the Amended Complaint. The City denies all other allegations set forth in

paragraph 151 of the Amended Complaint, specifically the characterization of the Cozy Sign as a mural.

152. The City denies the allegations set forth in paragraph 152 of the Amended Complaint.

153. The City admits only that it explained to Plaintiffs that the Cozy Sign as proposed is too large to qualify for a permit. The City denies the remaining allegations set forth in paragraph 153 of the Amended Complaint.

154. The City admits only that in November 2023 it informed Plaintiffs the Cozy Sign was a sign that required a sign permit and a Certificate of Compatibility. The City denies the remaining allegations set forth in paragraph 154 of the Amended Complaint. Further, allegations regarding the Certificate of Compatibility and Salina Code § 2-200, *et seq*., are moot.

155. The City admits that in November 2023, after it informed Plaintiffs the Cozy Sign was too large to qualify for a sign permit, it requested Plaintiffs to submit an application for a sign permit and a Certificate of Compatibility and that on November 13, 2023, Plaintiffs submitted the applications. The City denies the remaining allegations set forth in paragraph 155 of the Amended Complaint. Further, allegations regarding the Certificate of Compatibility and Salina Code § 2-200, *et seq*., are moot.

156. The City denies the allegations set forth in paragraph 156 of the Amended Complaint.

157. The City denies the allegations set forth in paragraph 157 of the Amended Complaint. Further, allegations regarding the DRB, Certificate of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

158. The City denies the allegations set forth in paragraph 158 of the Amended Complaint. Further, allegations regarding the DRB, Certificate of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

159. The City denies the allegations set forth in paragraph 159 of the Amended Complaint. The February 8, 2024 correspondence is a written document and speaks for itself. Further, allegations regarding the DRB, Certificate of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

160. The City denies the allegations set forth in paragraph 160 of the Amended Complaint. Further, allegations regarding the DRB, Certificate of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

161. The City admits the allegations set forth in paragraph 161 of the Amended Complaint.

162. The City denies the allegations set forth in paragraph 162 of the Amended Complaint.

163. The City denies the allegations set forth in paragraph 163 of the Amended Complaint.

164. The City denies the allegations set forth in paragraph 164 of the Amended Complaint. Further, allegations regarding the DRB, Certificate of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

165. The City admits that the Cozy Sign is a sign and is too big to qualify for a sign permit and the City has informed Plaintiffs of the same. The City denies the remaining allegations set forth in paragraph 165 of the Amended Complaint.

166. The City denies the allegations set forth in paragraph 166 of the Amended Complaint.

167. The City denies the allegations set forth in paragraph 167 of the Amended Complaint.

168. The City denies the allegations set forth in paragraph 168 of the Amended Complaint.

169. The City denies the allegations set forth in paragraph 169 of the Amended Complaint.

170. The City is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth before the semicolon in paragraph 170 of the Amended Complaint, and, accordingly, denies the same. The City denies the allegation after the semicolon in paragraph 170 of the Amended Complaint.

171. The City denies the allegations set forth in paragraph 171 of the Amended Complaint.

172. The City denies the allegations set forth in paragraph 172 of the Amended Complaint.

173. The City denies the allegations set forth in paragraph 173 of the Amended Complaint.

174. Paragraph 174 of the Amended Complaint does not set forth factual allegations to which a response is required, and, alternatively seeks legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

175. The City denies the allegations set forth in paragraph 175 of the Amended Complaint.

176. Paragraph 176 of the Amended Complaint does not set forth factual allegations to which a response is required, and, alternatively seeks legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

177. Paragraph 177 of the Amended Complaint does not set forth factual allegations to which a response is required, but to the extent a response is required, the City incorporates its responses to each of the cross-referenced paragraphs.

178. Paragraph 178 of the Amended Complaint does not set forth factual allegations to which a response is required, and, alternatively seeks legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

179. The City denies the allegations set forth in paragraph 179 of the Amended Complaint.

180. The City denies the allegations set forth in paragraph 180 of the Amended Complaint.

181. Paragraph 181 of the Amended Complaint does not set forth factual allegations to which a response is required, and, alternatively seeks legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

182. The City denies the allegations set forth in paragraph 182 of the Amended Complaint. Further, allegations regarding the Certificate of Compatibility and Salina Code § 2-200, *et seq*., are moot.

183. The City denies the allegations set forth in paragraph 183 of the Amended Complaint.

184. Paragraph 184 of the Amended Complaint does not set forth factual allegations to which a response is required, but to the extent a response is required, the City incorporates its responses to each of the cross-referenced paragraphs.

185. Paragraph 185 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

186. Paragraph 186 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same. First Amendment rights are not absolute.

187. Paragraph 187 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same. First Amendment rights are not absolute.

188. Paragraph 188 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same. First Amendment rights are not absolute.

189. The City admits that the Cozy Sign is a sign, and that the regulation of signs implicates the First Amendment. The City denies all other allegations set forth in paragraph 189 of the Amended Complaint.

190. The City admits that Plaintiffs want to complete the Cozy Sign and that Plaintiffs intend the final version to be that depicted in paragraph 28 of the Amended Complaint. The City denies all other allegations set forth in paragraph 190 of the Amended Complaint.

191. The City denies the allegations set forth in paragraph 191 of the Amended Complaint.

192. The City denies the allegations set forth in paragraph 192 of the Amended Complaint.

193. Paragraph 193 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

194. Paragraph 194 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

195. Paragraph 195 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

196. Paragraph 196 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

197. The City denies the allegations set forth in paragraph 197 of the Amended Complaint.

198. The City denies the allegations set forth in paragraph 198 of the Amended Complaint.

199. The City denies the allegations set forth in paragraph 199 of the Amended Complaint.

200. The City denies the allegations set forth in paragraph 200 of the Amended Complaint.

201. The City denies the allegations set forth in paragraph 201 of the Amended Complaint.

202. The City denies the allegations set forth in paragraph 202 of the Amended Complaint.

203. The City denies the allegations set forth in paragraph 203 of the Amended Complaint. Further, allegations regarding Salina Code § 2-200, *et seq*., are moot.

204. The City denies the allegations set forth in paragraph 204 of the Amended Complaint.+

205. The City denies the allegations set forth in paragraph 205 of the Amended Complaint.

206. The City denies the allegations set forth in paragraph 206 of the Amended Complaint.

207. The City denies the allegations set forth in paragraph 207 of the Amended Complaint. Further, allegations regarding Certificates of Compatibility and Salina Code § 2-200, *et seq*., are moot.

208. The City denies the allegations set forth in paragraph 208 of the Amended Complaint.

209. The City denies the allegations set forth in paragraph 209 of the Amended Complaint.

210. The City denies the allegations set forth in paragraph 210 of the Amended Complaint.

211. The City denies the allegations set forth in paragraph 211 of the Amended Complaint.

212. The City denies the allegations set forth in paragraph 212 of the Amended Complaint.

213. Paragraph 213 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

214. Paragraph 214 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

215. The City denies the allegations set forth in paragraph 215 of the Amended Complaint. Further, allegations regarding DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

216. The City denies the allegations set forth in paragraph 216 of the Amended Complaint. Further, allegations regarding DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

217. The City denies the allegations set forth in paragraph 217 of the Amended Complaint. Further, allegations regarding DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

218. The City denies the allegations set forth in paragraph 218 of the Amended Complaint. Further, allegations regarding DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

219. The City denies the allegations set forth in paragraph 219 of the Amended Complaint.

220. The City admits that it applies the Sign Code to signs, and the definition of sign includes "displays" that "are used to announce, direct attention to, or advertise." The City denies the remaining allegations set forth in paragraph 220 of the Amended Complaint.

221. The City admits that it does not apply the Sign Code to displays that are not signs, and that the definition of sign includes "displays" that "are used to announce, direct attention to, or advertise." The City denies the remaining allegations set forth in paragraph 221 of the Amended Complaint.

222. The City denies the allegations set forth in paragraph 222 of the Amended Complaint.

223. Paragraph 223 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

224. Paragraph 224 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

225. The City denies the allegations set forth in paragraph 225 of the Amended Complaint.

226. The City denies the allegations set forth in paragraph 226 of the Amended Complaint.

227. The City denies the allegations set forth in paragraph 227 of the Amended Complaint.

228. The City denies the allegations set forth in paragraph 228 of the Amended Complaint.

229. The City denies the allegations set forth in paragraph 229 of the Amended Complaint.

230. The City denies the allegations set forth in paragraph 230 of the Amended Complaint.

231. The City denies the allegations set forth in paragraph 231 of the Amended Complaint.

232. The City denies the allegations set forth in paragraph 232 of the Amended Complaint.

233. The City denies the allegations set forth in paragraph 233 of the Amended Complaint.

234. The City denies the allegations set forth in paragraph 234 of the Amended Complaint.

235. The City denies the allegations set forth in paragraph 235 of the Amended Complaint.

236. The City denies the allegations set forth in paragraph 236 of the Amended Complaint.

237. The City denies the allegations set forth in paragraph 237 of the Amended Complaint.

238. The City denies the allegations set forth in paragraph 238 of the Amended Complaint.

239. The City denies the allegations set forth in paragraph 239 of the Amended Complaint.

240. The City denies the allegations set forth in paragraph 240 of the Amended Complaint.

241. The City denies the allegations set forth in paragraph 241 of the Amended Complaint.

242. The City admits the allegations set forth in paragraph 242 of the Amended Complaint.

243. The City admits the allegations set forth in paragraph 243 of the Amended Complaint.

244. The City is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 244 of the Amended Complaint, and, accordingly, denies the same.

245. The City denies the allegations set forth in paragraph 245 of the Amended Complaint.

246. The City denies the allegations set forth in paragraph 246 of the Amended Complaint.

247. The City denies the allegations set forth in paragraph 247 of the Amended Complaint.

248. The City denies the allegations set forth in paragraph 248 of the Amended Complaint.

249. The City denies the allegations set forth in paragraph 249 of the Amended Complaint.

250. The City denies the allegations set forth in paragraph 250 of the Amended Complaint.

251. The City denies the allegations set forth in paragraph 251 of the Amended Complaint.

252. The City denies the allegations set forth in paragraph 252 of the Amended Complaint.

253. The City denies the allegations set forth in paragraph 253 of the Amended Complaint.

254. The City denies the allegations set forth in paragraph 254 of the Amended Complaint.

255. The City denies the allegations set forth in paragraph 255 of the Amended Complaint.

256. The City denies the allegations set forth in paragraph 256 of the Amended Complaint.

257. The City denies the allegations set forth in paragraph 257 of the Amended Complaint.

258. Paragraph 258 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same.

259. Paragraph 259 of the Amended Complaint does not set forth factual allegations to which a response is required, but to the extent a response is required, the City incorporates its responses to each of the cross-referenced paragraphs.

260. The City denies the allegations set forth in paragraph 260 of the Amended Complaint. Further, allegations regarding the DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

261. Paragraph 261 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

262. The City denies the allegations set forth in paragraph 262 of the Amended Complaint.

263. The City denies the allegations set forth in paragraph 263 of the Amended Complaint.

264. The City denies the allegations set forth in paragraph 264 of the Amended Complaint.

265. The City denies the allegations set forth in paragraph 265 of the Amended Complaint.

266. The City denies the allegations set forth in paragraph 266 of the Amended Complaint.

267. The City denies the allegations set forth in paragraph 267 of the Amended Complaint. Further, allegations regarding the DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

268. The City denies the allegations set forth in paragraph 268 of the Amended Complaint. Further, allegations regarding the DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

269. The City denies the allegations set forth in paragraph 269 of the Amended Complaint. Further, allegations regarding the DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

270. The City denies the allegations set forth in paragraph 270 of the Amended Complaint. Further, allegations regarding the DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

271. The City denies the allegations set forth in paragraph 271 of the Amended Complaint. Further, allegations regarding the DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

272. The City denies the allegations set forth in paragraph 272 of the Amended Complaint.

273. The City denies the allegations set forth in paragraph 273 of the Amended Complaint.

274. Paragraph 274 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

275. The City denies the allegations set forth in paragraph 275 of the Amended Complaint.

276. The City denies the allegations set forth in paragraph 276 of the Amended Complaint.

277. The City denies the allegations set forth in paragraph 277 of the Amended Complaint.

278. The City denies the allegations set forth in paragraph 278 of the Amended Complaint.

279. The City denies the allegations set forth in paragraph 279 of the Amended Complaint.

280. The City denies the allegations set forth in paragraph 280 of the Amended Complaint.

281. The City denies the allegations set forth in paragraph 281 of the Amended Complaint. Further, Plaintiffs have notified the Court that they do not seek injunctive relief for "others who are similarly situated." *See* (ECF 120).

282. Paragraph 282 of the Amended Complaint does not set forth factual allegations to which a response is required, but to the extent a response is required, the City incorporates its responses to each of the cross-referenced paragraphs.

283. Paragraph 283 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same.

284. The City denies the allegations set forth in paragraph 284, and subparagraphs (a)-(m) of the Amended Complaint.

285. The City denies the allegations set forth in paragraph 285 of the Amended Complaint.

286. The City denies the allegations set forth in paragraph 286 of the Amended Complaint.

287. The City denies the allegations set forth in paragraph 287 of the Amended Complaint.

288. The City denies the allegations set forth in paragraph 288 of the Amended Complaint.

289. The City denies the allegations set forth in paragraph 289 of the Amended Complaint. Further, allegations regarding the DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

290. The City denies the allegations set forth in paragraph 290 of the Amended Complaint. Further, allegations regarding the DRB, Certificates of Compatibility, and Salina Code § 2-200, *et seq*., are moot.

291. The City denies the allegations set forth in paragraph 291 of the Amended Complaint.

292. The City denies the allegations set forth in paragraph 292 of the Amended Complaint.

293. The City denies the allegations set forth in paragraph 293 of the Amended Complaint.

294. The City denies the allegations set forth in paragraph 294 of the Amended Complaint.

295. The City denies the allegations set forth in paragraph 295 of the Amended Complaint.

296. The City denies the allegations set forth in paragraph 296 of the Amended Complaint.

297. The City denies the allegations set forth in paragraph 297 of the Amended Complaint.

298. The City denies the allegations set forth in paragraph 298 of the Amended Complaint.

299. The City denies the allegations set forth in paragraph 299 of the Amended Complaint.

300. The City denies the allegations set forth in paragraph 300 of the Amended Complaint.

301. Paragraph 301 of the Amended Complaint sets forth legal conclusions to which a response is not required. To the extent a response is required, the City denies the same. Fourteenth Amendment protections are not absolute.

302. The City denies the allegations set forth in paragraph 302 of the Amended Complaint.

303. The City denies the allegations set forth in paragraph 303 of the Amended Complaint. Further, Plaintiffs have notified the Court that they do not seek injunctive relief for "others who are similarly situated." *See* (ECF 120).

304. The City denies the allegations set forth in paragraph 304 of the Amended Complaint.

305. The City denies the allegations set forth in paragraph 305 of the Amended Complaint.

306. Paragraph 306 of the Amended Complaint does not set forth factual allegations to which a response is required, but to the extent a response is required, the City incorporates its responses to each of the cross-referenced paragraphs.

307. Paragraph 307 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same.

308. Paragraph 308 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same. Further, Plaintiffs have notified the Court that they do not seek injunctive relief for "others who are similarly situated." *See* (ECF 120).

309. Paragraph 309 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same. Further, Plaintiffs have notified the Court that they do not seek injunctive relief for "others who are similarly situated." *See* (ECF 120).

310. Paragraph 310 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same. Further, Plaintiffs have notified the Court that they do not seek injunctive relief for "others who are similarly situated." *See* (ECF 120).

311. Paragraph 311 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same. Further, Plaintiffs have notified the Court that they do not seek injunctive relief for "others who are similarly situated." *See* (ECF 120).

312. Paragraph 312 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same. Further, Plaintiffs have notified the Court that they do not seek injunctive relief for "others who are similarly situated." *See* (ECF 120).

313. Paragraph 313 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same.

314. Paragraph 314 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same.

315. Paragraph 315 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same.

316. Paragraph 316 of the Amended Complaint does not set forth factual allegations to which a response is required. To the extent a response is required, the City denies the same.

**General Denial**

The City denies all allegations not specifically admitted herein.

**Defenses**

1. Plaintiffs' Complaint fails to state a claim for which relief may be granted, in whole or in part.

2. Plaintiffs' claims are moot.

3. Plaintiffs failed to exhaust their administrative remedies.

4. Plaintiffs' alleged injuries cannot be redressed by this Court because even if this Court declares the challenged provisions of the Sign Code to be unconstitutional, those provisions must be severed, and Plaintiffs' sign would still be precluded by the provisions of the Sign Code that remain in place.

5. This case was initiated by way of a verified complaint (*See* ECF 16 and ECF 16-1). Plaintiffs are precluded from bringing a claim against the City concerning the constitutionality of the Sign Code, particularly vagueness, because according to their sworn

testimony, they did not read the Sign Code prior to filing the lawsuit, have not read the Sign Code since filing the lawsuit, and do not intend to ever read the Sign Code.

6. Plaintiffs have not sought declaratory judgment from this Court to declare that their display is not a sign under the Sign Code, so Plaintiffs have not requested a declaration that will redress their asserted injuries.

7. The Sign Code is content-neutral on its face and as applied to the Plaintiffs because the germane provisions of the Sign Code are not concerned with the idea, topic, subject, or viewpoint of the message displayed, the Sign Code is justified without reference to the content of the regulated speech, and the Sign Code was applied as it is written.

8. The Sign Code passes intermediate scrutiny because it is narrowly tailored to advance the City's substantial interests of traffic safety, pedestrian safety, aesthetics, and property values, and it leaves open ample alternative channels because Plaintiffs can communicate the information with the exact same sign in a smaller size, with other existing signs on the Cozy Inn premises that fit within the allowable sign area, and through a number of other alternative channels.

9. The Sign Code is not a prior restraint because it provides sufficient standards to limit the City and its officials' discretion, so it does not promote arbitrary enforcement.

10. The Sign Code is not a prior restraint because it provides for a brief, specified period of time within which the City must issue or deny a sign permit, and the City informed Mr. Howard within three days after he began painting the sign that it was too large to qualify for a sign permit. The unique circumstances of this case, in which the City attempted to collaborate

with the Plaintiffs to achieve a legislative solution, do not transmogrify the Sign Code into an unconstitutional prior restraint.

11. Plaintiffs may not seek relief on behalf of "others similarly situated."

12. The Sign Code is not vague because it provides people of ordinary intelligence with a reasonable opportunity to understand what conduct is prohibited.

13. The Sign Code is not vague because it provides narrow, objective, and definite standards that properly guide the City and its permitting officials.

14. The "overbreadth" doctrine, which relates to vagueness, does not apply to commercial speech.

WHEREFORE, the City requests that Plaintiffs' claims be dismissed in their entirety, that the City be awarded its attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for any other relief this Court deems just and proper.

Respectfully submitted this 7th day of July 2025.

s/ Aaron O. Martin
Aaron O. Martin
Bar Number: 24170
Attorney for Defendant, City of Salina, Kansas
Clark, Mize & Linville, Chartered
P.O. Box 380
Salina, KS 67402-0380
Tel.: (785) 823-6325
Fax: (785) 823-1868
Email: aomartin@cml-law.com

s/ Todd G. Messenger
Todd G. Messenger
CO Bar Number: 38783
*Pro Hac Vice* Attorney for Defendant, City of Salina, Kansas
Fairfield and Woods, P.C.
1801 California St., Ste. 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax: (303) 830-1033
Email: tmessenger@fwlaw.com

s/ Amanda C. Jokerst
Amanda C. Jokerst
CO Bar Number: 47241
*Pro Hac Vice* Attorney for Defendant, City of Salina, Kansas
Fairfield and Woods, P.C.
1801 California St., Ste. 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax: (303) 830-1033
Email: ajokerst@fwlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of July 2025, I caused the foregoing **ANSWER TO VERIFIED AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel.

*s/ Aaron O. Martin*
Aaron O. Martin

**In the United States District Court
for the District of Kansas**

---

Case No. 24-cv-01027-TC

---

COZY INN, INCORPORATED, ET AL.,

*Plaintiffs*

v.

CITY OF SALINA, KANSAS,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiffs Cozy Inn, Incorporated and its owner Stephen Howard sued the City of Salina, Kansas for constitutional violations after the City stopped Howard from painting a display on the side of the building that housed his restaurant. Doc. 16; *see also* 42 U.S.C. § 1983. All parties moved for summary judgment, Docs. 104 & 106, and to exclude the other's expert testimony, Docs. 97 & 98. For the following reasons, each party's motion for summary judgment is granted in part and denied in part, and each party's motion to exclude expert testimony is denied.

**I**

**A**

Each motion has a different standard that governs resolution. The following describes each applicable standard.

**1.** As noted, the parties challenge the admissibility of each other's experts. The admissibility of expert testimony is guided by Federal Rule of Evidence 702. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). To fulfill its gatekeeping role, a trial court must ensure that the expert is qualified and that his or her testimony is both reliable and

relevant. *Id.* at 1180–81. "Rule 702 requires an expert witness to be qualified by 'knowledge, skill, experience, training, or education.'" *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1029 (10th Cir. 2021). Testimony is reliable if "it is based on sufficient data, sound methods, and the facts of the case." *See Roe*, 42 F.4th at 1181 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). It is relevant if it helps the trier of fact "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020).

**2.** Both parties contend that they are entitled to summary judgment. Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**B**

The facts are not in dispute and, as a result, are not construed in either party's favor. In particular, the parties either agree completely as to the material facts or, to the extent there is a disagreement, the purported dispute is unsupported by the cited record. *See Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 758 n.5 (10th Cir. 2021) (noting that the facts are construed in the light most favorable to the non-movant only "insofar as there are material disputes of fact").

**1.** Plaintiff Stephen Howard owns Cozy Inn, Inc., a local and storied hamburger restaurant in downtown Salina, Kansas. Doc. 105 at ¶ 1; *see also* KWCH Staff, *Salina's Cozy Inn Celebrating 100 Years in Business*, 12News (Mar. 11, 2022, 9:33 PM), https://www.kwch.com/2022/03/12/salinas-cozy-inn-celebrating-100-years-business/.[1] Howard hired an artist to paint a display on the exterior wall of the building he owns that houses Cozy Inn. Doc. 105 at ¶¶ 9–12. That wall was previously plain white. *Id.* at ¶ 9. Howard intends for the display, once completed, to "include whimsical hamburger-esque flying saucers piloted by aliens attacking The Cozy with blasts of ketchup and mustard." *Id.* at ¶ 14. It will read: "Don't Fear the Smell!! The Fun is Inside!!" *Id.* And a painted arrow will point to the building's entrance and the ordering window on the exterior wall. *Id.* at ¶ 15; Doc. 108 at ¶ 27.

Howard wanted Cozy Inn's display to be part of the "proliferation of mural art" in Salina. Doc. 105 at ¶ 6 (quoting Doc. 105-5 at 23). He described the various murals throughout the city and said he "wanted to participate in this 'part of Salina culture.'" *Id.* at ¶ 10. Many of the murals Howard describes are seemingly similar to the one Howard wants to complete at Cozy Inn. *See id.* at ¶ 129. For example, an abandoned grain elevator in Salina features a mural that "depicts children playing ring-around-the rosie." *Id.* at ¶ 122. A baseball training facility features a large mural on one of its exterior walls that shows baseball players during a baseball game with phrases like "Outta the Park!" and "Good Game!" Doc. 105-6 at 5. And a music-related business has a mural on its exterior walls called "Symphony of Sunflowers" that

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

covers the exterior walls with paintings of music notes and sunflowers. Doc. 105 at ¶ 149.

The artist Howard hired, Colin Benson, began painting the display on Friday, November 3, 2023. Doc. 105 at ¶ 26. Three days later, however, Salina officials informed him that they believed the display was too large to be permitted under the City's sign code. Doc. 107 at 10, ¶ 20. Then, because the officials determined that the display was a sign subject to the sign code's regulations, they told Howard that the display would be too large to qualify for a sign permit and directed him to pause work on the display. *Id.* The display is a sign, according to Salina, because it "pertains to or references the goods or services for sale." Doc. 105 at ¶ 100. In particular, Salina's position is that the display "advertises hamburger, chopped onions, pickles, ketchup, and mustard" by depicting those images as part of the display. Doc. 107 at 13–14, ¶ 40. The parties' subsequent interactions are detailed more fully below, but it is first necessary to understand the relevant portions of the Salina sign code.

**2.** Salina's written sign code and the way city officials interpret it demonstrate that outdoor displays in Salina fall into one of two categories: murals (or art) and signs. Doc. 105 at ¶ 37 (noting that murals are not regulated); *id.* at ¶ 154 (noting that Salina uses the word "art" as "an imprecise short-hand for 'not sign'"). Murals are a type of art, so they are not regulated by Salina's sign code. *Id.* at ¶ 37. That means there are no restrictions on their size or how many may be displayed on a given property, and it is not necessary to obtain a permit before painting a mural on the exterior wall of a building. *See id.* Signs, however, are subject to regulation. Doc. 107 at 6, ¶ 1. If an outdoor display is deemed a sign as that term is defined by the sign code, it must comply with the restrictions set forth in the code. *Id.*

The sign code expressly defines what constitutes a sign. Doc. 107 at 6, ¶ 3; Salina, Kan., Code of Ordinances ch. 42, art. X, § 42-502 (2023) [hereinafter Salina Code]. It provides:

> *Sign* is any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character which:

> (1) Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure on the ground;
>
> (2) Is used to announce, direct attention to, or advertise; and
>
> (3) Is not located inside a building.

The sign code also defines specific types of signs. Relevant here is the definition of wall sign: "a sign fastened to or painted on a wall of a building or structure in such a manner that the wall becomes merely the supporting structure or forms the background surface, and which does not project more than twelve (12) inches from such building." Doc. 107 at 7–8, ¶ 5; Salina Code § 42-781.

In addition, the sign code expressly sets forth its purposes. Doc. 107 at 6–7, ¶ 4; Salina Code § 42-500. Among others, those purposes include improving pedestrian and traffic safety, protecting the city's aesthetic appearance, preventing property damage, and protecting property values. Doc. 107 at 6–7, ¶ 4; Salina Code § 42-500(3)–(5).

An individual or business that wants to paint or otherwise construct a sign must first obtain a permit. Doc. 107 at 8, ¶ 6; Salina Code § 42-501. Specifically, the sign code provides:

> No sign . . . shall be painted, constructed, erected, remodeled, relocated or expanded until a zoning certificate (sign permit) for such sign has been obtained pursuant to the procedure set forth in this article . . . . A zoning certificate (sign permit) shall be either issued or refused by the zoning administrator within ten (10) days after the receipt of an application therefore or within such further period as may be agreed to by the applicant. No zoning certificate for any sign shall be issued unless the sign complies with the regulations of this article.

Doc. 107 at 8, ¶¶ 6–7; Salina Code § 42-501. But, as noted, no permit need be sought or obtained to construct a mural. Doc. 105 at ¶ 37. The permit requirement applies only to displays that Salina deems as signs. *Id.*

Displays that meet the definition of sign must comply with certain size limits, too. Doc. 107 at 8–9, ¶ 9; Salina Code § 42-521(4)(b). The sign code allows for a certain amount of a property's surface area to be devoted to signage, depending on which zone of the city the property is located. Doc. 107 at 8–9, ¶ 9; Salina Code § 42-521(4)(b). Salina will not issue a permit for a sign to be painted or otherwise erected if the sign would be larger than the amount of surface area the property is authorized to use for signage, whether that be on its own or in combination with the signs that are already on the property. Doc. 107 at 8, ¶ 7.

**3.** The aforementioned portions of Salina's sign code provide the context for what happened once city officials noticed the display. Benson had started painting the display on a Friday, and by the end of the weekend, Brad Anderson, a Salina employee, noticed it both on social media and in person. Doc. 105 at ¶ 28; Doc. 109 at 7, ¶ 28; Doc. 109-6 at 3–5. He texted two other city officials about the display, informing them that it was being painted and doubting that it had been approved through the sign-permit process. Doc. 109-6 at 3–5. It remained "up in the air" on Sunday whether city officials would consider the display a regulated sign or an unregulated mural. Doc. 105-13 at 10.

The next day, four city officials met to answer that question. Doc. 105 at ¶ 29. Those individuals included Lauren Driscoll, Salina's Director of Community and Development Services, Dean Andrew, the city's Planning and Zoning Administrator, and two city planners, Dustin Herrs and Dustin Michelson. Doc. 105-14 at 10; Doc. 107-5 at 2–3. They looked at a photograph of Benson's efforts, compared it to the sign code's definition, and determined collectively that the display was a sign that was subject to regulation under the code. Doc. 105 at ¶ 30; Doc. 105-14 at 10–11. They also concluded that the size of the display likely exceeded the surface area that Cozy Inn had remaining for signage by nine times the allowed amount, according to calculations Herrs made using a digital software. Doc. 105 at ¶ 32; Doc. 107-12 at 11–12.

City officials explained their decision to Howard at two separate meetings in November 2023. Doc. 107 at 10, ¶ 20; *id.* at 12, ¶ 29. They reasoned that the display was a sign subject to regulation because "the hamburgers are basically the same thing [Howard] sells, and therefore, it would be signage." Doc. 105 at ¶ 54 (quoting Doc. 105-10 at 10).

Over the following days and weeks, Salina's officials provided more insight into how they determined that the display was a sign. They provided this information through written memoranda and public remarks to the city commissioners, as well as statements to the media. Doc. 105 at ¶¶ 43, 55, 60, 72. In each remark, the officials focused on the fact that the display depicted the same food products sold at Cozy Inn. For example, City Manager Michael Schrage explained in a memo: "While [the display] might look similar to murals in the downtown and elsewhere, it contains a commercial message promoting a business and its product which makes it a wall sign . . . ." Doc. 105-18 at 2; Doc. 105 at ¶ 45; *see also* Doc. 105-5 at 11 ("And I would reiterate, it's all on the basis of a commercial message."). Director of Community and Development Services, Lauren Driscoll, further elaborated on Schrage's explanation. Doc. 105 at ¶ 63. In particular, she explained that the distinction between murals and signs turns on whether the display depicts images that are "part of a commercial transaction that would take place in that building or draw you to that building for a commercial transaction." Doc. 105-5 at 24. Driscoll illustrated her point with an example. Doc. 105 at ¶ 65. She said that if a coffee house painted a display depicting a dove with an olive branch and the word "peace," then the display would not be a sign because it would not depict anything sold inside of the coffee house. Doc. 105-5 at 24; Doc. 105 at ¶¶ 64–66. In contrast, a display at the same coffee house would be a sign if it depicted "a steaming cup of coffee and a coffee pot on the side" because "that illustration can suggest that commercial transaction." Doc. 105-5 at 24–25; Doc. 105 at ¶¶ 64–66.

There is a dispute as to whether this distinction between murals and signs derives from the text of the sign code. The plaintiffs state that it is an extratextual requirement unsupported by the text of Salina's sign code. Doc. 108 at 7–8. In contrast, Salina asserts that it is an interpretation of the word "advertise," which appears in the definition of sign. *Id.* At the time that Driscoll and Schrage made their comments to the city commissioners and the public, they did not indicate that the mural-sign distinction is connected to the word "advertise." Later, however, Salina produced deposition testimony from various officials and answers to interrogatories asserting that its determination relied on the text of the sign code—specifically, the sub-section of the definition of sign noting that signs "announce, direct attention to, or *advertise*." Doc. 107 at 11, 13–14, at ¶¶ 27, 40 (emphasis added). So, according to Salina, a display is used to advertise if it "is meant to attract customers, encourage a commercial transaction . . . [or] call attention

to a brand, products, or services in order to encourage the purchase of products or services, in that it pertains to or references the goods or services for sale." Doc. 105-24 at 7.

Salina also stated that it concluded the display was a sign because it "contains a tag line *announcing* the infamous smells of the Cozy" and because "it has an arrow *directing attention to* the building entrance and ordering window." Doc. 107 at 11, ¶ 27 (emphasis added). Howard and Cozy Inn deny that this is how Salina enforced its sign code against their display. Doc. 108 at 7–8, ¶ 26. They claim that Salina considered their display a sign solely "because it perceived the . . . content as a commercial message pertaining to goods sold by The Cozy" contrary to the sign code's text. *Id.*

**4.** Because city officials determined the display was a sign, they told Howard to submit a sign-permit application. Doc. 105 at ¶ 103; Doc. 105-14 at 17. Howard submitted an application on November 13, 2023. Doc. 105 at ¶ 104 (citing Doc. 105-25); Doc. 105-14 at 19. Salina neither granted nor denied Howard's application. Doc. 106 at ¶ 106. Instead, it put the application on hold. *Id.* City Planner Dustin Herrs believed that city officials had a common understanding with Howard that a decision would not be made regarding his permit application until the officials conducted "a comprehensive review of the sign regulations to see if there were any appropriate text amendments that could be made to accommodate The Cozy Inn sign." Doc. 109-16 at 36–37. But Howard did not share this understanding. Doc. 108 at 6, ¶ 23 (citing Doc. 108-20 at ¶ 26). Howard agrees that city officials informed him of his application's on-hold status, but he disputes that he agreed to that decision. *Id.*

In February 2024, three months after submitting his permit application, Howard received a letter regarding the application from another city planner, Dustin Michelson. Doc. 105-27. The parties did not identify any other discussions between Howard and Salina during those three months. Michelson's letter stated, in relevant part:

> This letter is to inform you that the City is engaging in a comprehensive review of the City's sign regulations, which will include a review of the regulations pertaining to painted wall signs. As a result of this, and due to the unique nature of the existing signs at The Cozy Inn, our office will be placing your . . . sign permit application on-hold until our review of the sign regulations is

> complete. Once we have completed that code review process, Staff will then be able to . . . review your sign permit application in the context of any sign regulations that may be revised during our code review.

Doc. 105-27 at 2. Two weeks after receiving Michelson's letter, Howard and Cozy Inn filed this federal lawsuit against the City of Salina. Doc. 1.

**C**

Broadly speaking, Howard and Cozy Inn allege two constitutional violations.[2] Doc. 101 at ¶ 4.a. First, they allege that Salina's sign code, along with the unwritten practices Salina uses to enforce it, violates the First Amendment's Free Speech Clause on its face and as applied to the plaintiffs' display. *Id.* at ¶ 4.a.i. That claim has two facets. In one, the plaintiffs assert that Salina's differentiation between regulated signs and unregulated murals is a content-based distinction that cannot survive strict scrutiny. *Id.* In the other, they allege that Salina's sign code and the way Salina applies it created an unconstitutional prior restraint on their speech. *Id.* Second, Howard and Cozy Inn allege that Salina's sign code is impermissibly vague in violation of the Fourteenth Amendment's Due Process Clause. *Id.* at ¶ 4.a.ii.

Howard and Cozy Inn seek two types of relief. Doc. 101 at ¶ 5. They first seek a declaratory judgment that Salina's written sign code, its unwritten policies and practices, its sign-permit requirement, and its enforcement mechanisms are an impermissible content-based restriction on speech, an unlawful prior restraint on speech, and that they are unconstitutionally vague. *Id.* at ¶ 5.a. The plaintiffs alternatively seek a declaration that the sign policies fail to satisfy intermediate scrutiny, assuming they are found to be content-neutral restrictions on

---

[2] Howard and Cozy Inn initially challenged an additional portion of Salina's sign regulations. Doc. 92 at 8–9. Specifically, they claimed that Salina's Business Improvement District Code, which required downtown businesses to obtain approval before making exterior aesthetic changes to their buildings, was unconstitutional. *Id.*; Doc. 16 at ¶ 59. While this lawsuit was pending, however, Salina amended the Business Improvement District Code and determined that, as amended, it did not apply to Howard and Cozy Inn's proposed display. Doc. 101 at 1. As a result, the parties agreed that the plaintiffs' claims involving the Business Improvement District Code were rendered moot by the subsequent amendments to that code. Doc. 101 at ¶ 2.a.xv.

speech. *Id.* at ¶ 5.a.iii. And the plaintiffs seek permanent injunctive relief enjoining Salina and its officials from enforcing the entire sign code and any associated practices against them if they complete their unfinished display.[3] *Id.* at ¶ 5.a.b–c.

There are four pending motions. Docs. 97, 98, 104, 106. Each party moves to exclude expert testimony. Docs. 97 & 98. Each party also seeks judgment in their favor on both claims. Docs. 105 & 107. Finally, Salina argues that Howard and Cozy Inn lack standing to bring their claims. Doc. 107 at 18–20.

**II**

Both parties seek summary judgment. As noted below, each motion for summary judgment is granted in part and denied in part. Specifically, Howard and Cozy Inn have standing, and they have shown that they are entitled to judgment as a matter of law on their First Amendment content-discrimination and prior-restraint claims. But Salina has shown that its sign ordinance is not impermissibly vague, warranting summary judgment in Salina's favor on the plaintiffs' Fourteenth Amendment claim.

**A**

Salina's motion for summary judgment relies on its expert witness, Mark White. Howard and Cozy Inn have filed a motion to exclude White's expert testimony.[4] Doc. 97.

White seeks to offer seven opinions. Doc. 97-3 at 3. First, White states that Salina's sign code "establishes time, place and manner metrics that are not content-based." *Id.* His second opinion is that Salina's

---

[3] Howard and Cozy Inn initially sought a permanent injunction that would enjoin Salina and its officials from enforcing the sign code against not only the two plaintiffs, but those similarly situated to them. Doc. 101 at ¶ 5.b. They voluntarily withdrew that request, claiming *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), precludes injunctions that would apply to entities that are not parties to this suit. Doc. 102 at 1.

[4] Howard and Cozy Inn identified a rebuttal expert, Dr. Charles Taylor. Salina moved to exclude his testimony. Doc. 98. Because Taylor's expert report was not necessary to resolve the parties' summary judgment motions, Salina's motion is denied as moot.

sign code "is supported by substantial and compelling interests in the area of urban planning and code administration." *Id.* Next, White asserts that the sign code "directly and materially furthers its recited purposes," "is not vague," and "has numerous procedural safeguards." *Id.* He then opines that the sign code "is reasonable in scope in that it targets issues related to wall signs, without unnecessarily expanding its reach to artistic murals." *Id.* And finally, White says that the restrictions in Salina's sign code "are reasonable, generally accepted regulations of the size, shape, placement, and design of signs." *Id.*

Howard and Cozy Inn move to exclude White as an expert at trial. Doc. 97. First, they argue that White's opinions invade the province of the factfinder by applying the law to the facts and making impermissible legal conclusions. *Id.* at 3–7. Second, they argue that White's opinions are unreliable because they "are based on inappropriate speculation and conjecture" and because they contradict a treatise that White authored. *Id.* at 7–14. Salina, as the proponent of White's testimony, bears the burden of establishing its admissibility by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). It has done so here, and, as a result, the plaintiffs' motion to exclude is denied.

**1.** Howard and Cozy Inn first challenge White's seven opinions as impermissible legal opinions. Doc. 97 at 3–7. Specifically, they rely on the principle that an "expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1342–43 (10th Cir. 2017) (quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)).

It is true that White's opinions largely mirror the legal standards that the issues in this lawsuit turn on. But it is unnecessary to entirely exclude White as an expert witness because the parties requested a bench trial. Doc. 101 at 20–21. The concern that the plaintiffs raise typically arises in cases that will be tried by a jury because it is important to ensure that experts do not "go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility." *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014). That concern is absent when the trial judge is the finder of facts: Courts are able to identify and ignore an expert's testimony if and when the expert opines on what the law is or attempts to apply the law to the facts of the specific case. *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780

(10th Cir. 2009) (noting that "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation").

The plaintiffs have not identified any authority excluding testimony as an impermissible legal conclusion in a bench trial. As a result, exclusion is not necessary because, to the extent White's testimony states impermissible legal conclusions, it can be ignored. *See id.*

**2.** So, too, with the plaintiffs' reliability challenge. In essence, Howard and Cozy Inn argue that White's opinions are unreliable because they are not based on sufficient facts and data, and they contradict conclusions White made in a treatise he authored. Doc. 97 at 7–14. Not so.

First, White's opinions are based on reliable facts and data. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). White bases his opinions on the knowledge and experience he has gained as "a planner and attorney recognized as an expert in zoning and subdivision law, form-based zoning and New Urbanism, land use and takings litigation, housing, development of comprehensive growth management plans, and implementation systems." Doc. 97-3 at 39. That is sufficiently reliable. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2005) (holding that a fire investigator's expert opinion on the cause of a fire was reliable when it was based on his experience and knowledge). White also explained how he formed his opinions. He reviewed Salina's sign code, its comprehensive plan, its purported interests, and other municipalities' sign codes. *See generally* Doc. 97-3. This gave White sufficient facts and data on which he could rely to opine on the connection between Salina's sign code and its proffered justification for its speech restrictions. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243–44 (10th Cir. 2000) (finding the district court did not abuse its discretion in admitting expert's testimony where expert testified based on review of case-specific data like depositions and discovery material).

Second, White used reliable methods to evaluate the data he gathered through his experience and reach conclusions based on it. He applied what he knows about urban planning and zoning regulations to arrive at conclusions that logically follow from that knowledge and experience. For example, White examined Salina's sign code and comprehensive plan to explain the city's purported justifications for its sign

regulations are traffic safety, aesthetics, and public health. Doc. 97-3 at 5–9. Then, he reviewed several studies and reports regarding the impact that signs and public art can have on those interests. *Id.* And he concluded, relying on that data and his expertise, that Salina's sign regulations serve the purposes they are intended to serve. *Id.* That is what experts do. Fed. R. Evid. 702 advisory committee's note (2023); *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1030–31 (10th Cir. 2021) (explaining that an expert may testify about opinions that rely on subjective opinions supported by general standards in the expert's field). And, more importantly, it is sufficient to establish reliability. *Bitler*, 400 F.3d at 1235 (finding expert conclusions based on experience and knowledge reliable).

Salina's contention that White's opinions in this case differ from what he has previously said does not compel a different result. *Contra* Doc. 97 at 2. That his views may be seen as evolving or inconsistent goes to the weight, not the admissibility, of his testimony. *Ingersoll-Rand*, 214 F.3d at 1244. And, like the plaintiffs' challenge to White's opinions as impermissible legal conclusions, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *Att'y Gen. of Okla.*, 565 F.3d at 779. As a result, exclusion is unnecessary.

**B**

The next issue is Salina's contention that Howard and Cozy Inn lack standing to bring this suit. Doc. 107 at 18–20. It fails because the plaintiffs have shown that they suffered an injury-in-fact that is fairly traceable to Salina's actions and likely to be redressed by a favorable decision.

**1**

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III, § 2, cl. 1.); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "For there to be a case or controversy under Article III, the plaintiff must have . . . standing." *TransUnion*, 594 U.S. at 423. "Regardless of the stage of litigation at which [federal courts evaluate] standing, the standing inquiry remains focused on whether the party invoking jurisdiction had a sufficient stake in the outcome when the suit was filed." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023). Plaintiffs "must demonstrate standing

separately for each form of relief sought." *WildEarth Guardians v. Pub/Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 185 (2000)) (internal quotation marks omitted).

Standing requires a plaintiff to have "suffered an injury in fact" that is "fairly traceable to the challenged action of the defendant" and is likely to be "redressed by a favorable decision." *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "These requirements ensure that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Looper*, 22 F.4th at 876 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

The injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). For an injury to be concrete, it must be "real" rather than "abstract," but not necessarily "tangible." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190–91 (10th Cir. 2021). In other words, "it must actually exist." *Spokeo*, 578 U.S. at 340. And "[a] statutory violation does not necessarily establish injury in fact." *Looper*, 22 F.4th at 876 (explaining that *Spokeo* and *TransUnion* recently clarified that fact). "For an injury to be particularized, it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1); *see also Spokeo*, 578 U.S. at 339. "[A]ctual or imminent [means] that the injury must have already occurred or be likely to occur soon." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). And "[a]n alleged future injury is sufficiently imminent 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Looper*, 22 F.4th at 876 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

As to causation, the plaintiff must show that "its injury is 'fairly traceable to the challenged action'" of the defendant. *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1152 (10th Cir. 2022) (quoting *Friends of the Earth*, 528 U.S. at 180). For Article III purposes, that means "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). To make that showing, "plaintiffs bear the burden of pleading and proving concrete facts showing that the defendant's *actual action* has caused the [harm or a]

substantial risk of harm." *Rocky Mountain Peace & Just. Ctr.*, 40 F.4th at 1152 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)) (quotation marks omitted).

Regarding redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1325 (10th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). In other words, "a party must show that a favorable court judgment is likely to relieve the party's injury." *WildEarth*, 690 F.3d at 1182 (quoting *City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1264 (10th Cir. 2011)). "The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *WildEarth*, 690 F.3d at 1182 (quoting *Nova Health Sys.*, 416 F.3d at 1158).

And finally, when assessing standing, federal courts are not to "open the door to merits considerations at the jurisdictional stage." *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (internal quotation marks omitted). Thus, "[f]or purposes of standing, [courts] must assume the Plaintiffs' claim has legal validity." *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1220 (10th Cir. 2016) (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092–93 (10th Cir. 2006) (en banc)). In other words, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

**2**

Salina makes two standing arguments. Doc. 107 at 18–20. One applies only to the plaintiffs' prior-restraint claim: Salina argues that Howard agreed his permit application could be held in abeyance, so neither he nor Cozy Inn was injured. *Id.* at 20. The other focuses on redressability, asserting there is no relationship between the injury suffered and the judicial relief that the plaintiffs request. *Id.* at 18–20. Neither has merit.

**a**

Salina's argument that the plaintiffs consented to the prior restraint fails. The plaintiffs want to finish painting the display on the exterior wall of the building housing Cozy Inn. Doc. 105 at ¶ 223. They cannot do that because Salina placed Howard's permit application on hold

instead of issuing a permit or formally denying his application. Doc. 106 at ¶ 106. As a result, the plaintiffs have suffered—and continue to suffer—an injury-in-fact traceable to Salina's indefinite hold of Howard's permit application. *See Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (explaining that receiving a permit application decision later than the timeframe that the applicant was entitled to is sufficient for Article III standing).

This result does not change simply because Salina officials believe Howard agreed to the open-ended delay. For one, Salina has not supported its assertion that a permit applicant may consent to an indefinite delay in the processing of his or her permit application such that he or she foregoes standing to challenge a prior restraint on expression. *See Rios v. Ziglar*, 398 F.3d 1201, 1209 (10th Cir. 2005) (rejecting a novel factual theory that was not supported by legal authority). But even if that theory is viable, it fails for lack of factual support. The record is devoid of any evidence suggesting that Howard consented to an indefinite delay of his permit application. *Contra* Doc. 107 at 20.

To support its position, Salina points to deposition testimony from various city officials who talked to Howard about his permit application. *Id.* (citing Doc. 107 at ¶¶ 20, 22, 23, 29). Yet no portion of Salina's cited testimony suggests that Howard agreed to the processing delay. For example, the testimony provides that Howard "was informed . . . that the sign . . . is not something the staff had the authority to permit," Doc. 107-12 at 16, that "Howard had knowledge that [Salina was] not able to approve his sign permit application," Doc. 107-5 at 17, and that a city official told Howard "face-to-face that [Salina was] unable to issue a sign permit for the sign as currently proposed under the current sign code," *id.* This evidence does not indicate that Howard *consented* to the open-ended hold. *Sanchez v. Guzman*, 105 F.4th 1285, 1296–97 (10th Cir. 2024) (explaining that a party must support its version of the facts with evidence in the record that supports those facts). Nor has Salina established that Howard's knowledge that his permit application would be denied could deprive him of standing to challenge the permit requirement on its face or as applied to him. *See Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1156 (10th Cir. 2006) (finding plaintiffs had standing to challenge a licensing requirement because the city indicated its intent to enforce the requirement even though the plaintiffs did not actually apply for a license).

**b**

Salina next argues the plaintiffs lack standing because it believes that a judgment in the plaintiffs' favor will not redress the plaintiffs' asserted injuries. Doc. 107 at 18–20. In particular, it claims that an unchallenged provision of the sign code—specifically, Salina's regulations on how much signage a business may display—will preclude the plaintiffs from completing their display even if Salina's current construction of the word "sign" is unconstitutional. *Id.* at 19 ("What remains will be unchallenged, objective numerical size limits that are clearly constitutional.").

Salina's argument fails because a judgment in Howard and Cozy Inn's favor will meaningfully redress their injuries. When Salina stopped the plaintiffs from completing their display, it relied on three separate but interconnected parts of its sign code and/or its unwritten construction of the code. The first is the unwritten distinction that Salina applies between unregulated murals and regulated signs based on whether a given display pertains to the goods or services sold on site. Doc. 105 at ¶ 100; Doc. 107 at 13–14, ¶ 40. The second is the sign code's permit requirement, which only requires a permit to be issued for displays that qualify as a sign. Doc. 107 at 10, ¶ 20. And the third is the sign code's restriction on how much outdoor signage a particular business or entity may display on its premises, which again, applies to signs but not murals. Doc. 105 at ¶ 32; Doc. 107-12 at 11–12. According to the plaintiffs, those regulations are unconstitutional. If the plaintiffs prevail, Salina will be enjoined from enforcing any of these regulations. *See Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1229 (10th Cir. 2005) (finding that the plaintiffs had standing to challenge an ordinance requiring them to submit to fingerprinting and a bond requirement because they faced "a credible threat of prosecution or other consequences following from the statute's enforcement"); *Initiative & Referendum Inst.*, 450 F.3d at 1092–93 (noting that the legal validity of a plaintiff's claim must be accepted at the standing phase). That is sufficient for Article III standing. *Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 978 (10th Cir. 2020) (explaining that enjoining a government entity from enforcing an unconstitutional ordinance redresses injuries caused by the ordinance).

In essence, Salina argues that it could subsequently choose to expand its interpretation of the word "sign" to encompass *both* murals and signs, which would remove the allegedly unlawful mural-sign distinction that the plaintiffs oppose, while still precluding the plaintiffs' display. Doc. 107 at 19–20. This argument misses the mark. Salina

cannot avoid the plaintiffs' constitutional challenge by stating that it could, hypothetically, redefine "sign" to encompass more displays than it does now. The plaintiffs are challenging Salina's current definition of sign, which is the very definition stopping them from finishing their display. As a result, declaratory or injunctive relief precluding Salina from enforcing that interpretation would redress the plaintiffs' injury. *We the Patriots, Inc. v. Grisham*, 119 F.4th 1253, 1257 (10th Cir. 2024) ("The critical question, then, is whether our present grant of relief would have some real-world, not theoretical, effect."); *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012) (explaining that even if the injured party "would not be out of the woods, a favorable decision would relieve their problem 'to some extent,' which is all the law requires").

The authority Salina cited fails to support its position. Salina relies on three cases in which a plaintiff alleged that a portion of a local government's sign ordinance violated the First and/or Fourteenth Amendments. Doc. 107 at 19 (citing *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 800–01 (8th Cir. 2006), then citing *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892–93 (9th Cir. 2007), and then citing *Harp Advert. Ill., Inc. v. Vill. of Chi. Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993)). In each, the plaintiff challenged a discrete provision of the sign code that could be severed from the code if it were held to be unconstitutional. *Advantage Media, L.L.C.*, 456 F.3d at 800–01 (explaining that the plaintiff challenged multiple provisions of a sign ordinance that could easily be severed from the others); *Get Outdoors II, LLC*, 506 F.3d at 892 (same); *Harp Advert.*, 9 F.3d at 1292 (explaining that other provisions of the sign code were constitutionally valid even if the one challenged was not). Moreover, each of those sign codes included a separate and valid provision that the plaintiff did not challenge, which would prevent the plaintiffs from displaying the signs they wanted to erect or otherwise display regardless of whether the challenged provisions were constitutional or not. *See, e.g.*, *Harp Advert.*, 9 F.3d at 1292. As a result, a favorable judgment for the plaintiffs in those cases would not have put them any closer to erecting their displays. *Advantage Media, L.L.C.*, 456 F.3d at 802 ("[E]ven in victory it would be 'no closer' to erecting its billboards or obtaining damages than when litigation began."). They would simply be subject to regulation under a different and concededly valid provision of the code. *See id.*

That is not the case here. Howard and Cozy Inn's challenge includes the sign code's size restrictions, which is the same portion of the sign code that Salina says is a separate and unchallenged provision precluding the plaintiffs from completing their display. *See* Doc. 107 at 19. As a result, unlike the cases Salina cited, there is no scenario under the summary judgment record in which the sign code's size restrictions could be enforced against the plaintiffs' display without referencing the way Salina interprets and applies its definition of sign. *See Bishop v. Smith*, 760 F.3d 1070, 1077–78 (10th Cir. 2014) (holding that a statute the plaintiff did not challenge could not defeat redressability where there was no scenario in which the statute could be enforced if the challenged state constitutional amendment were found unconstitutional).

That the plaintiffs have standing to challenge specific provisions of the sign code does not mean they have standing to challenge the entirety of the code. Howard and Cozy Inn are challenging "the written sign code, the unwritten policies and practices, the permit requirement, the size restrictions, and the concomitant enforcement penalties." Doc. 106 at 6 n.2. The record, however, does not support such a broad challenge to Salina's sign regulations. *See Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1281–82 (10th Cir. 2002) (holding that a plaintiff lacked standing to challenge portions of an ordinance where there were no facts suggesting that portion would be applied to the plaintiff). As a result, the plaintiffs' claims are construed as to only challenge the parts of the sign code that Salina enforced or expressed an intent to enforce against them: the distinction between regulated signs and unregulated murals, the size restrictions applicable to signs, and the permit requirement. Doc. 109 at ¶ 3; Doc. 105 at ¶ 32.

### C

Howard and Cozy Inn's primary argument is that Salina's sign code violates the First Amendment's Free Speech Clause. Doc. 105 at 26–39. That clause prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. Outdoor displays, including signs, "are a form of expression protected by the Free Speech Clause." *City of Ladue v. Gilleo*, 512 U.S. 43, 48–49 (1994). Yet municipalities "have regulated outdoor advertisements for well over a century." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 65 (2022). Municipalities both enact sign regulations that carry penalties for non-compliance, and they often require individuals or entities to obtain a permit before they may display certain types of signs. *See id.* at 64–66. These types of regulation

make sense: "Unlike oral speech, signs take up space and may obstruct views, distract motorists . . . and pose other problems that legitimately call for regulation." *City of Ladue*, 512 U.S. at 48. The need for regulation, however, does not authorize local governments "to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Nor does it allow local governments to create permit-approval schemes giving unbridled discretion to government officials regarding which messages may be displayed, when and how a permit decision may be reviewed, and how long government officials may take to issue a decision regarding a permit application. *Dr. John's*, 465 F.3d at 1161; *Utah Animal Rights Coal.*, 371 F.3d at 1258.

These principles set the stage for the plaintiffs' free-speech arguments. They bring two types of First Amendment claims. Doc. 101 at ¶ 4.a.i. In one, they assert that Salina engages in content discrimination by applying its sign code to speech based on the topic or subject matter of the speech in a way that cannot survive strict scrutiny. *Id.* The other claim asserts that Salina's permit requirement is an impermissible prior restraint on the plaintiffs' speech. *Id.*

The plaintiffs' First Amendment claims are facial and as-applied challenges. Doc. 101 at ¶ 4.a.i. A successful facial challenge requires a plaintiff to "establish that no set of circumstances exists under which the ordinance would be valid," "that the ordinance lacks any plainly legitimate sweep," "or that it is overbroad because a substantial number of its applications are unconstitutional, judged in relation to its plainly legitimate sweep." *Harmon v. City of Norman*, 61 F.4th 779, 795 (10th Cir. 2023) (alterations omitted). In contrast, "an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014) (quoting *Colo. Right to Life Comm. v. Coffman*, 498 F.3d 1137, 1146 (10th Cir. 2007)). But "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1124 (10th Cir. 2012) (quoting *Citizens United v. FEC*, 558 U.S. 310 (2010)). The label a plaintiff places on his or her challenge does not control which standard must be satisfied, rather the distinction "goes to the breadth of the remedy employed." *Id.*

**1**

First, Howard and Cozy Inn contend that Salina imposes an impermissible content-based restriction on expression—both on its face and as applied to their display. Doc. 101 at ¶ 4.a.i. The crux of the plaintiffs' argument is Salina's alleged distinction between murals and signs based on the notion that a display is a sign if it pertains to a good or service sold on the same premises.

That distinction—between a mural and a sign—is facially unconstitutional, according to the plaintiffs, because it turns on the subject matter of the display. Doc. 105 at 26–30. And they state that Salina unconstitutionally applied the distinction to their display because Salina has seemingly allowed other businesses to erect displays pertaining to the goods or services they sell—such as a baseball training facility's mural reflecting baseball games and a music store's mural promoting music—without requiring those displays to meet the regulations set forth in the city's sign code by claiming they were murals. Doc. 105 at 28–30; *see Wells v. City and County of Denver*, 257 F.3d 1132, 1151 (10th Cir. 2001) (noting that an as-applied content-discrimination challenge may consider evidence regarding whether the policy is or has been "enforced in a uniform, non-discriminatory manner, without regard to content or viewpoint"); *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 816 (1984) ("To create an exception for appellees' political speech and not these other types of speech might create a risk of engaging in constitutionally forbidden content discrimination.").

The plaintiffs' claim can be taken in two steps. The first requires categorizing the type of regulation that the plaintiffs challenge. Based on that categorization, the second step is evaluating whether Salina's regulations survive the applicable level of scrutiny.

**a**

There are three potential categories of speech regulation that could describe Salina's mural-sign distinction. Those are content-neutral regulations, content-based regulations, and one unique type of content-based regulations—ones that distinguish only between commercial and non-commercial speech. The constitutional framework differs depending on which type of regulation is at issue.

For example, Salina argues that the framework governing content-neutral regulations applies. Doc. 107 at 20. A regulation is content neutral and subject to intermediate scrutiny if it "does not draw content-based distinctions on its face" and "is 'justified without reference to the content of the regulated speech.'" *Evans v. Sandy City*, 944 F.3d 847, 854 (10th Cir. 2019) (quoting *McCullen v. Coakley*, 573 U.S. 464, 479 (2014), and then quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). The plaintiffs, however, argue that the framework governing content-based regulations applies. Doc. 105 at 26. Content-based regulations—regulations that apply "because of the topic discussed or the idea or message expressed"—are presumptively unconstitutional and must survive strict scrutiny to be lawful. *Reed*, 576 U.S. at 163; *Street-MediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1249 (10th Cir. 2023). And both parties make alternative arguments under the commercial-speech framework. Doc. 105 at 30–35; Doc. 107 at 35–38. Regulations that impose more stringent restrictions on commercial speech than they do on non-commercial speech are content-based regulations, but they are subject to "a form of intermediate standard of review" instead of strict scrutiny. *Aptive Env't*, 959 F.3d at 987 (internal quotation marks omitted); *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1236–37 (10th Cir. 2004).

The parties vigorously dispute which category encompasses the challenged sign regulations. But it is not necessary to determine whether Salina's regulations are content based or content neutral. That is because Salina's regulations fail even accepting that intermediate scrutiny applies because the regulations are content-neutral

regulations.[5] *See McCraw v. City of Okla. City*, 973 F.3d 1057, 1070–71 (10th Cir. 2020) (taking this approach).

**b**

Salina's mural-sign distinction does not survive intermediate scrutiny. The intermediate-scrutiny standard turns on whether a restriction on speech "is narrowly tailored to achieving significant government

[5] Legal and factual uncertainty support this approach. For one, the facts of this case fall between two Supreme Court cases that reached opposite conclusions. *Compare Reed v. Town of Gilbert*, 576 U.S. 155, 164–65 (2015) (finding that a sign regulation was content based because it regulated signs differently based on their subject matter by imposing heightened restrictions on signs that directed individuals to events while treating signs that communicated other messages more favorably), *with City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71–72 (2022) (noting that a sign regulation that only regulated off-premises billboards was content neutral because it was "based solely on whether it is located on the same premises as the thing being discussed or not"); *see also StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1250 (10th Cir. 2023) (grappling with the "arguable tension" between *Reed* and *City of Austin* before finding that an ordinance regulating billboards based on whether they were paid for was content neutral under *City of Austin*). Adding to this uncertainty, the Tenth Circuit has not indicated in what situations evidence of arbitrary or discriminatory enforcement suggests a content-based regulation. *Wells v. City and County of Denver*, 257 F.3d 1132, 1156 (Briscoe, J., dissenting) (identifying evidence that the city arbitrarily enforced an exception to its speech restrictions but noting that the majority did not find the evidence presented sufficient to consider the city's policy one that regulated based on content).

For another, the parties agree only that Salina regulated the plaintiffs' display because it pertains to the food products Cozy Inn sells. Doc. 105 at ¶ 100. They dispute whether the policy is rooted in the text of Salina's sign code, whether Salina has consistently applied the policy, and whether the other language in the sign code defining signs as displays that "announce" or "direct attention to" are independent reasons Salina relied on to regulate the plaintiffs' display. *See* Doc. 108 at 7–8, ¶ 26. Although there are clear reasons to believe that Salina's alleged distinction between a mural and a sign lacks a textual basis, that its application of this alleged distinction has been inconsistently applied, and that the proffered concern about commercial direction was not the motivating factor for the action, those conclusions need not be reached to resolve this case. The reason is because, even assuming that it imposed a content-neutral restriction on the plaintiffs' display, Salina's regulation cannot survive intermediate scrutiny.

interests, and that [it] leaves open ample alternative channels of communication." *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1220 (10th Cir. 2021); *StreetMediaGroup*, 79 F.4th at 1252. In this context, "narrow tailoring requires that the chosen means do not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *StreetMediaGroup*, 79 F.4th at 1252 (quoting *Ward*, 491 U.S. at 799. The government carries the burden to show that its regulation is narrowly tailored to serve significant interests. *Doe*, 667 F.3d at 1133; *VoteAmerica v. Schwab*, 121 F.4th 822, 852 (10th Cir. 2024) ("The government has the burden of persuasion in this inquiry.").

Salina proffers four governmental interests for its sign regulations. They include aesthetics, traffic and pedestrian safety, and property values. Doc. 107 at 27. According to Salina, its sign regulations are narrowly tailored to those four interests because the regulations serve to limit the size, number, height, and location of signs. *Id.* at 28. Assuming without deciding that Salina has set forth substantial interests, Salina has not met its burden to demonstrate that its distinction between signs and murals is narrowly tailored to promoting the city's aesthetics, safety, or property values. *See StreetMediaGroup*, 79 F.4th at 1252 (describing this requirement); *Reed*, 576 U.S. at 171 (assuming interests were compelling because they were not properly tailored under the applicable standard).

**i**

As an initial matter, the parties dispute what evidence would suffice for a governmental entity like Salina to meet its burden to show that a sign regulation is narrowly tailored to the interests of aesthetics, property values, and traffic or pedestrian safety. *Compare* Doc. 107 at 29–30, *with* Doc. 108 at 28–35. Specifically, they disagree as to whether the government must present evidence to show that a government restriction of displays on private property is narrowly tailored to its aesthetic and safety interests, or whether *any* restriction of such displays is narrowly tailored as a matter of law. *Id.* The Tenth Circuit's most recent articulation of the intermediate-scrutiny standard in the context of a speech regulation restricting displays on private property states: "In this context, narrow tailoring requires that the chosen means do not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *StreetMediaGroup*, 79 F.4th at 1252 (quoting *Ward* , 491 U.S. at 799). This standard, regardless of what type of speech restriction is at issue, requires the government to show that

its "recited harms are real" or that its regulations "will in fact alleviate these harms in a direct and material way." *McCraw*, 973 F.3d at 1071.

To determine whether a municipality has produced sufficient evidence to meet this burden, it is necessary to "evaluate that evidence 'in light of the cases where those categories of evidence have previously been invoked.'" *McCraw*, 973 F.3d at 1073 (quoting *Aptive Envt'l*, 959 F.3d at 989). In cases involving speech restrictions on private property, evidence like expert testimony, research studies, and the experiences of other cities may suffice so long as the evidence that "the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51 (1986) (relying on testimony, research, and cases analyzing other cities' experiences to hold that the city's restriction on adult theaters was narrowly tailored to its interest in safety); *see also Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson Cnty., Kan.*, 492 F.3d 1164, 1167 (10th Cir. 2007) (requiring the county to justify that it reasonably relied on studies analyzing similar problems in surrounding communities to support its zoning ordinance). This standard does not set "a high bar," but it still requires municipalities to produce evidence that "fairly support[s] the municipality's rationale for its ordinance." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438–39 (2002).

Relying on *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), Salina promotes a different standard. Doc. 107 at 29–30. In that case, the Supreme Court applied the commercial-speech test to uphold an ordinance that allowed businesses to erect on-site billboard advertisements but prohibited off-site billboard advertisements. *Metromedia*, 453 U.S. at 500–12. The Supreme Court did not require the city to present evidence showing that off-site advertising was peculiarly dangerous or aesthetically harmful as compared to on-site advertising because the city's judgment to value "one kind of commercial speech—onsite advertising—more than another kind of commercial speech—offsite advertising" reflected a reasonable judgment "by the city that the former interest, but not the latter, is stronger than the city's interests in traffic safety and esthetics." *Id.* at 512. The Tenth Circuit has clarified that the situation in *Metromedia* is a narrow one applicable to commercial-speech cases "where [a court] can defer to the legislature on the basis of precedent which already has established that the legislature's chosen means directly advances the asserted ends." *Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1550 (10th Cir. 1991).

Salina has not shown that the narrow situation presented in *Metromedia* applies here. For one, Salina expressly rejects the notion that this case involves a regulation on commercial speech. Doc. 107 at 35. For another, Salina has not identified an "established line of cases" to support its judgment that displays pertaining to the goods or services sold on the same premises as the display are more detrimental to the city's interests than displays depicting something else. *See Adolph Coors Co.*, 944 F.2d at 1550. As a result, Salina must present evidence showing that its regulations do not "burden substantially more speech than is necessary to further [its] legitimate interests." *Evans*, 944 F.3d at 858.

**ii**

In its attempt to show a connection between the regulation and its interests, Salina points to three categories of evidence. Doc. 107 at 30–31. This evidence includes the testimony from city officials, industry-specific publications, and expert testimony. *Id.*; *see Brewer*, 18 F.4th at 1225–26 (noting that a city must present specific evidence that a challenged regulation is narrowly tailored to achieve the interests it asserts).

This evidence actually undermines Salina's position. For example, Salina relies on City Planner Dustin Herr's deposition testimony where he states that the sign regulations are designed to reduce sign clutter and distraction by limiting the size, number, height, and location of signs throughout the city. Doc. 107-6 at 10. Herr did not, however, address or explain why displays that (allegedly) do not pertain to the services or goods a business sells—for example, a commercial baseball training facility promoting engagement in baseball, or a music store promoting the engagement in playing music—would have any different impact on those interests than signs like Cozy's hamburger scheme might. *See McCraw*, 973 F.3d at 1075 (finding a restriction unlawful where there was no evidence that the city considered the correlation between the restriction it imposed and the problems it identified). Instead, his explanation is entirely circular; it depends on his characterization of whether the sign is deemed a mural, which is not regulated, or a sign, which is regulated and must obtain approval.

So, too, with the publications Salina cites. One publication, for example, suggests the general notion that regulating signs promotes safety and community aesthetics. Doc. 107-2 at 7. But again, that information provides no explanation or insight into how Salina differentiates between murals and signs. *See StreetMediaGroup*, 79 F.4th at 1252 (affirming dismissal because the plaintiff's complaint did not

sufficiently state a claim but stating it was "skeptical that paid-for signs are more distracting and damaging to aesthetics" under intermediate scrutiny).

The final category of evidence that Salina cites is expert testimony. Unlike the other two categories of evidence, which indicate *no* connection between Salina's interests and its mural-sign distinction, Salina's expert, Mark White, recognizes the needed connection. In particular, White states that the sign code "stops where it needs to, by not sweeping decorative building elements such as murals that display public art into the same regulatory system that applies to signs." Doc. 97-3 at 2. Relying on various studies, White opines that public art may actually improve traffic, aesthetics, and public health—unlike signs, which cause harm in those areas. *Id.* at 7–12. But in reaching this opinion, White's opinion not only accepts Salina's circular definition of art as true but depends on it for support. In other words, White's opinions rely on the assumption that the definition of public art, in all of the studies he relies on, is based on *where* a given display is located. But White's report is devoid of any explanation or opinion indicating how or why a display that references a business's product is any more harmful to safety, aesthetics, or health than a display that references anything else. *See Brewer*, 18 F.4th at 1229 (finding expert testimony insufficient to satisfy the narrow tailoring requirement when the expert's opinions lent "minimal support to the notion that the Ordinance does not burden substantially more speech than necessary, or that it alleviates non-speculative harms in a direct and material way"). Nor does he explain, for example, why a baseball training facility's baseball mural or a music store's mural depicting musical notes avoids such harms. This is insufficient to justify Salina's restrictions on the plaintiffs' speech. *See Edenfield v. Fane*, 507 U.S. 761, 771 (1993) (finding that a local government's ban on commercial solicitation was not narrowly tailored to the government's interest because the only evidence to support it was an affidavit containing "nothing more than a series of conclusory statements").

Other cases that have explored municipal regulations similar to the one Salina imposed have reached a similar result. In *Young v. Town of Conway*,783 F. Supp. 3d 588 (D.N.H. 2025), for example, the court found that a town's regulation against displays that feature the goods or services sold on the same premises as the display was not sufficiently connected between the town's interests and its enforcement against a bakery because there was no evidence that "a sign depicting baked

goods would have a different effect on safety than a sign depicting mountains (or anything else)." *Young*, 783 F. Supp. 3d at 608. That rule makes sense. It would seem illogical to argue that a hamburger-based display on a building housing a hamburger restaurant implicates interests requiring prohibition whereas that same display across the street on a building housing another business, perhaps a pizza restaurant, implicates none of those concerns.

* * *

This result does not undermine the authority that cities have to implement solutions to the problems that it encounters. As the Supreme Court has long recognized, the "First Amendment does not require a city, before enacting . . . an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities." *City of Renton*, 475 U.S. at 51. Nor does Salina need to wait for actual safety or aesthetic problems to occur before it can justify its regulations. *See Brewer*, 18 F.4th at 1243; *Evans*, 944 F.3d at 858. But the First Amendment requires that a municipality like Salina justify its solution to a given problem with some evidence that its regulations are connected to the interests they purport to serve. *See Brewer*, 18 F.4th at 1227 (finding a city ordinance unconstitutional because there was "little evidence of non-speculative harms or interests that the Ordinance's restrictions alleviate in a direct and material way"). As explained above, the uncontested facts demonstrate that Salina has presented no evidence connecting its solution—distinguishing between signs that pertain to the goods and services sold on-site and murals that do not—to its stated interests. As a result, the plaintiffs' motion for summary judgment on their First Amendment content-discrimination claim is granted, and Salina's motion is denied.

**2**

Second, Howard and Cozy Inn assert that Salina's permit requirement for a sign is a prior restraint that the First Amendment prohibits. Doc. 105 at 37. A prior restraint on speech, which occurs when the government must approve speech before it occurs, bears "a heavy presumption against its constitutional validity." *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000). To be constitutionally valid, prior restraints must encompass certain safeguards. *Essence*, 285 F.3d at 1289–90. In particular, prior restraints, such as permit requirements, cannot give "the decisionmaker unlimited time to decide on matters affecting the license; otherwise, there is the 'risk of indefinitely

suppressing speech.'" *Id.* (citation omitted). Howard and Cozy Inn contend that Salina violated these principles when it placed their permit application on an indefinite hold without formally approving or denying it.[6] *Id.*

Prior restraints must provide a clearly specified and brief time period in which speech may be restricted while government officials process a permit application. *Am. Target*, 199 F.3d at 1253. Salina's permit requirement allows the zoning administrator ten days to issue or refuse a permit "or within such further period as may be agreed to by the applicant." Salina Code § 42-502(b). On its face, this ten-day period satisfies the First Amendment. *See Am. Target*, 199 F.3d at 1253–54 (holding that a ten-day period restricting speech during administrative processing of a permit was constitutional). As applied to the plaintiffs, however, the result is different. *See City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 784 (2004) (reiterating that a facially valid prior restraint that provided a sufficient system of review could be challenged in the future by litigants who were denied licenses to "raise special problems of undue delay in individual cases as the ordinance is applied").

The uncontested facts establish that instead of making a formal determination, Salina set Howard's permit application aside indefinitely. Doc. 105 at ¶ 113. This exact situation, where city officials disregard a facially constitutional timeframe regarding one particular permit application, has not been addressed by binding authority. As a result, it is necessary to turn to the Supreme Court's and the Tenth Circuit's reasoning for striking down ordinances that lacked a prior-restraint deadline even on their face.

---

[6] Howard and Cozy Inn also assert that Salina's permit requirement is an unconstitutional prior restraint because it vests unbridled discretion in the government officials charged with the responsibility of granting or denying the permit. Doc. 105 at 37. That argument focuses on Salina's distinction between regulated signs and unregulated murals. In light of the conclusion that such a distinction is unconstitutional because it fails to survive intermediate scrutiny, *see supra* Section II.C.1, it is not necessary to address the plaintiffs' argument that the same distinction is an unconstitutional prior restraint. *See Am. Target*, 199 F.3d at 1250 n.2 (declining to consider a prior restraint claim that fell outside of the ordinary context of a licensing or zoning scheme after finding that the challenged provision was an unconstitutional burden upon free speech on other grounds).

The Supreme Court has repeatedly struck down ordinances as impermissible prior restraints because the ordinance failed to "place limits on the time within which the decisionmaker must issue the license." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990) (collecting cases). In particular, it reasons that a "scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *Id.; accord Dr. John's*, 465 F.3d at 1163–64 ("[T]he concern evidenced by prior restraint cases is that a party will have to refrain from speaking while it waits for a decision from the licensing authority."). The problem that those prior-restraint cases identify is that "each day of delay in acting on the application was a day in which the speaker was forced to be silent." *Utah Animal Rights Coal.*, 371 F.3d at 1259.

A permitting scheme without a deadline is not always unlawful. The Tenth Circuit has upheld permitting or licensing requirements that did not include a timing safeguard, but it did so because those schemes did not suppress or restrict the applicants' speech while they waited for the government's decision. For example, in *Utah Animal Rights Coalition*, the Tenth Circuit upheld a local government's delay in deciding a permit application because the application covered expression that was set to occur at a future event would not occur until after a decision was issued. *Id.* at 1259; *see also Dr. John's*, 465 F.3d at 1163 (similarly distinguishing a licensing scheme in which a business needed not wait to operate while waiting for a permit application to be decided).

Salina's actions are unconstitutional prior restraints because they forbade additional expressions while awaiting government approval. By putting Howard's application on hold, Salina has indefinitely suppressed his and Cozy Inn's expression. That deep freeze is the exact situation that the prior-restraint doctrine forbids. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 771–72 (1988) (explaining that a policy lacking a time frame for review violates the First Amendment by allowing for indefinite delay of a permit application). Despite the ordinance's ten-day requirement, Howard's permit application has been on hold since November 2023. Doc. 105 at ¶¶ 106, 113. Allowing such indefinite holds—especially when the city's ordinance requires a timely decision—would mean that nothing in the ordinance's application would prevent city officials "from encouraging some views and discouraging others," *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 133 (1992), which is exactly what the plaintiffs argue has happened here.

Salina's sole argument to the contrary—that Howard agreed to the open-ended delay—has already been rejected as factually unsupported. As explained above, the record evidence contradicts Salina's assertion that Howard consented to Salina placing his permit application on hold. *See infra* Section II.A. One deposition is particularly illustrative. Salina's Planning and Zoning Administrator, Dean Andrew, repeatedly stressed in his deposition that Howard agreed to the hold. Doc. 107-5 at 16–17. He was asked how he know that Howard agreed, and each time he emphasized that city officials *informed* Howard that they were placing his application on hold. For example, in one of his responses, he stated: "Mr. Howard was informed on Monday the 6th that we were unable to issue a sign permit, and he was informed that we were going to continue to work with him on coming up with a code-compliant solution that might allow the sign to ultimately be installed." *Id.* at 16. Another time, Andrew was explicitly asked how he defined Howard's consent to the hold. He responded: "Mr. Herrs talked to Mr. Howard face-to-face, handed him information face-to-face and told him face-to-face that we are unable to issue a sign permit for the sign as currently proposed under the current sign code." *Id.* at 17. Salina has not provided any evidence that would lead a reasonable juror to conclude that Howard had any agency in Salina's determination, much less that he voluntarily agreed to an indefinite hold of his permit application. As a result, Salina has not introduced evidence sufficient to rebut the plaintiffs' showing that Salina applied an unconstitutional prior restraint to their expression. And because Salina has not presented evidence that would create a genuine fact issue, the plaintiffs' motion for summary judgment on their prior restraint claim is granted, and Salina's motion on this claim is denied.

**D**

Howard and Cozy Inn's final claim is that Salina's sign policies are unconstitutionally vague in violation of the Fourteenth Amendment. Doc. 105 at 39–40. A policy is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1233 (10th Cir. 2023) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). The regulations at issue are not so vague as to offend the Fourteenth Amendment.

The plaintiffs urge that the sign code fails to define key terms, thereby encouraging arbitrary enforcement. Doc. 105 at 40. They point

to five phrases or terms: "mural," "art," "pertains to," "commercial speech," and "advertise." *Id.* Of those five terms or phrases, only one actually appears in Salina's sign code. Four of them are not alleged to be in the pertinent policy language—"mural," "art," "pertains to," and "commercial speech." They are merely phrases that Salina officials have used to describe or explain the city's sign regulations. *See, e.g.*, Doc. 105-5 at 29 (distinguishing "art and murals" from "sign[s]" at a Salina City Commission Meeting); Doc. 105-24 at 8 (noting in Salina's interrogatory answers that "the term 'art' may be used from time to time as an imprecise short-hand for 'not sign'"); Doc. 105-12 at 11 (discussing Salina City Manager's comment to a reporter stating that a sign "pertains to" the goods or services for sale); Doc. 105-5 at 6 (stating at a City Commission Meeting that the "important distinction here relates to commercial speech"). That language outside the four corners of the policy—while perhaps indicative of the First Amendment concerns involving arbitrary enforcement—cannot be considered in a vagueness inquiry. *StreetMediaGroup*, 79 F.4th at 1254 (explaining that inconsistent or isolated statements by city officials are not part of the vagueness inquiry).

The word "advertise," however, does appear in the text of the code. But that term is not vague; it can be understood by a person of ordinary intelligence. S*treetMediaGroup*, 79 F.4th at 1254 (finding that the term "advertising devices" is not impermissibly vague); *Students Engaged in Advancing Tex. v. Paxton*, 765 F. Supp. 3d 575, 602–03 (W.D. Tex. 2025) (collecting cases holding that the word "advertise" is commonly understood and not impermissibly vague). And even though it is not defined in the sign code, advertise may be readily defined in a way that provides city officials with sufficient standards to enforce its requirement. *Advertise*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/advertise (last visited Nov. 18, 2025) (defining advertise as "to make the public aware of (something or someone) especially by means of a published or broadcast notice"); *See McCraw*, 973 F.3d at 1081–82 (using dictionary definitions to illustrate that an ordinance was not impermissibly vague because its definition is commonly understood).

The plaintiffs attempt to make a vagueness challenge based on the alleged arbitrary enforcement that has occurred. Doc. 105 at 40. That is insufficient. Just because arbitrary or discriminatory enforcement may have occurred does not mean that the sign code was so vague as to encourage that enforcement. S*treetMediaGroup*, 79 F.4th at 1254. Nor

is it relevant that Salina appears to enforce its sign code against fewer displays than what its plain text could or should cover. *Id.* The proper vehicle for such arguments is a selective enforcement challenge, not a vagueness one. *Id.* The plaintiffs did not make a selective enforcement argument. Again, no factual disputes need resolution to find that the plaintiffs' vagueness claim fails. As a result, Salina's summary judgment motion on the plaintiffs' Fourteenth Amendment claim is granted, and the plaintiffs' motion is denied.

### E

Because Howard and Cozy Inn succeeded on their First Amendment claims, it is necessary to determine whether they are entitled to relief. They ask for declaratory relief finding Salina's sign regulations unconstitutional, and they seek to enjoin Salina and its officials from enforcing the challenged regulations. Doc. 101 at ¶¶ 5.b–5.c. The plaintiffs have justified only their request for a declaratory judgment.

**1.** The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act "is remedial and does not itself confer jurisdiction on federal courts." *Rector v. City and County of Denver*, 348 F.3d 935, 946 (10th Cir. 2003) (citing *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002)). But where the party seeking declaratory relief has satisfied the requirements for a federal court to exercise subject-matter jurisdiction over a case, district courts enjoy "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136–37 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

The plaintiffs have justified their request for declaratory relief. They demonstrated that Salina imposes an unconstitutional distinction between murals and signs. Because the definition of sign is unlawful, Salina cannot make any determination as to whether a display is a mural or sign without violating the First Amendment. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615–16 (2021) (explaining that the application of an unconstitutional distinction is itself a First Amendment injury). As a result, a declaratory judgment that Salina's mural-sign distinction is unconstitutional on its face is appropriate. The plaintiffs have also supported their request for a declaratory judgment finding that Salina imposed an unconstitutional prior restraint as applied to their speech. By applying that restraint, Salina has subjected the plaintiffs to a constitutional harm since it put Howard's permit application

on indefinite hold. Declaratory relief to address that harm is warranted. *See Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) (noting that district courts may grant declaratory relief for past constitutional violations "which will in turn affect the parties' current rights or future behavior").

**2.** The same cannot be said about Howard and Cozy Inn's request for a permanent injunction. The plaintiffs request broad relief, which they describe as follows:

> b. A prospective permanent injunction enjoining the City, its officers, agents, employees, attorneys, servants, assigns, and all those in active concert or participation who receive, through personal service or otherwise, actual notice of this Court's order, from enforcing or directing the enforcement of the City's mural-sign code regime on its face and as applied to Plaintiffs . . . .
>
> * * *
>
> c. A permanent injunction prohibiting Defendant from taking any enforcement or other action against Plaintiffs for displaying their mural in its current position on The Cozy Inn, or for completing the mural on The Cozy Inn.

Doc. 101 at ¶¶ 5.b–5.c.

Success on the merits is not enough to support a request for injunctive relief. A plaintiff must also show "irreparable harm unless the injunction is issued," that "the threatened injury outweighs the harm that the injunction may cause the opposing party," and that "the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (quoting *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003)). Permanent injunctions "must be narrowly tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Ops., Inc.*, 287 F.3d 955, 961–62 (10th Cir. 2002). Additionally, the Tenth Circuit has cautioned that federal courts "must be cautious about issuing an injunction against a municipality." *Signature Props. Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1269 (10th Cir. 2002). That is because "when a party seeks injunctive relief in federal court against a state or local government or governmental entity, concerns of federalism counsel

respect for the 'integrity and function' of those bodies." *Id.* (citations omitted). And where a plaintiff requests both declaratory and injunctive relief regarding an unconstitutional ordinance, declaratory relief is generally sufficient where there is "no proof that [the defendant] would not . . . acquiesce in the decision . . . holding the challenged ordinance unconstitutional." *Poe v. Gerstein*, 417 U.S. 281, 281 (1974) (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 165 (1943)); *accord WildEarth Guardians v. Conner*, 920 F.3d 1245, 1261 (10th Cir. 2019).

Howard and Cozy Inn have not provided any argument or pointed to any evidence suggesting why a permanent injunction is necessary to ensure that Salina complies with the declaratory judgments issued against it. Accordingly, the plaintiffs' request for a permanent injunction is denied. *See Millard v. Camper*, 971 F.3d 1174, 1180 n.8 (10th Cir. 2020) (affirming the district court's grant of declaratory judgment but denial of permanent injunctive relief because the plaintiffs did not submit any evidence "to establish the requisite factors other than success on the merits").

**III**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, Doc. 104, and Salina's Motion for Summary Judgment, Doc. 106, are GRANTED in part and DENIED in part, and both Motions to Exclude Expert Testimony, Docs. 97 & 98, are DENIED.

It is so ordered.

Date: November 19, 2025

s/ Toby Crouse
Toby Crouse
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **Cozy Inn, Incorporated, d/b/a The Cozy Inn; Stephen Howard,** | |
| **Plaintiffs,** | **CIVIL ACTION** |
| | **CASE NO. 6:24-cv-01027-TC-ADM** |
| **v.** | |
| **City of Salina, Kansas,** | |
| **Defendant.** | |

**NOTICE OF APPEAL**

Defendant, City of Salina, Kansas, by and through its attorneys Fairfield and Woods, P.C., and Clark, Mize & Linville, Chartered, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment entered on November 19, 2025.

Respectfully submitted this 18th day of December, 2025.

*s/ Aaron O. Martin*
Aaron O. Martin
Bar Number: 24170
Attorney for Defendant, City of Salina, Kansas
Clark, Mize & Linville, Chartered
P.O. Box 380
Salina, KS 67402-0380
Tel.: (785) 823-6325
Fax: (785) 823-1868
Email: aomartin@cml-law.com

*s/ Todd G. Messenger*
Todd G. Messenger
CO Bar Number: 38783
*Pro Hac Vice* Attorney for Defendant, City of Salina, Kansas
Fairfield and Woods, P.C.
1801 California St., Ste. 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax: (303) 830-1033
Email: tmessenger@fwlaw.com

*s/ Amanda C. Jokerst*
Amanda C. Jokerst
CO Bar Number: 47241
*Pro Hac Vice* Attorney for Defendant, City of Salina, Kansas
Fairfield and Woods, P.C.
1801 California St., Ste. 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax: (303) 830-1033
Email: ajokerst@fwlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of December, 2025, I caused the foregoing NOTICE OF APPEAL to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record including: Jeffrey Shaw and Samuel G. MacRoberts.

*s/ Aaron O. Martin*
Aaron O. Martin

**In the United States District Court
for the District of Kansas**

---

Case No. 24-cv-01027-TC

---

COZY INN, INCORPORATED, D/B/A
THE COZY INN,
STEPHEN HOWARD,

*Plaintiffs*

v.

CITY OF SALINA, KANSAS,

*Defendant*

---

## JUDGMENT IN A CIVIL CASE

☐ Jury Verdict. This action came before the Court for a jury trial. The issues have been tried and the jury has rendered its verdict.

☒ Decision by the Court. This action came before the Court. The issues have been considered and a decision has been rendered.

**Pursuant to the Court's Memorandum and Order filed on November 19, 2025, Doc. 136, and modified by a telephone conference held on January 6, 2026, the Court finds in favor of plaintiffs Cozy Inn, Inc., d/b/a, The Cozy Inn and Stephen Howard on Claims 1 and 2 and in favor of Defendant City of Salina, Kansas on Claim 3.**

Date: January 7, 2026

SKYLER B. O'HARA
CLERK OF THE DISTRICT COURT

By: s/ Traci Anderson
Deputy Clerk

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026, I electronically filed the foregoing **APPENDIX OF APPELLANT CITY OF SALINA, KANSAS, Volume 16 of 16,** with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system and was served on the following counsel of record for the parties in this case:

Samuel G. MacRoberts
Jeffrey Shaw
Sam@KansasJusticeInstitute.org
Jeff@KansasJusticeInstitute.org

## CERTIFICATE OF DIGITAL SUBMISSION

**Privacy Redaction Certification:** No privacy redactions were required.

**Paper Copy Certification:** If required to file additional hard copies, that the ECF submission is an exact copy of those documents.

**Virus Scan Certification:** The digital form of this document submitted to the Court was scanned for viruses using SentinelOne, Version 25.1.4.434, and according to the program the document is virus free.

Fairfield and Woods, P.C.

*s/ Todd Messenger*

Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com

*Attorneys for Defendant-Appellant*
*City of Salina, Kansas*