No. 25-3225

# In the United States Court of Appeals for the Tenth Circuit

COZY INN, INCORPORATED, ET AL., Plaintiffs-Appellees,

*v.*

CITY OF SALINA, KANSAS, Defendant-Appellant.

On Appeal from the United States District Court
for the District of Kansas, Case No. 6:24-cv-01027-TC
(Hon. Toby Crouse)

## MOTION FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLEES

Robert Frommer
Elizabeth (Betsy) Sanz
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
rfrommer@ij.org
bsanz@ij.org

Riley Grace Borden
INSTITUTE FOR JUSTICE
600 University St., Suite 2710
Seattle, WA 98101
(206) 957-1300
rgborden@ij.org

*Counsel for Amicus Curiae Institute for Justice*

# MOTION FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE

In accordance with Federal Rule of Appellate Procedure 29(a)(2), the Institute for Justice respectfully requests that this Court grant it leave to file a brief as amicus curiae in support of Plaintiffs-Appellees. *See* Fed. R. App. P. 29(a)(2) (providing that all non-governmental briefs not consented to by all parties must be submitted by motion). The Institute for Justice sought consent to file the brief from counsel for the parties. Counsel for Plaintiffs-Appellees consented to the filing of the Institute's brief, but counsel for Defendant-Appellant refused to consent.

## Interest of Amicus Curiae, Reasons Why an Amicus Brief is Desirable, And How the Matters It Asserts are Relevant to the Case's Disposition

The Institute for Justice is a nonprofit, public-interest law firm that represents civil-rights plaintiffs across the nation, including within the Tenth Circuit. *See, e.g.*, *Sampson v. Buescher*, 625 F.3d 1247 (10th Cir. 2010); *Harjo v. City of Albuquerque*, 326 F. Supp. 3d 1145 (D.N.M. 2018); *cf. Frey v. Town of Jackson*, 41 F.4th 1223 (10th Cir. 2022) (appearing at oral argument as amicus).

One constitutional pillar the Institute for Justice seeks to uphold is the right to free speech. As part of that work, IJ is the nation's leading

legal advocate regarding the First Amendment implications of municipal sign codes, particularly as they apply to murals and other non-structural displays. *E.g.*, *Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625 (4th Cir. 2016) (invalidating sign code as content-based following U.S. Supreme Court remand); *Neighborhood Enters., Inc. v. City of St. Louis*, 644 F.3d 728, 736 (8th Cir. 2011) (holding code's definition of sign content-based because "the message conveyed determines whether the speech is subject to the restriction"); *Kersten v. City of Mandan*, 389 F. Supp. 3d 640, 646 (D.N.D. 2019) (enjoining ordinance "which convey[ed] a commercial message while allowing other murals whose messages are not commercial"). Counsel for amicus have also published extensively on the topic, including drafting a model sign code for municipalities to consult. Institute for Justice, The Institute for Justice's Model Sign Code, available at https://ij.org/wp-content/uploads/2017/09/Model-Signs-Doc-DRAFT3.pdf.

Most recently, counsel for amicus Institute for Justice prevailed at trial in *Young v. Town of Conway*, 783 F. Supp. 3d 588 (D.N.H. 2025), a case on all fours with this one. There, the Town of Conway, New Hampshire, told Leavitt's Country Bakery that it had to take down its

student-designed mural because it depicted donut-like mountains. It turned out that, for years, Conway (like Salina here) had distinguished between regulated signs and unregulated murals based on what they depicted. But at trial, Conway could not explain how regulating only displays where "the content of the sign relates to the goods or services sold at the premises where the sign is located" furthered its purported interests in safety and aesthetics. *Id.* at 608. The town's failure to put forward any evidence in favor of its mural-sign distinction was fatal. As the court held, because the "town's enforcement against Leavitt's bakery has no rational connection to any of its stated interests, the ordinance, as applied here to the Leavitt's display, is unconstitutional." *Id.* at 610.

Our brief, we believe, will aid this Court's decisional process. It is designed to be additive to the plaintiffs' brief in two distinct ways.

First, our brief provides the court with a broader perspective on how courts nationwide have evaluated the constitutionality of speech, including municipal sign codes, over time. It explains how restrictions that turn on the message that speech conveys have long been considered content-based (and therefore subject to strict scrutiny) under Supreme Court jurisprudence, but, due to errant language in the Court's opinion

in *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), some courts looked only at whether the government had a discriminatory purpose in restricting speech to determine whether a restriction was subject to strict or intermediate scrutiny. The Court cleared up that confusion in its 2015 decision about a sign ordinance in *Reed v. Town of Gilbert*, 576 U.S. 155. Then came the Court's 2022 decision in *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61, which concerned an on-premises/off-premises billboard restriction, and which some courts appear to be interpreting as repudiating *Reed*'s central holding that "[a] law that is content based on its face is subject to strict scrutiny." *Reed*, 576 U.S. at 165. Our brief describes this history and explains why the best reading of *Austin* is that it is a narrow carveout from *Reed* specific to billboards.

Second, our brief explains the importance of requiring the government, in every instance, to justify its restrictions on speech using evidence. Under Supreme Court precedent, it is the government at every stage that has the burden of proving the constitutionality of its speech restrictions. And that burden requires evidence, no matter whether the restriction at issue is content-based, content-neutral, or only regulating

commercial speech. Perhaps in rare circumstances the quantum of evidence needed can turn, in part, on the novelty of the government's restriction. For instance, regulations on billboards are not at all novel, while the justifications are well-trod, which might explain a line of precedent condoning a relaxed evidentiary standard. But where the government regulates two identical displays differently based solely on what they depict, that is novel and unusual, and the government must put forward something justifying that differential treatment. Here, Salina (just like Conway, New Hampshire, at trial) failed to make such a showing. Our brief explains why that evidentiary failure is fatal and is a proper basis for affirmance regardless of the level of First Amendment scrutiny this Court employs.

For these reasons, the Court should grant the Institute for Justice's motion for leave to file the attached amicus brief. If this motion is granted, the Institute for Justice further requests that the accompanying brief be considered filed as of the date of this motion's filing.

Dated: April 1, 2026.

Respectfully submitted,

s/ Robert Frommer

Robert Frommer
Elizabeth (Betsy) Sanz
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
rfrommer@ij.org
bsanz@ij.org

Riley Grace Borden
INSTITUTE FOR JUSTICE
600 University St., Suite 2710
Seattle, WA 98101
(206) 957-1300
rgborden@ij.org

*Counsel for Amicus Curiae*
*Institute for Justice*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, I electronically filed a copy of the foregoing brief with the Clerk of the United States Court of Appeals for the Tenth Circuit using the Court's appellate CM/ECF system. I further certify that all participants are registered CM/ECF users who will be served by the appellate CM/ECF system.

Dated: April 1, 2026.

s/ Robert Frommer

Robert Frommer
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
rfrommer@ij.org