**CASE NO. 25-3225**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

Cozy Inn, Incorporated,
d/b/a The Cozy Inn, *et al*.

Plaintiffs-Appellees,

v.

City of Salina, Kansas

Defendant-Appellant.

On Appeal from the United States District Court for the District of Kansas
The Honorable Judge Toby Crouse
D.C. No. 6:24-cv-01027-TC

# APPELLANT CITY OF SALINA, KANSAS' REPLY TO APPELLEES' RESPONSE TO MOTION TO STAY DISTRICT COURT ORDER REGARDING FACIAL CONSTITUTIONALITY PENDING APPEAL

Respectfully submitted,
April 8, 2026

Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com
*Attorneys for Defendant-Appellant
City of Salina, Kansas*

Defendant/Appellant, City of Salina ("Salina"), by and through its attorneys of record, submits this Reply, as follows:

**INTRODUCTION**

Salina's request for Stay seeks to allow Salina to regulate outdoor displays based on whether they are "used to announce, direct attention to, or advertise," a phrase that has for decades allowed Salina to avoid the sign clutter that jeopardizes traffic and pedestrian safety and degrades community aesthetics, while promoting decorative building elements, like murals, that enhance aesthetics and promote property values and traffic and pedestrian safety. Ex. 7 at 3, 5, 10-11. It is a definition grounded in history and common sense, not speaker or content preference. The Sign Code is concerned about what a display does, not what it says.

If there were any doubt about the impact signs have on traffic and pedestrian safety, as opposed to decorative building elements, Salina's Staff testimony, expert testimony, and industry publications settled it. Salina's Zoning Administrator, testified "attracting attention and directing attention" are different because "attracting attention might briefly pull your eyes off the road . . . [while] [d]irecting attention is for something that someone wants you to read or look at for an extended period." Ex. 33 (Doc. 108-1) at 10; Ex. 28 at 1. Further, as AICP-certified Herrs testified "signs by their definition attract your eye in a way to announce, direct

attention to or advertise [which] does change the character of a sign in relationship to or contrasted to a mural . . . .” Ex. 27 at 8. Signs are “designed to pull your eye . . . [t]hey wouldn’t function if they didn’t . . . the more your eye is pulled away from either driving or walk and potentially creating a safety hazard.” Ex. 26 at 4.

Take for example the top images, the Salina Art Center Mural, Ex. 7 at 18, an abstract tile pattern, and the Mural at the Mill, Ex. 34 (Doc. 105-6). Neither is “used to announce, direct attention to, or advertise.”


Ex. 7 at 18


Ex. 34

Contrast them with Appellees’ sign that does all three—asking the viewer to pay attention, hold that attention long enough to register the information, and then take action on it.



Ex. 8 at 5

This Court should grant a Stay because Salina has shown a likelihood of success on the merits. There is no logical, commonly understood definition of "sign" that does not relate to the function or purpose of the display. Indeed, consider the definition in the regulations implementing the Highway Beautification Act: "Sign means any outdoor sign, display, device, figure, *painting*, drawing, message, placard, poster, billboard, or other thing which is *designed, intended, or used to advertise or inform* . . ." *See* 23 CFR § 750.102(m) (emphasis added).

Moreover, the public would be benefitted by the stay, not harmed. The enforcement of the Sign Code as-is allows Salina to continue to control sign clutter and advance its interests, while promoting public art that enhances community pride and welfare. Letting the issue of its constitutionality wait through the appeal process, so that Salina is not required to expend public resources sorting out a new code that may or may not be supportable by expert testimony, industry publications, deference to legislative judgment and judicial precedent, and the testimony and expertise of Salina staff, is in the interest of both judicial economy and preservation of taxpayer resources.

The change in tone in the Response comes as a surprise as Appellees joined in the Motion to Stay this very Order before the District Court and argued in support of that motion on January 6, 2026. Ex. 9; Ex. 11 at 11. If Appellees were concerned

Salina was "singularly focused" on the Boom! Festival to the detriment of the Cozy, they would not have supported the Joint Motion. *Id*.; 10th Cir. Doc. 55 at 6.

Salina should not be forced to jump through administrative hoops in seeking out a new definition of "sign" while the appeal is pending, especially where the District Court imposed a heightened evidentiary burden. That is, even if Salina adopts a new definition, however temporary, it would be hard-pressed to defend it if challenged in Court by the Kansas Justice Institute or its flotilla of *amici* movants. Appellees and the *amici* movants have already demonstrated that there is a focused effort underway to upend the commercial speech doctrine, creating significant further litigation risk as to the exploration of alternatives confined to commercial speech. 10th Cir. Doc. 21 at 33. Even if there were a perfect code formulation that advanced Salina's interests, this appeal may well be over (and appeals of Salina's other attempts in process) before Salina is able to discover it.

Meanwhile, Salina's public and private investment in public art is irreparably harmed, the Boom! Festival is threatened, and Salina must continue to temporarily enforce its substituted definition of sign that is currently in effect. Appellees admit they are not harmed by the requested stay. 10th Cir. Doc. 20-1 at 2. And twice in the Complaint, alleged they "don't want Salina to remove or otherwise restrict the beautiful murals throughout Salina." Ex. 8 at 12 (¶72); 17 (¶117).

# ARGUMENT

## I. Salina Has Shown a Likelihood of Success on Appeal.

### A. Salina's Sign Code is Not Content-Based

The Sign Code is not content-based. A regulation is "content-based" if its text "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The definition of "sign" does not reference any topic, idea, or message. It is not concerned with what topic is announced, the place or object that attention is directed to, or what is advertised. There is "not even a hint of bias or censorship" in it. *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984). Regulation of "solicitation" (advertising) is "not content-based" if it does not "discriminate based on topic, subject matter, or viewpoint." *City of Austin v. Reagan Nat'l Adv. of Austin, Inc.*, 596 U.S. 61, 72 (2022). The definition of "sign" addresses the purpose of the display but does not "swap[] an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result," and is therefore constitutionally permissible. *Id.* at 74-75.

A regulation may also be "content-based" if it was "*adopted* . . . because of disagreement with the message [the speech] conveys." *Reed*, 576 U.S. at 156. (emphasis added; quotation omitted). That situation is not present here. Incidental "here, not there" situations will happen. These are both permissible and unavoidable.

*See Ward v. Rock Against Racism*, 491 U.S. 781, 797 (1989); *Austin*, 596 U.S. at 75. Yet even if "here, not there" impacts were intentional, "[a]s early as 1932, the Court had already approved a location-based differential for advertising signs." *Austin*, 596 U.S. at 75.

Salina applied the content-neutral Sign Code, by its letter to the Cozy Sign. Ex. 4 at 16; Ex. 5 at 6-7; Ex. 20. The Response paraphrases and picks apart non-testimonial Staff comments made at a City Commission meeting, a summation of statements made by staff as recollected by the sign painter himself, city minute notes, an email from the Salina Manager, and a question by the Salina Manager at the City Commission meeting as the Commissioners discussed the nuances of sign regulations— "that ends up being a legal question of, if there are no words but it's still, you know, related to the business activity of the building, I think there's case law out there that says there's still a commercial message and it's still a sign" (Ex. 35 (Doc. 16-2) at 28)—to suggest Salina admitted to regulating the Cozy Sign on the basis of content and that the Sign Code is content-based. 10th Cir. Doc. 55 at 7-8. This misrepresents the evidence and is not germane to the facial inquiry. *Id*.

### B. Salina's Definition of Sign Satisfies Intermediate Scrutiny

Salina's Sign Code passes intermediate scrutiny. 10th Cir. Doc. 20-1 at 25-31. Municipalities have never been required to show "not merely by appeal to common sense, but also with empirical data, that [their] ordinance[s] will

successfully" advance their purpose. *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 439 (2002); *see also Reagan Nat'l Adv. of Austin, Inc. v. City of Austin*, 64 F.4th 287, 296-97 (5th Cir. 2023). Nonetheless, Salina produced evidence that its Sign Code advances its substantial interests. 10th Cir. Doc. 20-1 at 45-50. The industry publications, like The Cardoza Law Review article, acknowledge that in the context of sign regulations, "Courts routinely qualify community aesthetics and traffic safety as 'substantial' government interests," (citing *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-508 (1981)) and gave an example of a content-based ordinance as "a sign ordinance that requires political signs to obtain a permit before being erected, but that exempts time and temperature signs from this permit requirement." Ex. 28 at 17. As discussed, *supra* at 6-7, that content distinction is not the case here.

Law review articles are known to analyze and critique an issue at the writer's preference. The law review article was not submitted to suggest that the opinions of a 2014 JD Candidate reign over the reported opinions of seasoned jurists on the same topic, but to show Salina was aware of cases like *Metromedia* that were analyzed by the article. The other industry specific publications supported the finding that Salina's Sign Code was narrowly tailored to advance its interests. Ex. 28 at 3-10.

Citing to a publication and basing his conclusions on thirty-four years of experience as a professional planner, AICP certification, professional judgment,

"review of technical literature relating to the field of urban planning . . . [and] signs" and "extensive planning experience throughout the nation" Expert White's report supported Salina Staff's testimony, opining "Sign clutter contributes to a decline in traffic safety," and "reasonable restrictions on the height, spacing, location, and size of signs promote traffic safety." Ex. 7 at 6, 10. In addressing the Complaints allegations about "murals" and the application of the Sign Code, Expert White explained that "[w]hile public art (as do public spaces such [as] parks, or buildings with architectural significance) can <u>attract</u> people to a place . . . , it does not <u>direct</u> people to a place," and "signs that Salina regulates are a specific medium of communication, and not a specific type of message." *Id*. at 19.

Additionally, Appellees' own expert supported the finding that signs are detrimental to Salina's interests as he cited the Stutts report, which found signs are in one of the highest categories of distraction. Ex. 21 at 13 (Pg. 105); Ex. 36 (Doc. 113-13) at 15-16, Table 6.

Staff testimony and Expert White's opinion pointed out how signs impact traffic and pedestrian safety and community aesthetics. It is axiomatic their testimony would incorporate and apply the definition of sign. That is an *analysis*, not circular reasoning. The evidence showed Salina's Sign Code satisfied intermediate scrutiny. Salina was not required to employ "the least restrictive or least intrusive means." *Ward*, 491 U.S. 781 at 798.

Moreover, the Order rests on immaterial individual cases and hypotheticals. The "validity of [a] regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." *Ward* 491 U.S. at 801. Individual cases and hypotheticals may be interesting to consider, but they are "beside the point." *Id*.

## II. Salina Will Be Irreparably Harmed Absent the Stay

The "concept of the public welfare is broad and inclusive," and includes values that are "spiritual as well as physical, aesthetic as well as monetary." *Berman v. Parker*, 348 U.S. 26, 33 (1954). Salina is empowered to advocate for its "citizens' First Amendment interests." *Community Commc'ns Co., Inc. v. City of Boulder, Colo.*, 660 F.2d 1370, 1376 (10th Cir. 1981). "There is a strong correlation between public art and the reinvestment in downtown Salina" and the effect of the Order threatens the philanthropic investment and arts and culture community that generates a great source of pride for Salina. Ex. 12. Without support, Appellees cast doubt on the investment figure presented in Salina's affidavit (Ex. 12), but their own Complaint alleged Salina's public art and culture scene had economic benefits. Ex. 8 at 11 (¶69), 16 (¶105).

Salina explained how its options, absent the stay, caused irreparable harm. 10th Cir. Doc. 20-1 at 21-22. The Response suggests Salina could create an

"exemption" for "all painted wall displays," ignoring the safety concerns presented by signs. Ex. 26 at 4; *supra* at 2-3, 9. Moreover, the Order upended the definition of "sign," such that *any* "display" would have to be regulated in the same manner as signs. That would include things are far-afield as yard gnomes, and, potentially, cell towers that are decorated to look like trees.[1] An "exemption" for "all painted wall displays" would open the door to Salina having to craft an untold number of other "exemptions."

Appellees' suggestion that Salina can easily amend its Sign Code because it amended its Certificate of Compatibility ("COC") regulations, or that refusing to do so in the same manner infers Salina regulates in a content-based manner, is misleading. 10th Cir. Doc. 55 at 16-17. The COC concerns construction, building, demolition, and exterior changes of all types in a small geographical area of a uniform historic district. Ex. 37 (Doc 27 at 1-2). Had Appellees cited the full provision of SMC § 2-207(b)(4) it would have revealed that the painting or repainting exemption applied if ". . . work involves only painting or repainting of all or part of a building wall on a side or rear elevation that is not a storefront, primary façade, or secondary façade (as defined by the design guidelines) and does not

[1] This is not to suggest that individual cases and hypotheticals are germane to the evaluation of facial constitutionality in this case—but to demonstrate that the reason they are not is because they inevitably can cut both ways.

modify the color or finish of any character-defining features (as defined by the design guidelines)." *See* Ex. 14 at 3. That is a far cry from an amendment regarding the definition of the term "sign" that applies city-wide.

## III. <u>Appellees Will Not Be Harmed</u>

Appellees agree they will not be harmed.

## IV. <u>No Risk of Harm to the Public Interest</u>.

The District Court did not seem concerned about the application of Sign Code to other parties. Ex. 11 at 10 ("what you choose to do with any additional people seems like a matter between you and those individuals or entities"). Appellees were not concerned for the First Amendment rights of others when they urged the District Court to approve the Joint Motion. Ex. 11 at 11 ("I think – Document 140, we would urge the court to approve it.").

Salina's definition of sign does not require Salina officials to know what "art" is or to be the aesthetics police. Moreover, the District Court correctly decided the vagueness claim in Salina's favor, finding that the Sign Code does not "authorize or even encourage[] arbitrary and discriminatory enforcement." Ex. 1 at 31. Allowing the definition of sign to stand during the appeal benefits the public by enhancing tourism, community arts, culture, property values, and pride. Ex. 8 at 12 (¶72); 17 (¶117); Ex. 12.

## CONCLUSION.

For the foregoing reasons, Salina requests a stay of the Order pending resolution of this appeal.

Respectfully submitted this 8th day of April, 2026.

Todd Messenger
Name of Counsel

*s/ Todd Messenger*
Signature of Counsel

1801 California St., Ste. 2600
Denver, CO 80202
(303) 830-2400
Mailing Address and Telephone Number

tmessenger@fwlaw.com
Email Address

Amanda Jokerst
Name of Counsel

*s/ Amanda Jokerst*
Signature of Counsel

1801 California St., Ste. 2600
Denver, CO 80202
(303) 830-2400
Mailing Address and Telephone Number

ajokerst@fwlaw.com
Email Address

Lee Katherine Goldstein
Name of Counsel

*s/ Lee Katherine Goldstein*
Signature of Counsel

1801 California St., Ste. 2600
Denver, CO 80202
(303) 830-2400
Mailing Address and Telephone Number

lgoldstein@fwlaw.com
Email Address

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 2,586 words.

2. As required by Fed. R. App. P. 27(d)(1)(E), this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 in 14-point Times New Roman font.

Fairfield and Woods, P.C.

*s/ Amanda C. Jokerst*
Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com

*Attorneys for Defendant-Appellant*
*City of Salina, Kansas*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, I electronically filed the foregoing **APPELLANT CITY OF SALINA, KANSAS' REPLY TO APPELLEES' RESPONSE TO MOTION TO STAY DISTRICT COURT ORDER REGARDING FACIAL CONSTITUTIONALITY PENDING APPEAL,** with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system and was served on the following counsel of record for the parties and movants for *amicus curiae* briefs ("Movants") in this case:

Samuel G. MacRoberts, Esq.
Jeffrey Shaw, Esq.
Sam@KansasJusticeInstitute.org
Jeff@KansasJusticeInstitute.org

**MOVANTS:**
Pacific Legal Foundation
Amy Peikoff, Esq.
Jeremy Talcott, Esq.
APeikoff@pacificlegal.org
JTalcott@pacificlegal.org

Goldwater Institute and Manhattan Institute
Timothy Sandefur, Esq.
litigation@goldwaterinstitute.org

Alliance Defending Freedom
John B. Bursch, Esq.
James A. Campbell, Esq.
Christine N. Marsden, Esq.
jbursch@ADFlegal.org
jcampbell@ADFlegal.org
cmarsden@ADFlegal.org

Institute for Justice
Robert Frommer, Esq.
Elizabeth (Betsy) Sanz, Esq.
Riley Grace Borden, Esq.
rfrommer@ij.org
bsanz@ij.org

rgborden@ij.org

Liberty Justice Center
Brendan J. Philbin, Esq.
bphilbin@libertyjusticecenter.org

National Federation of Independent Business, Inc.
J. Michael Connolly, Esq.
Paul R. Draper, Esq.
mike@consovoymccarthy.com
paul@consovoymccarthy.com

Fairfield and Woods, P.C.

*s/ Amanda C. Jokerst*
Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com

*Attorneys for Defendant-Appellant*
*City of Salina, Kansas*

## CERTIFICATE OF DIGITAL SUBMISSION

**Privacy Redaction Certification:** No privacy redactions were required.

**Virus Scan Certification:** The digital form of this document submitted to the Court was scanned for viruses using SentinelOne, Version 25.1.4.434, and according to the program the document is virus free.

Fairfield and Woods, P.C.

*s/ Amanda C. Jokerst*
Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com

*Attorneys for Defendant-Appellant*
*City of Salina, Kansas*