# Exhibit A
# Andrew Deposition
# Excerpts

EXHIBIT 33

.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

.

.

COZY INN, INCORPORATED, d/b/a
THE COZY INN; STEPHEN HOWARD
Plaintiffs,

.

vs. Civil Action No. 6:24-cv-01027-TC-ADM

.

CITY OF SALINA, KANSAS,
Defendant.

.

.

DEPOSITION OF
DEAN ANDREW,

taken on behalf of the Plaintiffs, pursuant to Notice to Take Deposition, beginning at 9:02 a.m. on the 30th day of September, 2024, at Clark, Mize & Linville, 129 S. 8th Street, in the City of Salina, County of Saline, and State of Kansas, before Sandra S. Biggs, Kansas CCR No. 0716.

.

.

**direct attention to or advertise?**

MS. JOKERST: Object to form.

A. A pictorial representation that had nothing to do with or no connection to a use or a business that is located on the premises where that pictorial representation is located.

BY MR. SHAW:

**Q. So I guess just for an example, would a picture of a cross be considered a pictorial representation?**

MS. JOKERST: Object --

A. A picture of a cross.

BY MR. SHAW:

**Q. Yes, or a painting, a image?**

A. Or a cross itself.

**Q. What does a cross itself mean? Do you mean like an actual physical --**

A. I'm talking about a physical cross. Most of our churches don't put up pictures of crosses. They put up crosses.

**Q. Okay. Well, if a church put up a cross, would that count as a pictorial representation or something else?**

A. It would count as a pictorial representation.

**Q. Okay. Would it also be considered a sign?**

A. It would be considered a symbol, not a sign.

**Q. Does a cross not typically convey a message about the building's religious affiliation?**

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. You may answer.**

A. Not exclusively. But primarily, churches of the Christian faith are the ones that are interested in placing a cross on their building or in another location on their property.

**Q. So if I understand a cross on a church is not considered a sign, just a symbol?**

A. It is something that our sign code does not count towards the sign area allocated to that church.

**Q. Why does it not count the cross?**

A. Because it's a symbol.

**Q. If you'll look at 42-764, does it not include symbol as part of the definition of emblem?**

A. It does.

**Q. So why are crosses not considered signs and only symbols?**
A. I didn't say they were not considered signs. I said they don't count towards a sign allocation for the church.
**Q. Okay. Why do they not count towards the sign allocation?**
A. Because our code says so.
**Q. Where does it say that?**
A. It doesn't say it in that section.
**Q. Do you know which section it says it in?**
A. It has been the longstanding interpretation for the City of Salina that those are symbols just as flags don't count towards a sign allocation for a property.
**Q. Well, why don't flags count towards the sign allocation?**
A. Because they're not included in the sign calculations.
**Q. But why are they not included in the sign allocations?**
A. Because there's no requirement to obtain a sign permit to erect a flag.
**Q. Why is there no requirement to obtain a sign permit to erect a flag?**

MS. JOKERST: Object to form.
A. We have not treated that as signage.
BY MR. SHAW:
**Q. Why not?**
A. Because as a general rule, flags are exempt from the sign permit requirement.
**Q. So all flags are exempt from the sign permit requirement?**
MS. JOKERST: Object to form.
A. Structurally, flags have been treated as exempt from obtaining a sign permit.
BY MR. SHAW:
**Q. I'm sorry, did you say structural flags?**
A. Structurally --
**Q. Okay.**
A. -- flags have been exempted from the sign code permit requirement.
**Q. So the McDonald's example I gave, flying a McDonald's flag would be exempt from the sign permit requirement?**
A. Structurally, yes.
MS. JOKERST: Object to form.
BY MR. SHAW:
**Q. When you say structurally exempt, what does that mean?**

THE REPORTER: Thank you.

BY MR. SHAW:

**Q. Have you determined the difference between a commercial and non-commercial flag?**

A. Have I in my experience?

**Q. Well, yeah, I guess I can ask that question. Have you ever made that determination?**

A. No.

**Q. If a business were to fly a flag such as the McDonald's flag we discussed earlier, would that be exempt under the code?**

A. Not as subsection 1 is written.

**Q. Okay. So a business flag like the McDonald's flag would be regulated and require a sign permit. Is that correct?**

MS. JOKERST: Object to form.

A. I would just be speculating on that. Because in my 37 years, I've never seen a McDonald's or any commercial flag that has come before us.

BY MR. SHAW:

**Q. Okay. What about a -- well, let me ask you this. Have you ever seen a Kansas City Chiefs flag?**

A. I have. I drive by one.

**Q. Would those be considered commercial flags?**

A. No.

**Q. Why not?**

A. Because they are just expressing that property owner's support for their team.

**Q. Do you know if the Kansas City Chiefs are a commercial enterprise?**

MS. JOKERST: Object to form.

A. Well, I know that the Kansas City Chiefs is a sports franchise that desires to make money.

BY MR. SHAW:

**Q. Okay. Could those Chiefs flags be considered advertisements for the Chiefs?**

MS. JOKERST: Object to form.

A. Not in my opinion, no.

BY MR. SHAW:

**Q. So even though it is a commercial business displaying its logo, that is not an advertisement?**

MS. JOKERST: Object to form.

A. I would consider an individual owner who has a Chiefs flag to be displaying a non-commercial flag.

BY MR. SHAW:

**Q. Okay. Okay. Can we return to -- well, actually, let's stay here. Would the Chiefs flag be announcing the Kansas City Chiefs?**

A. It could be interpreted as announcing the Kansas City Chiefs.

**Q. Okay. Would the Chiefs flag be -- strike that. Can you please go back to the definition of sign. There we are. Do you see in subsection 3 where it states that the sign must be located inside -- or excuse me, is not located inside a building?**

A. That is one of the elements in the determination.

**Q. So are there any signs that are located inside a building?**

MS. JOKERST: Object to form.

A. The Tony's Pizza Events Center has a sign located inside its lobby.

BY MR. SHAW:

**Q. Okay. Is that a regulated sign?**

A. No.

**Q. Okay. Because it is inside. Is that --**

A. Because it's inside the building.

**Q. I see. If a sign is inside a building but clearly visible from the outside, would that**

**Q. Okay. Could a artwork viewable from the street direct attention?**

MS. JOKERST: Object to form.

A. It might attract attention.

BY MR. SHAW:

**Q. What is the difference between attracting and directing attention?**

A. Attracting attention might briefly pull your eyes off the road or off the sidewalk to see what it is. Directing attention is for something that someone wants you to read or look at for an extended period.

**Q. Are you familiar with the Mural at the Mill?**

A. I am.

**Q. Does that mural direct attention?**

A. No.

**Q. What does it do?**

A. It attracts your attention.

**Q. I see. Because the artist only intended someone to look at it briefly.**

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. Is that what you're saying?**

MS. JOKERST: Same objection.

required a sign permit for.
**Q. Okay. And is that because it's an advertisement?**
A. It is announcing, directing attention to and advertising the Army Recruitment Center.
**Q. So it's doing all three?**
A. Yes.
**Q. Okay. What about a church or other house of worship? They put up a display saying services Sunday at 10 a.m. Is that a sign?**
A. Yes.
MS. JOKERST: Object to form.
BY MR. SHAW:
**Q. Is that because it is announcing?**
A. It is announcing to the public that they are worship -- place of worship and letting the public know when they meet.
**Q. Okay. What if that same church displayed a message that said turn to Jesus. Would that be a sign?**
MS. JOKERST: Object to form.
A. Yes.
BY MR. SHAW:
**Q. Okay. Why is that?**
A. Well, you just described it as a -- they

would put up a structure, whether it was a banner or whether it's permanent sign, that would be something that is announcing, directing attention or advertising.

**Q. What would they be advertising?**

MS. JOKERST: Object to form.

A. They would be advertising their desire for the public to turn to Jesus.

BY MR. SHAW:

**Q. Okay. In subsection 3 where it says is not located inside of a building, what is considered a building under this section?**

A. A structure that meets the definition of building in the zoning ordinance.

**Q. Okay. Would you please turn to the section defining building?**

A. Appears to be 42-637.

**Q. All right. And does that define a building as any covered structure built for the support, shelter or enclosure of persons, animals, chattels or movable property of any kind and which is permanently affixed to the land?**

A. That is the definition that's in the zoning ordinance.

**Q. All right. What is the support, shelter**

**Q. Why is that?**

A. Because the definition says a wall sign is a sign, and a mural is not a sign.

**Q. What is a mural?**

MS. JOKERST: Object to form.

A. City of Salina does not have a definition for the term mural.

BY MR. SHAW:

**Q. Then how do you know it is not a sign?**

MS. JOKERST: Object to form.

A. A mural would not announce, direct attention to or advertise.

BY MR. SHAW:

**Q. Is a mural calculated to attract the attention of the public?**

MS. JOKERST: Object to form and foundation.

A. I think the word calculated goes to intent, and it's not my job to interpret somebody's intent.

BY MR. SHAW:

**Q. Is that not how the code uses the word calculated, though?**

MS. JOKERST: Object to form.

BY MR. SHAW:

language.

BY MR. SHAW:

**Q. What is the purpose then of having a section to cover things that aren't covered in the previous sections if you can't make the determination of what those things are?**

MS. JOKERST: Object to form.

A. I interpret it as a catch-all phrase.

BY MR. SHAW:

**Q. But is there anyway that you can determine what would fall within that catch-all?**

MS. JOKERST: Object to form.

A. There's probably different forms of expression that the code writers didn't or couldn't anticipate at the time it was written, so it was to catch all those.

BY MR. SHAW:

**Q. But does this catch-all require you to make a determination about intent?**

MS. JOKERST: Object to form.

A. No.

BY MR. SHAW:

**Q. How do you know if it's calculated to attract the attention?**

MS. JOKERST: Object to form.

A. I don't look at that.
BY MR. SHAW:
**Q. If you don't look at that, why is that word in here?**
A. You'll have to ask the person who drafted the definition.
THE REPORTER: Amanda, what was your objection?
MS. JOKERST: To form.
THE REPORTER: Thank you.
BY MR. SHAW:
**Q. I'm asking you because it is your job as zoning administrator to provide the city's definitive interpretations of this code.**
A. Then you give me a concrete example, and I'll make an interpretation.
**Q. I'm trying to understand what this section could ever apply to.**
A. It applies to signs.
**Q. I think this is defining signs. Is that not correct?**
MS. JOKERST: Object to form.
A. It is designed to inform the public and the people administering the code what the governing body wants to be regulated as a sign.

foundation.

A. According to the rules of construction of our city code, or and and are interchangeable, so I can't make that determination.

BY MR. SHAW:

**Q. Do you no where in the city code that is placed?**

A. In the rules of construction.

**Q. I see. So and and or are interchangeable?**

A. They can be, yes.

**Q. They can be or they are?**

A. Code says they can be.

**Q. How then is someone to know if it means and or or?**

MS. JOKERST: Object to form and foundation.

A. You have to look at the context in which its used.

MS. JOKERST:

BY MR. SHAW:

**Q. All right. In subsection 2 there, for instance, do you see the and after the semicolon?**

A. Yes.

**Q. Does that mean and or or?**

**to look like and get a determination from you about whether it qualifies as a painted wall sign or a mural?**

MS. JOKERST: Object to form.

A. It is very commonplace for people who want to erect something or have a pictorial representation or some graphic to come into our office and say this is what I'm looking to do. Does this fit within your code.

BY MR. SHAW:

**Q. All right. And how would you help that person determine if it was a mural or a painted wall sign?**

A. By looking at whether it announces, directs attention to or advertises.

**Q. So you would need to see a rendition or plan of what it is they plan to paint?**

A. Yes.

**Q. Okay. And depending on the content of that rendition, you would make the determination if it is a mural or a wall sign?**

MS. JOKERST: Object to form.

A. I would look at it.

BY MR. SHAW:

**Q. You would look at the content to**

**is so as to not regulate it?**
MS. JOKERST: Object to form.
A. I don't understand the question.
BY MR. SHAW:
**Q. All right. You said that the city does not regulate the content. But if you don't know what the content means, how do you ensure you are not regulating content?**
MS. JOKERST: Object to form.
A. I would look at the graphic representation of what that individual owner wanted to display on their wall and I would determine, one, whether it announces, directs attention to or advertises. And then the second thing we would do is we would look at the extent of the wall that it covers and determine if that area is allowed within the sign code in the district that they're located.
BY MR. SHAW:
**Q. So let's say a business paints or comes to you with a rendition wanting to paint on its wall, and it would cover the entire wall, a -- just text saying, you know, buy our product. How would you determine if that is a sign or a mural?**
MS. JOKERST: Object to form.

A. I would look at the rendering that they provided. And if it was words or numbers, I would determine whether those words or numbers announce, direct attention to or advertise the business or the products at that premises, and we would attempt to draw a rectangular box around those letters and calculate the square footage of the display to determine whether it was too large or not too large to be located as proposed.

BY MR. SHAW:

**Q. And let's say that same business came to you with a proposal to paint on the side of their building the Arrowhead logo of the Kansas City Chiefs and text, you know, let's go Chiefs. How would you determine if that were a sign or not?**

MS. JOKERST: Object to form.

A. I would determine whether those graphics announced or directed attention to or advertised.

BY MR. SHAW:

**Q. How would you do that?**

A. Well, in the specific context you gave me, I would interpret that to say that it is announcing that that property owner supports the Kansas City Chiefs.

**Q. What if that property was a training**

**facility for the Kansas City Chiefs?**
A. Then it would be the same thing except it's also advertising and directing attention.
**Q. Okay. Now, let's say the text on this mural, the letters are very widely spaced. Would you draw a rectangle around the entire display or only around each letter to determine its area?**
MS. JOKERST: Object to form.
A. The entire display.
BY MR. SHAW:
**Q. Okay. Would you also draw that rectangle around any other emblems that are related to that mural?**
MS. JOKERST: Object to form.
BY MR. SHAW:
**Q. So in the example I gave before, you've got the Chiefs Arrowhead and then the let's go Chiefs. Would you draw one rectangle or two separate rectangles?**
MS. JOKERST: Object to form.
A. Are we talking about painted wall signs or are we talking about murals?
BY MR. SHAW:
**Q. Well, either way. How would you determine the size?**

MS. JOKERST: Object to form.
A. I wouldn't determine the size on a mural because we don't regulate murals. But I would determine that if I determined it to be a painted wall sign.
BY MR. SHAW:
**Q. All right. If you have determined it to be a painted wall sign, how would you determine the size of that mural?**
A. I would determine the size of the painted wall sign by following the instruction in Section 42-503 (a), and we would construct a rectangular box around the display.
**Q. But would you consider that to be one display that includes both the Chiefs Arrowhead and the text let's go Chiefs, or do you consider it two displays one of the Arrowhead and one of the wording of let's go Chiefs?**
A. I would consider it to be an integral display.
**Q. Okay. So include both. Is that what that would mean?**
A. I would include both --
MS. JOKERST: Object to form.
A. -- of those in the calculation.

listed the home team, the visitor's team, the time and score.

BY MR. SHAW:

**Q. Is a billboard something more than a structure with changeable copy?**

MS. JOKERST: Object to form and foundation.

A. A billboard is synonymous with the term off-premises or advertising sign. And if Kansas Wesleyan University sells advertising space to area business that are not located on the premises and that sign is oriented towards Cloud Street and not the stadium, then that side of the structure is not a scoreboard. It is a off-premise sign.

BY MR. SHAW:

**Q. What does the orientation have to do with the sign?**

A. The presumption in exempting a scoreboard is that a scoreboard --

MS. JOKERST: Can I -- did my objection get on there?

THE REPORTER: No. Can you give it to me, please.

MS. JOKERST: Object to form.

A. Can you repeat the question?

MR. SHAW: Can you read that back, please?

THE REPORTER: "What does the orientation have to do with the sign?"

MS. JOKERST: I said object to form.

A. The adopted exemption for scoreboards is based partially on the fact that the information they convey is directed to people that are in the stadium. And the determination for taking that scoreboard structure and saying that it's an off-premise sign is because the advertising is not oriented towards or directed towards the people within the stadium.

BY MR. SHAW:

**Q. If the advertising copy were placed on the side of that scoreboard facing the audience, would that be a scoreboard or an advertising sign?**

MS. JOKERST: Object to form.

A. It would be a scoreboard.

BY MR. SHAW:

**Q. Even with the advertising copy?**

MS. JOKERST: Object to form.

A. Yes.

BY MR. SHAW:

**Q. Okay. So it is the orientation of the**

of time.

BY MR. SHAW:

**Q. Okay. Does this section apply to non-commercial signs as well?**

MS. JOKERST: Object to form.

A. It appears to refer to signs that advertise a bona fide business.

BY MR. SHAW:

**Q. Okay. So let's say, for instance, someone put up a, you know, Mitt Romney 2012 sign, and it's still up here in 2024. Is that sign considered abandoned?**

MS. JOKERST: Object to form.

A. It would be considered an election sign that was up seven days after the election.

BY MR. SHAW:

**Q. So you're not allowed to have any election signs seven days after an election?**

A. Correct.

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. If I were a -- not me. If any property owner were a big Dwight Eisenhower fan and they just wanted to put up a paint on the side of their wall, you know, I like Ike, would that be**

**allowed?**

MS. JOKERST: Object to form.

A. Yes.

BY MR. SHAW:

**Q. Is I like Ike a campaign slogan from the Eisenhower campaign?**

MS. JOKERST: Object to form and foundation.

A. I don't know.

BY MR. SHAW:

**Q. Okay. Why would the I like Ike sign be allowed but not the Mitt Romney 2012 sign not -- let me rephrase that. Why is an I like Ike sign not considered a political sign seven days after an election?**

MS. JOKERST: Object to form.

A. Well, for one, Mr. Eisenhower is deceased, so he couldn't be running for any elective office. And it is simply an expression of whoever the sign holder is that they like Ike.

**Q. But why can't the Mitt Romney fan continue expressing their admiration for Mitt Romney?**

MS. JOKERST: Object to form and foundation.

A. If he wants to strike all portions from the sign that deal with voting for Mr. Romney or have an election date in it, then he can all the signs he wants that shows that he loves Mitt Romney.

BY MR. SHAW:

**Q. Okay. So if the Eisenhower fan painted vote Eisenhower 1952, would that be considered a political sign that can't be up more than 7 days?**

MS. JOKERST: Object to form and foundation.

A. I would not consider that an election sign.

BY MR. SHAW:

**Q. Why wouldn't you consider it an election sign?**

A. Common sense tells me it's not an election sign. It's not left over from some election.

**Q. What if the sign had been painted in 1952 and it was just still around?**

MS. JOKERST: Object to form.

A. I would consider it a historic sign.

BY MR. SHAW:

**Q. I see and what is a historic sign?**

**smell but its neighbor did have a smell?**

MS. JOKERST: Object to form.

A. Because the sign is still inviting customers to come in and partake of their product and notwithstanding the smell of the chicken farm.

BY MR. SHAW:

**Q. If The Cozy Inn was not a restaurant or -- let's do a different one. Let's say The Cozy Inn only did delivery and so customers would never come to the Cozy Inn location, would the phrase Don't Fear the Smell still be a sign?**

MS. JOKERST: Object to form.

A. That would require me to speculate.

BY MR. SHAW:

**Q. I'm asking you to state how you would interpret this code in that scenario?**

A. I think you're asking me to speculate without the full context.

**Q. The full context is that this is a building that delivers food to customers but customers never come to that building, and it has a mural saying Don't Fear the Smell. Would that be interpreted as a sign under the code?**

MS. JOKERST: Object to form.

A. I'd have to see what's on the rest of the

wall of the building.

BY MR. SHAW:

**Q. It's a white wall except for those words?**

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. Would it be a sign in that situation?**

A. My first --

MS. JOKERST: Object to form.

A. My first inclination would be to consider that a sign.

BY MR. SHAW:

**Q. Why is that?**

A. Because there's nothing else on the wall of the building.

**Q. Why does the presence of other things on the wall of the building change the determination one way or another?**

MS. JOKERST: Object to form.

A. Well, it's not -- it's not a non-commercial message.

BY MR. SHAW:

**Q. If it's referencing the smell of its neighbor, would that be a non-commercial message?**

MS. JOKERST: Object to form.

A. Not necessarily.

BY MR. SHAW:
**Q. What message would that be?**
A. The Don't Fear the Smell message could still be an invitation to partake of their food.
**Q. Even if no one would ever come to this building?**
A. Even if no one would ever come there, because their food -- they're telling the public their food is not affected by the smell of the chicken farm.
**Q. I see. If the mural depicted pizzas, would that be considered a sign for the Cozy Inn?**
MS. JOKERST: Object to form.
A. What else is on the wall?
BY MR. SHAW:
**Q. It is the white wall of The Cozy Inn, and there's just a big pizza mural on it?**
MS. JOKERST: Object to form.
A. Well, I think the first thing I would do is to determine whether it is off-premise advertising for some other establishment in the downtown area.
BY MR. SHAW:
**Q. How would you determine that?**
A. By looking at the pizza and seeing if it

made reference to any of the existing establishments in Salina or the downtown area.

**Q. And if it's just a pepperoni pizza with no sort of logo or wordage on it, is that a sign or a mural under the code?**

MS. JOKERST: Object to form.

A. I don't have to determine whether it's a mural. I only have to determine whether it's a regulated wall sign.

BY MR. SHAW:

**Q. Okay. Would you determine that that is a regulated wall sign?**

MS. JOKERST: Object to form.

A. Again, you're asking me to speculate. But if it was in the context of a blank white wall with a pizza symbol on it that had no association with announcing or directing attention to or advertising The Cozy Inn business and did not advertise another nearby establishment, then it would not be a regulated wall sign.

BY MR. SHAW:

**Q. If that exact same painting were painted on the wall across town at a pizza joint, would that then be a sign?**

MS. JOKERST: Object to form.

**Q. I'm sorry. That was not what I intended to convey. What I'm asking is if that picture of a pizza, just a pepperoni pizza and nothing else was painted on the side of a pizza shop, would you determine that to be a sign?**
A. Yes.
MS. JOKERST: Object to form. Let me get my objection in.
BY MR. SHAW:
**Q. Why would you determine that as a sign?**
A. Because it announces, directs attention to and advertises to the public that that is an establishment that offers pizza to its customers.
**Q. What if a picture of a cup of coffee and a steaming coffee pot were painted on the side of The Cozy Inn with no words. Would you determine that to be a sign?**
MS. JOKERST: Object to form.
A. I would have to know whether The Cozy Inn served coffee to its customers.
BY MR. SHAW:
**Q. If it did not serve coffee to its customers, would you determine that to be a sign?**
MS. JOKERST: Object to form.
A. If it did not announce, direct attention

to or advertise a product or service that was available inside The Cozy Inn establishment, then just by itself, a steaming coffee pot or steaming cup of coffee would not be associated with that business.

BY MR. SHAW:

**Q. If The Cozy Inn did sell coffee, though, would that change your calculus?**

A. Yes.

MS. JOKERST: Object to form. Did you answer, Dean? I didn't hear.

A. I did answer yes to that question.

BY MR. SHAW:

**Q. If The Cozy Inn painted a mural of flying saucers attacking the building, would you determine that to be a sign?**

MS. JOKERST: Object to form.

A. I couldn't answer that question unless I saw a rendering of what they were -- what that looked like.

BY MR. SHAW:

**Q. Let's say it looked like a traditional science fiction movie of flying saucers with little green men attacking the building. Would you consider that to be a sign?**

MS. JOKERST: Object to form.

A. I'd have to see a rendering of what it looked like to make that determination.

BY MR. SHAW:

**Q. All right. What if there were just an airplane painted on the side of The Cozy Inn?**

MS. JOKERST: Object to form to the extent there's a question pending.

BY MR. SHAW:

**Q. Would that be a sign in your understanding?**

MS. JOKERST: Object to form.

A. There's no airline service or travel agency or anything associated inside that building, I wouldn't see the association between that graphic representation and The Cozy Inn business.

BY MR. SHAW:

**Q. Okay. What if there were a mural of baseball field with people playing baseball on the side of The Cozy Inn. Would you determine that to be a sign?**

MS. JOKERST: Object to form.

A. I would give the same answer as I would to the coffee pot and the airplane.

BY MR. SHAW:

**Q. Is that a no?**

A. I would not consider it to be a sign.

**Q. Okay. And with the airplane hypothetical, did you also say you would not determine that to be a sign. I think I may have missed that?**

MS. JOKERST: Object to form.

A. I said if an airplane was painted on the north wall of The Cozy Inn building, it's not a travel agency, there's no product or service associated with airline travel within, I would not consider that to be something that announces, directs attention to or advertises The Cozy Inn.

BY MR. SHAW:

**Q. If there were a mural of a -- with a landscape of a pasture with cows grazing and mustard plants, tomatoes and onions growing in the field, would that be considered a sign for the Cozy Inn?**

MS. JOKERST: Object to form.

A. I'd have to see a rendering.

MS. JOKERST: Hey, Mr. Shaw?

MR. SHAW: Yes.

MS. JOKERST: I'm assuming -- well, I

guess I don't know. How much longer and would now be a good time to take a short lunch break?

MR. SHAW: Give me maybe five minutes. I'm almost done with this line of questioning. Then we can take a short break -- or we could take a lunch break, not just a short break.

BY MR. SHAW:

**Q. Are you familiar with the artist Andy Warhol?**

A. I think I know who he is.

**Q. Can you turn to Exhibit 38. It should be almost the last exhibit. It should be the second to the last page in the binder?**

A. Oh, the very last.

**Q. That's it right there.**

A. Right there. Okay.

**Q. So what's marked there as Exhibit 38, have you ever seen that painting before?**

A. I have not.

**Q. Okay. If that painting were painted on the side of The Cozy Inn, would that be considered a sign?**

MS. JOKERST: Object to form.

A. I would give the same answer I did with the airplane. That does refer to a specific

product. It borderline could be considered an off-premise sign directing people to a product that is available in other locations in Salina. But just standing by itself, it does not announce or direct attention to or advertise The Cozy Inn.

BY MR. SHAW:

**Q. If The Cozy Inn sold tomato soup, would that change your calculus?**

MS. JOKERST: Object to form.

A. It would.

BY MR. SHAW:

**Q. Okay. Would that make you determine that this is a sign?**

MS. JOKERST: Object to form.

A. I would determine that it advertises a product that they are making available to their customers inside.

MR. SHAW: Okay. All right. We can break for lunch now.

(THEREUPON, a recess was taken.)

BY MR. SHAW:

**Q. Mr. Andrew, before we took our lunch break, I believe you had said that you had attended a meeting on Monday, November 6th of 2023 when you were first informed about the painting on**

**Q. Okay. So is it the official position of the City of Salina that Section 2-207 does not require a Certificate of Compatibility for painting anything other than a front facade?**

MS. JOKERST: Object to form.

A. That has been the determination and interpretation.

BY MR. SHAW:

**Q. If Mr. Howard had called up the Boom! festival and said, hey, I would love a Boom! mural to be painted on the side of my wall, would that have required a Certificate of Compatibility?**

MS. JOKERST: Object to form and foundation.

A. It depends on what the end result was.

BY MR. SHAW:

**Q. Let's say it was just a mural similar to the Mural at the Mill, children playing Ring Around the Rosie?**

MS. JOKERST: Object to form.

A. If it were identical to the mural that's on the south wall of the building at the corner of Ash and Santa Fe, which was a Boom! festival mural and you picked that mural up and moved it to the north wall of The Cozy Inn, we would treat that

exactly the same as we treated the mural that's on the south wall of that building.

BY MR. SHAW:

**Q. Is that to say you would not require a Certificate of Compatibility in that scenario?**

A. We would not.

**Q. Okay. Do you know someone by the name of Travis Young?**

A. I do.

**Q. Who is Travis Young?**

A. He works for Salina Vortex, and he is one of the organizers, original instigators of the Boom! festival.

**Q. So was he at that meeting you referenced earlier to discuss the Boom! festival?**

A. I was at one meeting when the Boom! festival was first getting started. He was present along with Eric Montoy.

**Q. Okay. Have you had any other conversations with Mr. Young?**

A. I had one e-mail correspondence with him related to downtown. I correspond with him regularly in the course of the business that he owns which is Salina Vortex.

**Q. So you correspond with him about that**

**existing Cozy Inn neon sign there?**

A. The box that I --

MS. JOKERST: Object to form.

A. -- drew didn't go that far in that direction.

BY MR. SHAW:

**Q. I'm saying not my hypothetical about Hollywood flying saucers. The image as it is right here, would you consider the entire wall to be a part of this mural?**

A. Our original determination made by the extent of the painted image on the north wall of the building went from the west wall to the east wall, and we did not attempt nor as zoning administrator do I think it's in any way feasible or practical to try to draw artificial rectangles around this display.

**Q. Okay. But The Cozy Inn neon sign that is there, it had 24 square feet already accounted for that area. Is that correct?**

A. That is correct.

**Q. So would that 24 square feet be double counted?**

MS. JOKERST: Object to form.

A. It would not be double counted, but it

would be not relevant.
BY MR. SHAW:
**Q. Why would it not be relevant?**
A. Because whether the end result is 512 square feet or 520 square feet or 540 square feet or whatever number is arrived at, the 24 square feet is immaterial to whether the image displayed on the north wall is too large for the property based on the sign code.
**Q. Well, let's just say The Cozy Inn had 300 feet of building frontage and we're still just trying to calculate size here. Should that 24 square feet for the neon sign be subtracted from the mural sign area?**
MS. JOKERST: Object to form.
A. It would be. It's already accounted for in existing signage. What we were calculating was how much additional signage can be installed beyond what is already existing. And this 24 square foot sign was already accounted for.
BY MR. SHAW:
**Q. When Mr. Herrs calculated the size of a mural in his analysis, did he subtract that 24 square feet from the size of the mural?**
MS. JOKERST: Object to form.

A. I didn't prepare it. He did. And I've seen different numbers. He started out at 540 and changed that to 528.

BY MR. SHAW:

**Q. Would he have been correct to subtract that sign from the mural sign area?**

MS. JOKERST: Object to form.

A. Yes, because it already exists.

BY MR. SHAW:

**Q. Would he have been incorrect if he didn't subtract that area?**

MS. JOKERST: Object to form.

A. He wouldn't necessarily be incorrect because it's all one integral display. But he did not take that into account because it's already account for as existing signage.

BY MR. SHAW:

**Q. I guess my concern here is, is that 24 square feet has been double counted, that if he includes that area within his rectangle for calculating the size of this mural and doesn't subtract 24 square feet from it, we are now double counting that 24 square feet. Do you understand?**

MS. JOKERST: Object to form.

A. I understand, but it's completely

irrelevant.
**Q. Why is that irrelevant?**
A. Because the magnitude between 60 square feet or 63 square feet and 500 plus square feet, a 24-square foot margin of error is immaterial.
**Q. Okay. I understand that conclusion if what you're just saying is that it wouldn't have changed the outcome. But I'm just trying to figure out what is the proper way to calculate the numbers?**
A. The proper way to calculate the numbers is to take the existing signage, we calculate the difference between the existing signage that already exists and the proposed signage and we see if the proposed signage will fit within that allocation. So if their allocation was that they can have 150 square feet of total sign area and they have 63, then they can -- their additional signage can be the difference between 63 and 150.
**Q. I understand. But if this signage has been double counted, the calculation would be incorrect. Is that true?**
MS. JOKERST: Object to form.
A. There is nobody on city staff, including me or Mr. Herrs or anybody, who is going to stand

on a number that you can say is exact. All we can say is that that sign is a magnitude above 63 square feet. And whether it's 540 in end result or 528 in end result or 512 square feet as an end result, the end result is the sign is too large for that property based on the current C-4 sign regulations.

BY MR. SHAW:

**Q. I understand that. My question isn't whether the city believes the sign is too big. My question is should that 24 square feet of signage been subtracted from the rectangle that was calculated by Mr. Herrs?**

MS. JOKERST: Object to form.

A. We did not calculate a rectangle. We tried to determine the total entire area of the north facing wall.

BY MR. SHAW:

**Q. Okay. Should that 24 square feet of existing signage have been subtracted from the total area of the existing wall?**

A. Who says it wasn't?

MS. JOKERST: Object to form.

A. How do you know it wasn't? You don't know it wasn't.

BY MR. SHAW:
**Q. I have asked Mr. Herrs and he said that it wasn't so...**
A. Then why are you asking me?
**Q. I want to know if Mr. Herrs calculated it correctly?**
A. If Mr. Herrs told you that he didn't include it, then that is not consistent with the way that we calculate sign area.
**Q. Okay. Should the square footage for the awning also have been subtracted?**
MS. JOKERST: Object to form.
A. The awning is an awning sign. Any awning that has a sign on it, the sign area on that awning is a sign and counts as a sign.
BY MR. SHAW:
**Q. Would you look at the picture? Is that the awning you're believing is the awning sign or is it the front awning?**
A. It's the front awning for which Mr. Howard got a Certificate of Compatibility in 2021.
**Q. Yes. What I'm asking is the awning in this picture, is that square footage consider a part of --**
A. It's not a sign. It's an awning.

**Q. I understand that. So you're saying it should not be subtracted?**

MS. JOKERST: Object to form.

A. It should be subtracted.

BY MR. SHAW:

**Q. Okay. It should be subtracted because it is not a sign. Is that what you're saying?**

A. Yes. It doesn't occupy much area. Again, it's not relevant to whether the sign is too large or not.

**Q. All right. Should the service window have been subtracted?**

MS. JOKERST: Object to form.

A. The service window does not form a part of the backdrop for the sign.

BY MR. SHAW:

**Q. So is that a yes it should have been subtracted?**

A. Yes, it would not be included in the calculation.

**Q. Okay. And the menu board sign there, should that also have been subtracted from the calculation?**

MS. JOKERST: Object to form.

A. If the space is already occupying the

wall, then yes.
BY MR. SHAW:
**Q. Okay. And that door there on the left, should that have also been subtracted for?**
A. No.
MS. JOKERST: Object to form.
BY MR. SHAW:
**Q. The door should not have been subtracted?**
A. No.
**Q. Why is that?**
A. It's part of the backdrop of the sign.
**Q. Is that because some of it would be painted on the door?**
A. Yes.
**Q. Okay. Have the walls at The Cozy Inn been white for at least several decades?**
MS. JOKERST: Object to form.
A. They have been painted white for decades.
BY MR. SHAW:
**Q. Okay. Is that white paint that is still there considered a part of the mural?**
MS. JOKERST: Object to form.
A. I have already answered that question, and I've already said that it is non-sensical for us to take a display like this and try to create

artificial rectangles around it. We treated the entire north wall as part of the display area.

BY MR. SHAW:

**Q. Okay. After Mr. Howard submitted this application on November 13th or whenever he submitted it, what was done with this application by your department?**

A. It was placed on file and on hold.

**Q. What does it mean for it to be on hold?**

A. It means that we could not approve it, but we were going to try to continue to work with Mr. Howard to find a code-compliant code-based solution that might allow ultimately the sign to be installed.

**Q. Does the city code discuss procedures for placing a sign permit on hold?**

MS. JOKERST: Object to form.

A. It does not.

BY MR. SHAW:

**Q. So is placing a sign permit on hold just a unwritten practice?**

MS. JOKERST: Object to form.

A. It's not an unwritten practice. It's usually done in consultation with the applicant.

BY MR. SHAW:

BY MR. SHAW:

**Q. And at any point after he submitted his application, did Mr. Howard consent to it being placed on hold?**

MS. JOKERST: Object to form.

A. No. Because he already knew we couldn't approve it.

BY MR. SHAW:

**Q. Okay. But is that consent?**

MS. JOKERST: Object to form.

A. You tell me the difference between non-approval and denial and I'll answer your question.

BY MR. SHAW:

**Q. Well, a denial under the code triggers certain appeal rights. Is that correct?**

MS. JOKERST: Object to form.

A. What would he appeal?

BY MR. SHAW:

**Q. He could appeal to the Board of Zoning Appeals. Is that correct?**

MS. JOKERST: Object to form.

A. He could appeal to the Board of Zoning Appeals at any time.

BY MR. SHAW:

**Q. So your position is that he may appeal at**

**due to the unique nature of the existing signs at The Cozy Inn, our office will be placing your Certificate of Compatibility application and your sign permit application on hold until our review of the sign regulations is complete. Is that sentence past tense or future tense?**

MS. JOKERST: Object to form.

A. I'm not sure I follow the question.

BY MR. SHAW:

**Q. Do you see where it says our office will be placing your Certificate of Compatibility application and sign permit application on hold?**

A. If I was writing it, it would say has been placed.

**Q. I see. Do you know why it was not written in that manner?**

MS. JOKERST: Object to form.

A. I do not have firsthand knowledge of that.

BY MR. SHAW:

**Q. When was the application placed on hold?**

A. When it was received.

**Q. So would that be November 13th, 2023?**

A. That would be the date it was received if that was in fact the date it was received.

department is involved with, including The Cozy Inn.

**Q. So just so I've got this straight, it's your position that The Cozy Inn's application was placed on hold on November 6th, 2023. Is that correct?**

MS. JOKERST: Object to form.

A. Yes. And we told Mr. Howard that we were going to work to try to come up with a code compliant solution that might ultimately end up with his permit being issued for his display and that that was going to take some amendments to our current sign code. And so we were trying to convey the message that we were going to continue to work with him as well as others in the community who had sign issues of their own.

BY MR. SHAW:

**Q. Does this letter make any reference to a determination made on November 6th?**

A. It does not.

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. Were you instructed to send this letter by Miss Driscoll?**

MS. JOKERST: Object to form.

**Q. What is the function of a sign?**
A. Function of a sign is to announce --
MS. JOKERST: Object to form.
A. -- direct attention to or advertise.
BY MR. SHAW:
**Q. And this mural directs the public to the gallery. Is that correct?**
MS. JOKERST: Object to form.
A. Not in my opinion.
BY MR. SHAW:
**Q. Okay. So then is the staff report incorrect?**
MS. JOKERST: Object to form.
A. I'm not saying it's incorrect. I don't think it's written to the detail that it needs to be for the nuance.
BY MR. SHAW:
**Q. Does the Design Review Board have anything other than the staff report to go on when they make these determinations?**
MS. JOKERST: Object to form.
A. They have the design guidelines.
BY MR. SHAW:
**Q. And what do the design guidelines say about murals that are similar in function to a**

sign or a historical sign.

**Q. Is it an abandoned sign?**

MS. JOKERST: Object to form -- no, I'm not going to object to that.

A. It is not an abandoned sign.

BY MR. SHAW:

**Q. What is it not an abandoned sign?**

A. Because it's a preexisting sign that was exposed when a building was demolished in 1986.

**Q. Earlier when we were discussing abandonment and non-conforming signs, you had stated that the only non-conforming sign that wasn't subject to abandonment was the theater marquee signs. Do you remember that?**

MS. JOKERST: Object to form.

A. I don't recall it exactly that way. I recall reviewing that code section.

BY MR. SHAW:

**Q. So why is this sign not subject to abandonment under 42-510?**

A. Because it was originally an internal sign on the wall of a enclosed building that it was exposed to daylight in 1986 when the building that occupied that site was torn down turning the interior wall into an exterior wall.

A. It was.

**Q. Is that Schlotzsky's located inside of a large shopping center?**

A. It's an outlot that's located in the Mid State Plaza addition.

**Q. Do you know how the frontage for that building was calculated?**

A. I do.

**Q. How was it calculated?**

A. It was calculated based off their 9th Street frontage and the mall ring road on the south.

**Q. I see. So it wasn't just the street frontage. It was the parking lot of the large shopping center which had a path for cars to drive. That was considered street frontage?**

A. No, that --

MS. JOKERST: Object to form.

A. That was considered to be a private street that provided access to Schlotzsky's.

BY MR. SHAW:

**Q. Even though there's parking in between Schlotzsky's and that private road?**

A. Yes.

**Q. Okay. Go quickly to Exhibit 39, please.**

**front of The Yard, is that 4th Street?**
A. That is 4th Street.
**Q. Is that a public street?**
A. It is a public street. It's a public right-of-way.
**Q. Okay. And is the mural visible from 4th Street?**
MS. JOKERST: Object to form.
A. I think from this angle I can see a corner of it.
BY MR. SHAW:
**Q. Okay.**
A. The part that's -- I don't know if that fence has mesh in it or not, if that's what obscuring it, but I can see the very corner.
**Q. Okay. On the previous page with the Bates No. 301, is that taken from the public sidewalks?**
MS. JOKERST: Object to form.
A. It looks like it's taken from the public sidewalk.
BY MR. SHAW:
**Q. Okay. And is the mural visible there?**
A. It is.
**Q. Okay. Is there anywhere in the Salina**

**City Code where it discusses the orientation of a sign?**

A. It does not. I searched in vain for it and insisted that it did, but it does not.

**Q. Okay. And apart from your attorneys, I don't want to know about anything you may have spoken to with them, did you speak to anyone else in preparation for today's deposition?**

A. No.

MR. SHAW: Okay. I have no further questions for you.

MS. JOKERST: I'm going to have some follow-up, but I want to take like a 10-minute break to review my notes. It should be pretty quick.

MR. SHAW: All right. So back at 5:50?

MS. JOKERST: 4?

MR. SHAW: Yeah, sorry, 4:50.

MS. JOKERST: 3:51 my time, 4:51 your time, yes.

(THEREUPON, a recess was taken.)

CROSS-EXAMINATION

BY MS. JOKERST:

**Q. Mr. Andrew, I'm going direct your attention to Exhibit No. 7. Can you pull that up?**

**that Steve Howard is lying in his application?**
MS. JOKERST: Object to form and foundation.
A. I don't even know what that means.
BY MR. SHAW:
**Q. Is it the position of the City of Salina that Steve Howard has altered the rendition he submitted to be different than what he originally planned?**
MS. JOKERST: Object to form.
A. I have no firsthand knowledge of that.
BY MR. SHAW:
**Q. Okay. Do you have any reason to believe that the imagery he submitted with his application is not the imagery he intended to have painted on his wall?**
MS. JOKERST: Object to form.
A. I don't know who prepared and submitted that.
BY MR. SHAW:
**Q. Okay. But do you have any reason to believe that Mr. Howard did not intend to have that imagery placed on his wall?**
A. There is no basis --
MS. JOKERST: Object to form.

A. -- to doubt what his ultimate intentions were.

BY MR. SHAW:

**Q. Okay. Does your department have a tape measure?**

A. It does.

**Q. Is a tape measure an acceptable way to measure a wall?**

A. Not a wall that's too tall to measure for the tape measure.

**Q. Do you know how tall The Cozy Inn is?**

A. It's been determined to be -- those walls are determined to be about 12 feet tall.

**Q. How long is your tape measure that the department has?**

A. Nine feet.

**Q. Okay. Does the department never need to measure anything more than 9 feet?**

A. We have other tools for measuring things that are tall. But Pictometry is an acceptable way to measure side wall heights, measure the heights of houses and other things.

**Q. Okay. Regarding the Certificate of Compatibility for Eccentricity, do you know if Mr. or Mrs. Mattison filed that certificate?**

# CERTIFICATE

**STATE OF KANSAS**

**COUNTY OF SHAWNEE**

I, Sandra S. Biggs, a Certified Court Reporter, Commissioned as such by the Supreme Court of the State of Kansas, and authorized to take depositions and administer oaths within said State pursuant to K.S.A 60-228, certify that the foregoing was reported by stenographic means, which matter was held on the date, and the time and place set out on the title page hereof and that the foregoing constitutes a true and accurate transcript of the same.

I further certify that I am not related to any of the parties, nor am I an employee of or related to any of the attorneys representing the parties, and I have no financial interest in the outcome of this matter.

Given under my hand and seal this 14th day of October, 2024.

Sandra S. Biggs
____________________

Sandra S. Biggs, C.C.R No. 0716

SANDRA S. BIGGS STATE OF KANSAS CERTIFIED SHORTHAND REPORTER