No. 25-3225

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

COZY INN, INCORPORATED,
d/b/a The Cozy Inn, *et al.*,

*Plaintiffs-Appellees*,

v.

CITY OF SALINA, KANSAS,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Kansas
Case No. 6:24-cv-01027-TC

# BRIEF OF ALLIANCE DEFENDING FREEDOM AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street NW
Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org

JAMES A. CAMPBELL
CHRISTINE N. MARSDEN
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
(571) 707-4655
jcampbell@ADFlegal.org
cmarsden@adflegal.org

*Attorneys for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Under Fed. R. App. P. 26.1 and 10th Cir. R. 26.1, *Amicus Curiae* Alliance Defending Freedom, states that it has no parent corporation and that it does not issue stock.

Dated: April 1, 2026

Respectfully submitted,

*/s/ Christine N. Marsden*
CHRISTINE N. MARSDEN

*Attorney for Amicus Curiae*

## TABLE OF CONTENTS

Corporate Disclosure Statement .......... i

Table of Authorities .......... iii

Identity and Interest of *Amicus Curiae* .......... 1

Introduction .......... 2

Argument .......... 5

I. Salina's mural-sign distinction is not content-neutral. .......... 5

II. Salina's mural-sign distinction is content-based. .......... 7

III. Salina's mural-sign distinction is unconstitutional. .......... 11

Conclusion .......... 15

Certificate of Compliance .......... 16

Certificate of Digital Submission .......... 17

Certificate of Service .......... 18

## TABLE OF AUTHORITIES

**Cases**


*Citizens United v. Federal Election Commission*,
558 U.S. 310 (2010) .......... 9

*City of Austin v. Reagan National Advertising*,
596 U.S. 61 (2022) .......... 4, 5, 6

*Consolidated Edison Co. of New York v. Public Service Commission of New York*,
447 U.S. 530 (1980) .......... 9

*Cozy Inn, Inc. v. City of Salina, Kansas*,
No. 24-CV-01027-TC, 2025 WL 3223806 (D. Kan. Nov. 19, 2025) .......... 14

*Denver Area Telecommunications Consortium v. FCC*,
518 U.S. 727 (1996) .......... 12

*Holt v. Hobbs*,
574 U.S. 352 (2015) .......... 12

*Mahmoud v. Taylor*,
606 U.S. 522 (2025) .......... 12

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 1, 4, 7, 8, 9, 11, 13

*Reed v. Town of Gilbert*,
587 F.3d 966 (9th Cir. 2009) .......... 8

*Reno v. ACLU*,
521 U.S. 844 (1997) .......... 12, 13

*Rosenberger v. Rector and Visitors of University of Virginia*,
515 U.S. 819 (1995) .......... 9

*Sable Communications of California, Inc. v. FCC*,
492 U.S. 115 (1989) .......... 12

*Turner Broadcasting System v. FCC*,
512 U.S. 622 (1994) .......... 9

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .......... 7

*Wygant v. Jackson Board of Education*,
476 U.S. 267 (1986) .......... 12

**Other Authorities**

*2024 Murals*, BOOM SALINA, https://tinyurl.com/3bsdwuvtsee .......... 3

Adam Winkler, *Fatal in Theory and Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts*, 59 VAND. L. REV. 793 (2006) .......... 13

Charles Rankin, *If walls could talk: Artist works to restore historic ad*, SALINA J. (Oct. 17, 2019), https://tinyurl.com/mrmsdsk8 .......... 3

*Mural at the Mill*, https://tinyurl.com/mr3yc8js .......... 3

*Mural Map*, https://tinyurl.com/3z25bdhf .......... 3

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

Alliance Defending Freedom is a public-interest law firm dedicated to defending religious freedom, free speech, the sanctity of life, parental rights, and marriage and family. As part of its mission, ADF advocates for the right of every person to live and speak freely. For example, ADF served as counsel in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), which held that a town's sign code determining the degree of regulation based on a sign's content violated the First Amendment.

Content-based restrictions on speech erode vital First Amendment protections. ADF has an interest in ensuring that state and local governments do not and cannot regulate speech based on its content. By filing this brief, ADF highlights the way Salina's application of its sign code in this case commits the same constitutional error that the Supreme Court identified in *Reed* and violates the free speech rights of its citizens by regulating speech based on content.

[1] No counsel for a party authored this brief in whole or in part, and no person other than amicus and its counsel made any monetary contribution intended to fund the preparation or submission of this brief. All counsel were timely notified of this brief.

**INTRODUCTION**

According to Salina, Kansas, this painting[2] is a sign:




But this painting[3] is a mural:




The difference? The Cozy Inn sells hamburgers but not pizza. Whether the art is a sign or just a mural requires comparing the content of the art

---

[2] But this "sign" would be a "mural" if painted on a neighboring pizza shop. "A pizza shop could paint an exact replica of The Cozy's mural, but The Cozy cannot." Appellee Br. 38; 5 App. 110–12.

[3] And this "mural" would be a "sign" if painted on a neighboring pizza shop. "The Cozy can paint pizza slices, but a pizza shop cannot." Appellee Br. 38.

with the product the business sells. That is the very definition of a content-based regulation. And it is the first constitutional problem with Salina's regulatory scheme.

The second constitutional problem is related. It is impossible to say that that the first painting affects government interests but that the second painting does not. The paintings convey an identical message except that one depicts burgers (sold inside) and the other pizza (sold next door). Yet Salina regulates them in different ways entirely based on content. Indeed, downtown Salina is peppered with dozens of unregulated murals.[4]








[4] From left to right: 4 App. 134; *Mural at the Mill*, https://tinyurl.com/mr3yc8js (last visited Mar. 31, 2026); *2024 Murals*, BOOM SALINA, https://tinyurl.com/3bsdwuvtsee (last visited Mar. 31, 2026); *see also* Charles Rankin, *If walls could talk: Artist works to restore historic ad*, SALINA J. (Oct. 17, 2019), https://tinyurl.com/mrmsdsk8; *Mural Map*, https://tinyurl.com/3z25bdhf (last visited Mar. 12, 2026).

Even though there are numerous murals in downtown Salina, and even though Salina holds an annual festival to celebrate the paintings and add new murals all over town, Salina contends The Cozy Inn's "sign" is uniquely harmful. Appellant Br. at 47. That makes no sense.

Salina even says that The Cozy Inn's mural contributes to "sign clutter"—a term the City never defines but which it likens to a "visual assault" and an "evil." *Id.* at 26. But if The Cozy Inn were to display a virtually identical painting displaying a product the Inn does not sell—like doughnuts—there would be no regulation at all.

Making this case easy, City officials acknowledge that their policy requires the City to consider the content of the sign to determine whether it is regulated. *See, e.g.*, 4 App. 110, 244–45 ("There certainly is a circumstance where a steaming cup of coffee on the side of a coffee house is a sign and a steaming cup of coffee on the other side of town unrelated to anything going on might not be a sign."). Such content-based restrictions on speech are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (establishing that content-based regulations receive strict scrutiny).

Appellant says that *City of Austin v. Reagan National Advertising*, 596 U.S. 61, 69 (2022), should apply because Salina's definition of "sign" is like the one used in that case. But unlike the City in *Austin*, Salina's

application of its sign code is not in a "neutral, location-based" rule—Salina discriminates based on content, so strict scrutiny applies. *Austin,* 596 U.S. at 69; Appellee Br. 37–38.

Salina does not argue it can meet that high standard. Although the District Court correctly concluded that Salina's distinction between murals and signs is unconstitutional, it declined to decide whether that distinction was a content-based regulation subject to strict scrutiny. This Court should affirm the lower court's decision while clarifying that strict scrutiny is the appropriate standard to apply to Salina's content-based mural-sign distinction.

## ARGUMENT

### I. Salina's mural-sign distinction is not content-neutral.

Laws that restrict speech fall into one of two categories: content-neutral or content-based. Content-neutral laws apply only to the time, place, or manner of speech and are "agnostic as to content." *Austin*, 596 U.S. at 69. Noise ordinances, for instance, are content-neutral laws that prevent individuals from disturbing those around them—particularly at certain times of day—based on decibel limits that apply to all speech equally. That some speech may be curtailed to accomplish this end is generally acceptable to courts, which apply intermediate scrutiny to weigh the importance of the speech against the government's interests in limiting it, usually in the name of health, safety, or public welfare.

Appellant relies on *City of Austin v. Reagan National Advertising,* 596 U.S. 61 (2022), to support its argument that Salina's mural-sign distinction is content-neutral. Appellant Br. 24–25. There, the Supreme Court held that a sign code with differing rules for "on-premises" and "off-premises" signs was "agnostic as to content." *Austin*, 598 U.S. at 69. The Court noted that merely "reading the sign" does not "automatically" give rise to strict scrutiny. *Id.* But the code at issue in *Austin* required "reading the sign" *only* to determine if it was in the proper location. *Id.* "In ordinary usage, a sign that is attached to or located in close proximity to a building is not described as located 'off-premises.' The distinction between on- and off-premises signs is based solely on location, and that is why such a classification is not content-based." *Id.* at 84 n.1 (Alito, J., concurring).

But here, Salina's policy does not require the City to read a sign solely to apply a "neutral, location-based" rule. *Id.* at 69. Rather, Salina's policy uses the content of the painting to determine *whether it is subject to regulation at all*. In Salina, a "mural" is a "sign" except when it features a particular kind of subject matter presented by a particular speaker. This discriminatory application turns entirely on the painting's content and message. These are not content-neutral considerations.

Salina also tries to justify its policy by arguing that signs "direct" attention whereas murals "attract" attention. According to Salina, signs

implicate safety issues and harm property values but murals do not. Appellant Br. 47. This is nonsensical. But for their content, The Cozy Inn's painting and the numerous murals around downtown Salina "are the same thing: paint on a wall." Appellee Br. 29.

## II. Salina's mural-sign distinction is content-based.

Unlike content-neutral laws, content-based laws "target speech based on its communicative content" and are "presumptively unconstitutional." *Reed*, 576 U.S. at 163. A law is content-based if it cannot be "justified without reference to the content of the regulated speech." *Id.* at 163–64 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). To ensure that the government has not overstepped its bounds, content-based laws must weather the most stringent constitutional analysis: strict scrutiny. *Id.* at 163.

A law is content-based if it restricts particular content on its face or if its enforcement turns on the message of the speech. *Id.* at 163–64. Courts identify content-based laws by examining whether (a) a law singles out a particular speaker or message, (b) the legislature's intention is to curtail a particular speaker or message, or (c) the law is selectively enforced only with respect to a particular speaker or message. *Id.* at 159, 163, 165.

The government may not prohibit speech by targeting particular content for censorship, even when the prohibition is neutral as to viewpoint. In *Reed v. Town of Gilbert*, for example, the town of Gilbert adopted categorical distinctions between different kinds of signs, with differing rules for each category. *Id.* at 159–60. The Sign Code distinguished between 23 categories of speech, including "Ideological Signs," "Political Signs," and "Temporary Directional Signs." *Id.* at 159. Each category had its own rules governing time, place, and manner of signage. *Id.* For example, "temporary directional signs" could not be posted in certain locations for more than a brief amount of time. *Id.* at 160–61. But other types of signs, such as political signs, could be posted for much longer and in greater numbers. *Id.* By establishing categories based on the content of signs, the town applied different standards to different kinds of messages, thus embedding content-based restrictions into its Sign Code. *Id.* at 164.

The Supreme Court unanimously held that this scheme was an unconstitutional, content-based restriction on speech. *Id.* at 159. Gilbert's Sign Code was not content-neutral merely because it did not "mention any idea or viewpoint" or "single one out for differential treatment." *Id.* at 168 (quoting *Reed v. Town of Gilbert*, 587 F.3d 966, 977 (9th Cir. 2009)). While viewpoint discrimination is an "egregious form of content discrimination," the government's "prohibition of public discussion of an

entire topic" was no less content-based. *Id.* at 168–69 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Consol. Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980)). Therefore, "a speech regulation targeted at specific subject matter is content based." *Id.* at 169.

What's more, a regulation's targeted topic doesn't need to have religious or political import to be protected from content-based distinctions. It didn't matter, for instance, that a "Temporary Directional Sign" merely told passers-by when and where an event would be happening. *Id.* at 169–71 ("A regulation that targets a sign because it conveys an idea about a specific event is no less content based than a regulation that targets a sign because it conveys some other idea."). Because signs bearing one kind of message—in *Reed*, the location and times of upcoming church services—were subject to *different* rules than signs bearing other messages, the regulation was content-based. *Id.* at 169.

A law regulating speech is also subject to strict scrutiny when it "reflect[s] the Government's preference for the substance of what the favored speakers have to say." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 658 (1994); *see Reed*, 576 U.S. at 164. Because speaker-based distinctions have often been used as a "means to control content," strict scrutiny applies whenever a "legislature's speaker preference reflects a content preference." *Reed*, 576 U.S. at 170 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *Turner Broad. Sys.*, 512 U.S. at 658)).

Salina's mural-sign distinction is both content-based and speaker-based. Start with content. Salina's policy looks to the content of a painting to determine whether it conveys a permissible *message*; if not, it is subject to regulation. Only after that constitutionally suspect analysis does Salina move to other considerations such as size. Like in *Reed*, the underlying definitions at work in the sign code give rise to content-based enforcement. Yet unlike *Reed*, these definitions are unwritten and slippery, changing any time Salina wishes to make an exception to its sign code. *See, e.g.*, Appellee Br. 19–20.

The City admits that The Cozy Inn's painting of flying saucers would be perfectly acceptable if portrayed with green-antennaed pilots and concentric silver circles instead of as hamburgers. In fact, The Cozy Inn's mural could feature UFO pancakes or Michelin tires without running afoul of Salina's policy. The problem is that the mural depicts hamburgers and condiments that The Cozy Inn sells. Such content-based discrimination demands strict scrutiny.

Next consider the speaker-based discrimination. Under Salina's interpretation of its sign code, anyone could paint a burger-UFO mural on the wall of a building—except The Cozy Inn or another restaurant that serves burgers. By restricting murals that relate to the products or services sold inside the building, the City's policy reflects a preference for non-business-related speech—a speaker-based distinction. This further reinforces that strict scrutiny is warranted.

Salina retains ample regulatory discretion, but it may not do what it's done here. For instance, Salina may choose to regulate all murals as signs. Or it may exclude all murals from the definition of "sign." But Salina may *not* use the content of a painting or the identity of its speaker to determine whether the painting is subject to regulation as a "sign." This triggers strict scrutiny because it is based on the content of speech.

## III. Salina's mural-sign distinction is unconstitutional.

Whenever a government regulates protected speech based on its content, as Salina does here, it bears the burden of proving that the regulation is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. The District Court correctly found that Salina's mural-sign distinction fails intermediate scrutiny. So naturally it fails strict scrutiny, too.

Tellingly, Salina does not even argue that its content-based mural-sign distinction survives strict scrutiny, even though the government bears the burden of proving that content-based laws are "narrowly tailored to serve compelling state interests." *Id*. The term "strict scrutiny" is conspicuously absent from Appellant's brief. In fact, Salina has *never* claimed that its mural-sign distinction can survive strict scrutiny, relying instead on its argument that only intermediate scrutiny should apply.

To satisfy strict scrutiny, the government must show that its interest in the regulation is "compelling." The Supreme Court has acknowledged that the government has compelling interests in "protecting the physical and psychological well-being of minors" on the internet,[5] "stopping the flow of contraband and facilitating prisoner identification" in prisons,[6] and "having an undisrupted school session conducive to the students' learning" in public schools.[7] Although there is no "rigid single standard" for determining when the government's interests are compelling enough to warrant a limitation on speech, restrictions are compelling when they seek to solve "extraordinary problems" that the government is uniquely situated—or bound—to address. *Denver Area Telecomms. Consortium v. FCC*, 518 U.S. 727, 741 (1996).

To satisfy strict scrutiny, laws also must be narrowly tailored—that is, they must be "specifically and narrowly framed" to achieve the government's stated interest. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 (1986). "A law with poor fit—one that does not capture all like threats—suggests that the government itself does not really believe the underlying ends are so compelling." Adam Winkler, *Fatal in Theory and*

---

[5] *Reno v. ACLU*, 521 U.S. 844, 869 (1997) (quoting *Sable Commc'ns. of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989)).

[6] *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).

[7] *Mahmoud v. Taylor*, 606 U.S. 522, 565–66 (2025).

*Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts*, 59 Vand. L. Rev. 793, 803 (2006).

Merely stating a compelling interest will not protect a law that is "hopelessly underinclusive" or overbroad. *Reed*, 576 U.S. at 171. When a law is too broad, it unnecessarily restricts, punishes, and chills lawful, protected speech. *Reno*, 521 U.S. at 880 (criticizing "broad powers of censorship" created by the Communications Decency Act). Similarly, an underinclusive law is not narrowly tailored because it restricts some speech but lacks a strong enough relationship to the problem it attempts to solve, thus allowing the issue to proliferate while punishing only a small subset of speakers. *Reed*, 576 U.S. at 172 (rejecting argument that "strict limits on temporary directional signs [are] necessary to beautify the Town" because the Town permitted "unlimited numbers of other types of signs that create the same problem.")

Salina cannot show—and it does not attempt to show—that it has a compelling interest in regulating The Cozy Inn's business-related mural differently than other murals. Salina has not shown (nor can it) that any relationship exists between its mural-sign distinction and property values, pedestrian safety, or aesthetics—despite resting its entire argument on these interests. In its brief, Salina focuses on the neutrality of the sign code's size requirements and the City's interests in road safety and aesthetics, while largely ignoring the central claim at issue here: that its practice of distinguishing between murals and signs based on what a

painting depicts is (a) content-based discrimination subject to strict scrutiny and (b) bears no relation to the interests it asserts.

Furthermore, Salina has produced no evidence that its mural-sign distinction is narrowly tailored to the interests it claims to advance. A burger-themed mural is not more dangerous to pedestrians or property values than a cupcake-themed mural or a baseball-themed mural. *Cozy Inn, Inc. v. City of Salina, Kansas*, No. 24-CV-01027-TC, 2025 WL 3223806, at *15 (D. Kan. Nov. 19, 2025) (criticizing "Salina's circular definition of art" and failure to show relationship between product-related art and "safety, aesthetics, or health"). Indeed, The Cozy Inn would be free to depict either of those murals on its building. And the alteration shop next door to The Cozy Inn could paint the very same mural that Salina says The Cozy Inn cannot. The mural-sign distinction is unsupported by evidence, untethered to the City's asserted interests, and fundamentally incompatible with the principle that the government may not favor or disfavor speech based on its content.

To say that The Cozy Inn's mural should not receive the same exemption provided to every other mural in town is to abandon common sense, even though Salina repeatedly concedes that "common sense" in code interpretation is paramount. *See* Appellant Br. 19, 27, 29, 33, 34, 36, 38, 39, 48, 49. If Salina's aim is to reduce "sign clutter," its mural-sign distinction is "hopelessly underinclusive." Downtown Salina is littered

with murals that have been exempted from Salina's definition of "sign." That's fatal to its regulation here.

## CONCLUSION

Salina's mural-sign distinction is a content-based restriction subject to strict scrutiny. Because Salina's distinction cannot satisfy strict scrutiny, this Court should affirm the decision of the District Court and clarify that strict scrutiny is the appropriate standard of review to apply.

Dated: April 1, 2026

Respectfully submitted,

/s/ *Christine N. Marsden*

JAMES A. CAMPBELL
CHRISTINE N. MARSDEN
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
(571) 707-4655
jcampbell@ADFlegal.org
cmarsden@adflegal.org

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street NW
Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org

*Attorneys for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) because this brief contains 3,125 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

All required privacy redactions have been made per 10th Cir. R. 25.5.

Dated: April 1, 2026

*/s/ Christine N. Marsden*
CHRISTINE N. MARSDEN
*Attorney for Amicus Curiae*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Cortex XDR, Agent version 7.8.1, and according to the program are free of viruses.

Dated: April 1, 2026

*/s/ Christine N. Marsden*
CHRISTINE N. MARSDEN
*Attorney for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*<u>/s/ Christine N. Marsden</u>*
CHRISTINE N. MARSDEN
*Attorney for Amicus Curiae*