No. 25-3225

IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| Cozy Inn, Inc. d/b/a The Cozy Inn, Stephen Howard<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>City of Salina, Kansas<br><br>Defendant-Appellant | Appeal from the United States District Court for the District of Kansas<br><br>Case No. 6:24-CV-01027-TC<br><br>Hon. Toby Crouse |

**MOTION TO FILE CORRECTED BRIEF OF AMICUS CURIAE LIBERTY JUSTICE CENTER**

Pursuant to this court's Minute Order of April 10, 2026 and April 10, 2026 order provisionally granting leave to file as *amicus curiae* (Order, April 10, 2026, ECF No. 73), Liberty Justice Center files the attached Corrected Brief of Amicus Curiae Liberty Justice Center In Support of Plaintiffs-Appellees. This corrected brief removes counsel's name not entered on the case and updated to today's filing date. No other changes were made from the same brief accepted at ECF 75.

Dated: April 10, 2026

Respectfully submitted,

Brendan J. Philbin

Brendan J. Philbin
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
bphilbin@libertyjusticecenter.org

Attorney for *amicus curiae*
Liberty Justice Center

## CERTIFICATE OF SERVICE

I certify that on April 10, 2026, I served the foregoing motion on all counsel of record by filing it with the Court's CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the Court's CM/ECF system.

Brendan J. Philbin

No. 25-3225

# United States Court of Appeals for the Tenth Circuit

---

Cozy Inn, Inc., d/b/a The Cozy Inn,
Stephen Howard
*Plaintiffs-Appellees*,

v.

City of Salina, Kansas
*Defendant-Appellant*

---

On Appeal from The United States District Court
for the District of Kansas
Case No. 6:24-cv-0127-TC, Hon. Toby Crouse, Presiding

---

**CORRECTED BRIEF OF AMICUS CURIAE LIBERTY JUSTICE CENTER IN SUPPORT OF PLAINTIFFS-APPELLEES**

---

April 10, 2026

Brendan J. Philbin
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
bphilbin@ljc.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel declares that there is no information to disclose. The Liberty Justice Center is a Section 501(c)(3) nonprofit corporation. It does not have a parent corporation. And no public corporation possesses 10% or more of an ownership interest in the Liberty Justice Center.

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATMENT** .................................... ii

**TABLE OF AUTHORITIES** .................................... iv

**INTEREST OF AMICI CURIAE** .................................... 1

**SUMMARY OF ARGUMENT** .................................... 2

**ARGUMENT** .................................... 4

**I. Salina's mural / sign distinction is content-based speech regulation subject to strict scrutiny.** .................................... 4

A. The Salina Code's distinction between a sign and a mural is arbitrary. .................................... 4

B. The Sign Code fails strict scrutiny because it is underinclusive. .. 6

**II. The boundless discretion bestowed by the Salina Code's expansive language distinguishes *City of Austin*.** .................................... 10

**CONCLUSION** .................................... 15

**CERTIFICATE OF COMPLIANCE** .................................... 17

**CERTIFICATE OF SERVICE** .................................... 18

# TABLE OF AUTHORITIES

## Cases

*Brown v. Entm't Merchants Ass'n*,
564 U.S. 786, 802 (2011) ........ 8, 10

*City of Austin v. Reagan Nat'l Adver. Of Austin, LLC*,
596 U.S. 61 (2022) ........ 10

*Forsyth Cnty. v. Nationalist Movement*,
505 U.S. 123 (1992) ........ 11

*Hoelzer v. Stamford*,
933 F.2d 1131 (2d Cir. 1991) ........ 2

*Lakewood v. Plain Dealer Pub. Co.*,
486 U.S. 750 (1988) ........ 11, 14

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........ 6, 7, 8, 11, 13, 14

*Republican Party of Minn. v. White*,
536 U.S. 765 (2002) ........ 7–8

*Turner Broad. Sys. v. FCC*,
512 U.S. 622 (1994) ........ 6

## Constitutions, Statutes & Codes

Salina, Kan., Code of Ordinances art. X § 42-500 ........ 8

Salina, Kan., Code of Ordinances art. X § 42-501 ........ 5

Salina, Kan., Code of Ordinances art. X § 42-502 ........ 5

Salina, Kan., Code of Ordinances art. X § 42-503 ........ 5

Salina, Kan., Code of Ordinances art. X § 42-764 ........ 4, 5, 10, 11, 12

U.S. Const. amend. I ........ 2

## Other Authorities

Christian Ehret, *Mural Rights: Establishing Standing for Communities Under American Moral Rights Laws*, 10 U. Pitt. J. Tech. L. & Pol'y 3, 3 (2010) ........ 2

Christina Chloe Orlando, *Note: Art or Signage?: The Regulation of Outdoor Murals and the First Amendment*, 35 Cardozo L. Rev. 867 (2013) .......... 2

Dallin H. Oaks, *Defending Our Divinely Inspired Constitution*, *April 2021 General Conference*, The Church of Jesus Christ of Latter-Day Saints, https://www.churchofjesuschrist.org/study/general-conference/2021/04/51oaks?lang=eng (last visited March 30, 2026) . 13

David Vergun, *DOD Examining Unidentified Anomalous Phenomena*, U.S. Dep't of War (Nov. 14, 2024), https://www.war.gov/News/News-Stories/Article/Article/3965403/dod-examining-unidentified-anomalous-phenomena. .......... 3

Doctrine and Covenants: 101:77–80 (The Church of Jesus Christ of Latter-Day Saints, 1835) .......... 13

John Gillespie Magee, Jr. *High Flight*, PITTSBURGH POST GAZETTE (November 12, 1941) .......... 9

## INTEREST OF *AMICUS CURIAE*[1]

The Liberty Justice Center ("LJC") is a nonpartisan public-interest litigation firm that pursues strategic, precedent-setting litigation aimed at revitalizing constitutional restraints on government power and protecting individual rights. LJC is interested in this case because protecting free expression from arbitrary application of government speech restrictions is vital to a free society. LJC frequently represents individuals where the government attempts to limit speech and refuses to adhere to constitutional requirements that protect our right to free expression.

[1] Pursuant to Fed. R. App. P. Rule 29, no parties nor parties' counsel authored or consulted on this brief in whole or in part. No person, parties, nor parties' counsel contributed money intended to fund preparation or submission of this brief.

## SUMMARY OF THE ARGUMENT

Since the ancient man of 30,000 years ago, murals have been a medium of artistic expression. Christina Chloe Orlando, *Note: Art or Signage?: The Regulation of Outdoor Murals and the First Amendment*, 35 Cardozo L. Rev. 867, 892 (2013). Mural art "brings members of communities together and adds to the unique cultural identity of various neighborhoods." Christian Ehret, *Mural Rights: Establishing Standing for Communities Under American Moral Rights Laws*, 10 U. Pitt. J. Tech. L. & Pol'y 3, 3 (2010). Mural art revitalizes urban communities. *Id*. Mural art renews the collective pride of a downtrodden nation. *Hoelzer v. Stamford,* 933 F.2d 1131, 1133 (2d Cir. 1991) (discussing President Roosevelt's Works Progress Administration initiative that painted thousands of murals in public buildings throughout the United States during the Great Depression). Today, Salina, Kansas, carries on this generational tradition by embracing mural art to add vibrancy and build pride in the community. But Salina has failed to carry on another vital American tradition – the First Amendment right to expression free from government interference. U.S. Const. amend. I.

This case is about murals and the messages they convey. One of these murals is not like the other:



(App. Vol. 1 at 30).


(App. Vol. 7 at 15).

Both are on the side of a building in Salina. Both are constructed using paint. Both are colorful. Both are roughly the same size. Yet, one mural is a regulated sign because it depicts unidentified anomalous phenomena (UAP) as burgers on the side of a restaurant.[2] The other is

[2] In November 2024, the Department of War adopted "unidentified anomalous phenomena (UAP)" to replace the colloquial "unidentified flying object (UFO)" first used by the United States Air Force in 1952. David Vergun, *DOD Examining Unidentified Anomalous Phenomena*, U.S. Dep't of War (Nov. 14, 2024), https://www.war.gov/News/News-Stories/Article/Article/3965403/dod-examining-unidentified-anomalous-phenomena.

unregulated art because it depicts the American flag as the night sky over the Great Plains. To put it succinctly, the difference between the two murals is content. To discern whether art is a regulated sign or an unregulated mural, the Salina Code compels officials to focus on the specific content of the mural art. The expansive language of the Salina Code bestows broad and unfettered discretion upon Salina officials to interpret a mural's message. The content of the mural determines whether a sign permit is required. Salina's permitting scheme represents an unconstitutional content-based prior restraint on speech. And the broad language of the Salina Code creates a constitutionally impermissible risk of subjective and arbitrary government suppression of free expression.

## ARGUMENT

### I. Salina's mural / sign distinction is content-based speech regulation subject to strict scrutiny.

#### A. The Salina Code's distinction between a sign and mural is arbitrary.

Salina's definition of "sign" has been unchanged since 1966. (App. Vol. 7 at 159). Signs in Salina "announce, direct attention to, or advertise." Salina, Kan., Code of Ordinances art. X § 42-764(2)

(hereinafter "Salina Code"). Signs in Salina are regulated and subject to restrictions including permitting requirements and cumulative area limitations for each parcel. *Id.* at art. X §§ 42-502–42-503. Signs in Salina may not be "painted" until a sign permit has been obtained. *Id.* at art. X § 42-501. Displays, on the other hand, are simply "calculated to attract the attention of the public." *Id.* at art. X § 42-764. Displays, including murals, in Salina are not regulated. (Appellant's Br. 19). Salina officials decide whether a mural is a regulated sign or unregulated display by evaluating whether it "pertains to or references the goods or services for sale." (App. Vol. 7 at 136–7). While the Sign Code neither articulates nor infers this commercial analysis, Salina's own example for this evaluation was "the depiction of hamburger on the Cozy building wall." Salina Code art. X § 42-764; App. Vol. 7 at 134.

Salina's Planning and Zoning Administrator, Dean Andrew, testified on the process to determine whether displays are regulated signs. (App. Vol. 7 at 152; App. Vol. 8 at 31). To make this determination, Salina officials must review the display itself. (App. Vol. 8 at 31–2). To determine whether a display "announces," Salina officials review the display to "look to see whether it declares some fact or occurrence or

event or some entity." *Id.* at 32. To determine whether a display "directs attention," Salina officials look for "something in the visual display" that "points to or directs attention to a particular location or position **or** something that's occurring in their building." *Id.* (emphasis added). Application of the Salina Sign Code requires threshold analysis of the artwork's content. The Salina officials first view the display and interpret its message. Only then, after passing judgement on a display's content, do Salina officials decide whether it is an unregulated mural or, in the Cozy Inn's case, a mural regulated as a sign.

### B. The Sign Code fails strict scrutiny because it is underinclusive.

Salina's Sign Code is subject to strict scrutiny because it subjects murals to different regulatory schemes based on their content. "[L]aws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 658 (1994). Sign codes are facially content-based when the manner in which signs are displayed is prescribed by the sign's communicative content. *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015). In *Reed*, the town's sign code created twenty-three categories of signs. *Id.* at 159–61. The categories were

based on the message conveyed, including "ideological signs," "political signs," and "directional signs" and imposed varying size, location, and durational restrictions on each category. *Id.* The town's code was subject to strict scrutiny because it imposed a content-based restriction on speech in part by "singl[ing] out signs bearing a particular message: the time and location of a specific event." *Id.* at 171. Like the Town of Gilbert, Salina's Sign Code creates categories—unregulated murals and murals regulated as signs—based on the particular message the art conveys.

Salina officials admit they must review a mural's contents before categorizing whether the mural is regulated as a sign or unregulated. (*See eg*. App. Vol. 4 at 242; App. Vol. 5 at 16–17, 21, 98–100, 113–115). The officials review myriad aspects of the mural to determine whether it announces, directs, or advertises. (App. Vol. 12 at 141–2). It is only after reviewing the mural's content that officials determine whether it is subject to the Sign Code regulations.

Salina's Sign Code cannot meet the high burden of strict scrutiny. Underinclusive content-based speech restrictions fail strict scrutiny. *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002) (quoting

*Florida Star v. B.J.F.*, 491 U.S. 524, 541–42 (1989) (Scalia, J., concurring) ("[A] law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction upon truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited."). "Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011). A stated goal of Salina's content-based regulation is to protect drivers and pedestrians and protect Salina's aesthetic appearance. Salina Code § 42-500(3)–(4). However, Salina cannot strictly limit certain categories of signs when other types proliferate and create the same hazards. *Reed,* 576 U.S. at 157 (citing *Cincinnati v. Discovery Network, Inc.* 507 U.S. 410, 425 (1993)). Murals proliferate Salina. (App. Vol. 7, 8–12). Artists paint new murals each autumn at the annual Boom! Salina Street Art and Music festival. *Id.* These murals make downtown Salina vibrant and aesthetically pleasing. Yet each also draws the eye of drivers and pedestrians away from the roads and sidewalks.

Take, for one example, the unregulated mural of Amelia Earhart gazing happily from her cockpit into the sky.



(App. Vol. 7 at 21)

Some drivers, pedestrians, and passers-by are likely inspired to follow the gaze of their fellow Kansan. They may lift their eyes to the sky if just to dream of when they once "slipped the surly bonds of Earth and danced the skies on laughter-silvered wings." John Gillespie Magee, Jr. *High Flight*, PITTSBURGH POST GAZETTE (November 12, 1941). Yet driving or walking while looking up at the sky thinking of the wonder of human flight—or simply driving while looking at Ameila Earhart instead of the road—is precisely the type of danger Salina seeks to mitigate. It is dangerous. But it is no more dangerous than driving or walking while reflecting on a flight of alien burger UAPs attacking Earth with condiments. The near omnipresence of murals in

Salina demonstrates the underinclusiveness of its Sign Code. The regulation of Cozy Inn's mural demonstrates that Salina "disfavors a particular speaker or viewpoint." *Entm't Merchants Ass'n*, 564 U.S. at 802). The Sign Code fails strict scrutiny.

## II. The boundless discretion bestowed by the Salina Code's expansive language distinguishes *City of Austin*.

Salina seeks refuge in *City of Austin v. Reagan Nat'l Adver. Of Austin, LLC*, 596 U.S. 61 (2022); (Appellant's Brief at 23–25). Specifically, Salina seeks refuge in a relaxed standard of scrutiny for disparate treatment of on-premises and off-premises signs. *City of Austin*, 596 U.S. at 76; (Appellant's Brief at 23–25). Yet a plain reading of the Salina Code makes no such distinction between on-premises and off-premises signs. A sign in Salina is "used to announce, direct attention to, or advertise." Salina, Code art. X § 42-764(2). To where must the display direct attention to be considered a sign? The Salina Code is silent. What must the display announce to be considered a sign? The Salina Code is silent. This statutory silence grants Salina officials arbitrary and extraordinary power to regulate nearly any mural as a sign, therefore barring the lower standard of *City of Austin*.

Assuming regulation of signs in Salina is content neutral, the scheme still fails Constitutional muster. "Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech." *Reed* 576 U.S. at 167. "[E]ven if the government may constitutionally impose content-neutral prohibitions on a particular manner of speech, it may not *condition* that speech on obtaining a license or permit from a government official in that official's boundless discretion." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 764 (1988) (emphasis original). Even with content-neutral speech restrictions, the Supreme Court has long been concerned with excessive governmental discretion "in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129 (1992). Excessive governmental discretion "has the potential for becoming a means of suppressing a particular point of view." *Id.* at 130–131 (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)). Salina officials can leverage the code's expansive language—"draw

attention to" and "announce"—to regulate any disfavored point of view by requiring a sign permit for a mural. Salina Code art. X § 42-764(2). One simply needs to take a virtual walk around Salina through the Appendices in this case to grasp the boundless discretion held by Salina officials to require sign permits.

Take, for example, this mural:




(App. Vol. 7 at 16).

Salina officials could reasonably conclude this mural announces, i.e. "declares some fact or occurrence:" that Jesus Christ is the Son of God. (App. Vol. 8 at 32). Or, recognizing the depiction of "1788"— the year the United States Constitution was ratified — this mural could announce or declare the fact that the Constitution is "divinely inspired,"

a belief held by the Church of Jesus Christ of Latter-Day Saints.[3] "[O]ne could easily imagine a Sign Code compliance manager who disliked the Church's substantive teachings deploying the Sign Code to make it more difficult for the Church to inform the public of the location of its services," or in this case, announce beliefs of the Church of Jesus Christ of Latter-Day Saints. *Reed* 576 U.S. at 167-68.

Next, let's admire this mural:


(App. Vol. 7 at 32)

Here, with its heart in the middle of the Sunflower State, this mural "points to or directs attention to particular location or position." (App.

---

[3] Doctrine and Covenants: 101:77–80 (The Church of Jesus Christ of Latter-Day Saints, 1835); *See also*, Dallin H. Oaks, *Defending Our Divinely Inspired Constitution*, *April 2021 General Conference*, The Church of Jesus Christ of Latter-Day Saints, https://www.churchofjesuschrist.org/study/general-conference/2021/04/51oaks?lang=eng (last visited March 30, 2026).

Vol. 8 at 32). It directs the viewer to the very place he is standing: Salina, Kansas. (App. Vol. 8 at 32). And the mural announces, i.e. “declares some fact or occurrence,” that Salina is a welcoming and accepting community filled with love for all people. (App. Vol. 8 at 32). Yet one could imagine a Salina official who dislikes communities and policies of inclusion deploying the sign code’s permitting requirement to make it more difficult to display this mural. *Reed* 576 U.S. at 167–68.

The uninhibited discretion granted to Salina government officials through the expansive language of the Salina Code is a dangerous threat to First Amendment protections. Through wholly subjective and arbitrary content-based analysis, Salina officials control which messages and expressions require permits and which do not. A mere presumption that officials will act in good faith does not cure a statute bestowing “unbridled discretion” on officials making permitting decisions. *Lakewood*, 486 U.S. at 770. The record below is replete with arbitrary and subjective choices whether to regulate individual murals in Salina. Even if the Salina Code is content neutral, it violates the First Amendment. *Id.*at 764.

## III. Conclusion

In Salina, Burger UAPs are regulated.



(App. Vol. 1 at 30).

In Salina, an amateur photographer directing the viewer to the train yard is unregulated.



(App. Vol. 7 at 28).

In Salina, the state flower, music, and the Kansas City Royals are announced, unregulated, and celebrated.


(App. Vol. 7 at 19).



(App. Vol. 7 at 142).

In Salina, the First Amendment was violated when officials acted arbitrarily and subjectively to require the Cozy Inn to obtain a sign permit based on the content of its mural.

Date: April 10, 2026

Respectfully submitted,

Brendan J. Philbin

Brendan J. Philbin
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78737
512-481-4400
bphilbin@libertyjusticecenter.org

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(g)(1) because it contains 2,498 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point proportionally spaced Century Schoolbook typeface using Microsoft Word.

Dated: April 10, 2026

Brendan J. Philbin

Brendan J. Philbin
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78737
512-481-4400
bphilbin@libertyjusticecenter.org

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, I electronically filed the foregoing corrected brief using the Court's CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the Court's CM/ECF system.

Brendan J. Philbin

Brendan J. Philbin
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78737
512-481-4400
bphilbin@libertyjusticecenter.org