**CASE NO. 25-3225**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

Cozy Inn, Incorporated,
d/b/a The Cozy Inn, *et al*.

Plaintiffs-Appellees,

v.

City of Salina, Kansas

Defendant-Appellant.

---

On Appeal from the United States District Court
For the District of Kansas
The Honorable Judge Toby Crouse
D.C. No. 6:24-cv-01027-TC

---

**REPLY BRIEF OF APPELLANT CITY OF SALINA, KANSAS**

---

Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
Fairfield and Woods, P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com
*Attorneys for Defendant-Appellant*
*City of Salina, Kansas*

Respectfully submitted,
April 15, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ 4

GLOSSARY ........................................................................................... 8

REPLY TO STATEMENT OF THE CASE ................................................ 11

ARGUMENT .......................................................................................... 20

I. THE DISTRICT COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT BECAUSE THE SIGN CODE IS CONTENT-NEUTRAL AND SATISFIES INTERMEDIATE SCRUTINY. ..................................... 20

A. Appellees' Definition of "Sign" Is a Straw Man That Does Not Appear In the Sign Code, District Court Order, or Record. The Actual Text Is Content-Neutral. ................................ 20

B. This Is Not a Commercial Speech Case. ........................................... 21

C. The Sign Code Is Neither Content-Based Nor Speaker-Based. ................................................................................ 22

D. Salina's Definition of "Sign" Satisfies Intermediate Scrutiny. ............................................................................. 29

II. THE DISTRICT COURT ERRED IN FINDING SALINA'S CONDUCT CONSTITUTED AN UNCONSTITUTIONAL PRIOR RESTRAINT AS APPLIED. ......................................................... 33

A. The District Court Granted Salina's Motion for Summary Judgment on Appellees' Vagueness Claim, and Did Not Find that the Sign Code Lacked Narrow, Objective and Definite Standards ................................................................ 33

B. Under the Circumstances of This Case, Salina's Decision to Hold Appellees' Sign Permit Application Was a Courtesy, Not an Impermissible Prior Restraint. ............................... 34

CONCLUSION ........................................................................................................37

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ...................................................................................................39

CERTIFICATE OF SERVICE ...........................................................................40

CERTIFICATE OF DIGITAL SUBMISSION ......................................................42

# TABLE OF AUTHORITIES

## Cases

*Am. Target Advert., Inc. v. Giani*,
199 F.3d 1241 (10th Cir. 2000) ....................35

*Bee's Auto, Inc. v. City of Clermont*,
8 F. Supp. 3d 1369 (M.D. Fla. 2014) ....................27

*Central Radio Co. Inc. v. City of Norfolk, Va.*,
811 F.3d 625 (4th Cir. 2016) .................... 24, 25

*City of Austin v. Reagan Nat'l Adv. of Austin, Inc.*,
596 U.S. 61 (2022).................... 15, 16, 20, 21, 23, 29

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994)....................31

*City of Lakewood v. Plain Dealer Pub. Co.*,
486 U.S. 750 (1988)....................21

*Clark v. City of Williamsburg, Kansas*,
388 F. Supp. 3d 1346 (D. Kan. 2019),
*aff'd*, 844 F. App'x 4 (10th Cir. 2021) ....................27

*Commonwealth of Puerto Rico v. Franklin Cal. Tax-free Trust*,
579 U.S. 115 (2016)....................20

*Complete Angler, LLC v. City of Clearwater, Fla.*,
607 F. Supp. 2d 1326 (M.D. Fla. 2009) .................... 25, 26

*Crane v. Commissioner*,
331 U.S. 1 (1941)....................13

*Edwards v. Valdez*,
789 F.2d 1477 (10th Cir. 1986) ....................13

*Estate of Taylor v. Salt Lake City*,
16 F.4th 744 (10th Cir. 2021) ....................35

*Evans v. Sandy City*,
944 F.3d 847 (10th Cir. 2019) ..........20

*Federal Bureau of Investigation v. Fikre*,
601 U.S. 234 (2024)..........20

*Ficker v. Talbot County, Md.*,
553 F. Supp. 3d 278 (D. Md. 2021)..........27

*Fogarty v. Gallegos*,
523 F.3d 1147 (10th Cir. 2008) ..........31

*Forsyth County, Ga. v. Nationalist Movement*,
505 U.S. 123 (1992).......... 17, 18, 33, 34

*Frisby v. Schultz*,
487 U.S. 474 (1988)..........32

*Harmon v. Norman*,
981 F.3d 1141 (10th Cir. 2020) ..........20

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,
452 U.S. 640 (1981)..........32

*Hill v. Colorado*,
530 U.S. 703 (2000)..........30

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988)..........13

*Kersten v. City of Mandan*,
389 F. Supp. 3d 640 (D.N.D. 2019) .......... 25, 26

*Loper Bright Ent. v. Raimondo*,
603 U.S. 369 (2024)..........16

*Members of the City Council of Los Angeles v. Taxpayers for Vincent*,
466 U.S. 789 (1984).......... 22, 30

*Metromedia, Inc. v. City of San Diego*,
453 U.S. 490 (1981)........................................................................29

*Minnesota Voters All. v. Mansky*,
585 U.S. 1 (2018)............................................................................34

*Neighborhood Enterprises, Inc. v. City of St. Louis*,
644 F.3d 728 (8th Cir. 2011) ........................................................27

*Packer Corp. v. State of Utah*,
285 U.S. 105 (1932)............................................................... 23, 29

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*,
64 F.4th 287 (5th Cir. 2023) ........................................................30

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)......................................................... 22, 23, 30

*Robbins v. Chronister*,
435 F.3d 1238 (10th Cir. 2006) ....................................................13

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)........................................................................17

*Solantic, LLC v. City of Neptune Beach*,
410 F.3d 1250 (11th Cir. 2005) ....................................................27

*StreetMediaGroup, LLC v. Stockinger*,
79 F.4th 1243 (10th Cir. 2023) ............................................... 29, 30

*University of Texas v. Camenisch*,
451 U.S. 390 (1981)........................................................................25

*Vidal v. Elster*,
602 U.S. 286 (2024)........................................................................15

*VoteAmerica v. Schwab*,
121 F.4th 822 (10th Cir. 2024) ............................................... 23, 24

*Wag More Dogs, Ltd. Liab. Corp. v. Cozart*,
680 F.3d 359 (4th Cir. 2012) ....................................................................28

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989)...................................................... 17, 18, 23, 24, 30, 34

*Young v. Town of Conway, New Hampshire*,
783 F. Supp. 3d 588 (D.N.H. 2025) ...................................................... 26, 27

**Regulations**

23 CFR § 750.102 ............................................................................... 15, 16

**Rules of Procedure**

10th Cir. R. 28.2 ........................................................................................8

10th Cir. R. 32 ..........................................................................................39

Fed. R. App. P. 32 .....................................................................................39

Fed. R. Civ. P. 56 ......................................................................................31

**Salina Municipal Code**

SMC § 42-581 ......................................................................................... 10, 18

SMC § 42-637 ................................................................................. 8, 14, 18, 33

SMC § 42-764 ..................................................................................... 8, 9, 10

SMC Chapter 42 Article X ............................................................................10

SMC Chapter 42 Article XIV .......................................................................10

# GLOSSARY

Pursuant to 10th Cir. R. 28.2(C)(4), Defendant/Appellant provides the following glossary of terms used in this brief:

| Term | Definition |
|---|---|
| Appellees | Plaintiffs/Appellees Cozy Inn, as defined below, and Howard, as defined below, individually or collectively. |
| Building | A "building" as defined by SMC § 42-637 as "any covered structure built for the support, shelter or enclosure of persons, animals, chattels or moveable property of any kind, and which is permanently affixed to the land." |
| Cozy, Cozy Inn, or The Cozy | Plaintiff/Appellee The Cozy Inn, Incorporated, d/b/a The Cozy Inn. |
| Cozy Sign | The painted display on The Cozy Inn building that is at issue in this case. |
| District Court Order | The Memorandum and Order issued by the District of Kansas on November 19, 2025, which is attached hereto and included in the Appendix at Vol. 16, pp. 47-81, along with the Court's corresponding Judgment in a Civil Case dated January 7, 2026, which attached hereto and included in the Appendix at Vol. 16, p. 84. |
| Display | The term "display" refers to the following text in the first paragraph of the definition of "sign" in SMC § 42-764: "any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character." |
| District Court | The United States District Court for the District of Kansas |

| Term | Definition |
|---|---|
| Howard | Plaintiff/Appellee Stephen Howard |
| Mural | The Sign Code does not define the term "mural." For the purposes of this Opening Brief, the term "mural" refers to an outdoor exhibit painted on a wall that does not fall with the Sign Code's parameters and that may include art, but does not announce, direct attention to, or advertise. *See* App. Vol. 1, p. 236 n.2; *see also* App. Vol. 7, p. 161. |
| Operative Phrase | The "operative phrase" refers to the phrase "used to announce, direct attention to, or advertise." It is the component of the definition of "sign" that is principally at issue in this case. |
| Salina | Defendant/Appellant, The City of Salina, Kansas |
| Sign | A "sign" as defined by SMC § 42-764:<br><br>any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character which:<br><br>(1) Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure or on the ground;<br><br>(2) Is used to announce, direct attention to, or advertise; and<br><br>(3) Is not located inside a building. |

| Term | Definition |
|---|---|
| Sign Code | SMC (as defined below) Ch. 42, Art. X, along with related definitions in SMC Ch. 42, Art. XIV (including but not limited to SMC § 42-764, defining the term "sign") and SMC § 42-581, relating to "nonconforming signs." |
| SMC | Salina Municipal Code |

## REPLY TO STATEMENT OF THE CASE

The key question before the Court is whether Salina may constitutionally confine its definition of "sign" to outdoor displays that are "used to announce, direct attention to, or advertise," or whether the First Amendment requires it to redefine the term "sign" in a manner that is contrary to its historic and common-sense scope—sweeping in *all outdoor displays*, regardless of how they are used.

Salina's content-neutral, 60-year-old definition of "sign" constitutionally identifies what a sign is and by implication what a sign is not. The District Court correctly held that Salina's definition was clear enough to withstand a vagueness challenge and that it did not invite "arbitrary enforcement." App. Vol. 16, pp. 77-79. However, the District Court erroneously found the definition of "sign" facially unconstitutional. App. Vol. 16, p. 79.

The Response goes to great lengths to distract the Court from the actual text that Salina adopted in 1966. First, the Response attacks the definition of "sign" because it does not sweep in merely decorative "murals," and then proceeds to use these two terms interchangeably. Doc. 21 at 38.[1] Again and again, the Response insists that the Cozy Sign is a "mural." Doc. 21 at 11-13, 15-17, 19-21, 36, 46, 56, and 59. Under the plain language of the definition of sign, the Cozy Sign is a "sign,"

[1] Doc. page cites are to the ECF page number.

so it is therefore not a "mural."[2] The plain language controls. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). Regardless of the Response's vigorous attempt to recast the Cozy Sign as a "mural,"[3] Appellees never sought a determination—from Salina or the District Court—that Salina erred in identifying the Cozy Sign as a sign. Appellees are procedurally barred from seeking that relief from this honorable Court.

Second, although its glossary accurately states the definition of "sign," the Response's argument rewrites that definition, setting up two different straw men and setting them ablaze, generating heat and ample amounts of smoke. The first straw man is the contention that "all murals are signs . . . since they are . . . 'calculated to attract the attention of the public.'" Doc. 21 at 14. The Response constructs this straw man by outright omitting operative language from Salina's definition. Applying its

[2] The Sign Code has no reason to define "mural," but to keep the issues clear, Salina defined "mural" in its Opening Brief and this Reply Brief to be mutually exclusive with the term "sign." Doc. 18 at 12.

[3] Not only does it constantly refer to the Cozy Sign as a "mural," but also the Response represents that the Cozy Sign "is not intended to maximize profits, it is not a commercial advertisement, and Mr. Howard is not trying to 'brand the site' with it." Doc. 21 at 11-12, 59. Offering more distraction (and notwithstanding Howard's sworn testimony in which he admitted he can upsell better to customers that go inside his building) the Response represents: "The Cozy is no better off financially" if the attention of people who view the Cozy Sign is directed to the door and they act on that direction by entering the building. Doc. 21 at 12-13; App. Vol. 4, p. 68.

deliberately incomplete definition (and ignoring the safety concerns presented by signs), the Response contends that all "paint on the wall" is equal. Doc. 21 at 12, 37; Apps. Vol. 12, p. 218; Vol. 8, pp. 44, 48; Vol. 3, p. 153; Vol. 15, pp. 146-47 (Table 6).

The Response demands an absurd result. That is, if all displays are signs—no matter what they are used for, whether they are even a structure, and whether they are inside or outside of a building—then (1) a yard sign advertising a political candidate and a decorative fountain that includes, say, a pineapple or cherub, are the same thing; and (2) the Sign Code must also apply to paintings hung inside a museum, flags hung inside a sports arena, "historical pictures and articles" displayed inside of the Cozy, and even televisions at a sports bar. Well-established principles of statutory construction require the Court to reject the Response's straw man argument. *See Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986) ("absent ambiguity or irrational result, the literal language of a statute controls."); *Crane v. Commissioner*, 331 U.S. 1, 6 (1941) (words must be construed in their "ordinary, everyday sense."); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (The court "must look to the particular . . . language at issue, as well as the language and design of the statute as a whole."); *Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006) (the court must "choose the reasonable result over the 'absurd' one.").

The actual (complete) definition of "sign" prevents confusion, and Salina interprets it in the commonsense manner in which it is written. Displays are signs if they are "used to announce, direct attention to, or advertise" and are not "located inside a building" as the term "building" is defined in SMC § 42-637. App. Vol. 7, p. 149. These written, objective, content-neutral criteria are presented in plain English. App. Vol. 7, p. 150. The Response demands that the Court ignore the actual text, and treads perilously close to representing that the text does not even exist. Doc. 21 at 15 (asserting that the application of this text is "an *unwritten policy* of reviewing the display's content and the speaker's identity.") (emphasis added).

Before the Cozy Sign, the "paint on the wall" at the Cozy was white. App. Vol. 1, p. 29. When Appellees decided to use new "paint on the wall" to *announce* "don't fear the smell, the fun is inside," *direct attention to* the ordering window and building entrance with an arrow, and *advertise* that the Cozy sells burgers with ketchup, mustard, pickles, and onions, what they created was a *sign*. It does not matter if "the public adores it." Doc. 21 at 12. Sign permits are not (and cannot be) issued by plebiscite. Sign permits are issued by Salina staff if the application demonstrates compliance with the Sign Code's objective, content-neutral standards regarding size, number, and location.

The second straw man is the injection of handpicked, paraphrased, non-testimonial statements of Salina staff into the definition as if they were part of the

adopted text.[4] *See, e.g.*, Doc. 21 at 40. Staff comments are not germane to this facial inquiry. Moreover, staff comments regarding commercial transactions or goods or services for sale that refer to the Sign Code and the Cozy Sign merely illustrate the basic understanding that the Cozy Sign is a sign because it is "used . . . to advertise."

"[H]istory, experience, and precedent" matter. *City of Austin v. Reagan Nat'l Adv. of Austin, Inc.*, 596 U.S. 61, 76 (2022); *see also Vidal v. Elster*, 602 U.S. 286, 300-01 (2024) (in considering the "scope of the First Amendment," the Court will consider "history and tradition."). The Response's contention that "[e]very painted display is the same thing" defies history, experience, and precedent. Doc. 21 at 38. Historically, what differentiates "signs" is that they are used to convey specific information or advertisements. Signs are not just "paint on the wall." Signs are *defined* by their purpose: they announce an idea, product, or event, direct attention to something (*e.g.*, a location, property, place, or event), or advertise.

Like Salina, the federal government has defined "sign" in relation to the purpose of the display for more than 50 years. In fact, the federal government's definition specifically includes paintings (and is definitively not limited to "billboards"). *See* 23 CFR § 750.102(m) ("Sign means any outdoor sign, display,

---

[4] Some of these misrepresent the context. *See* App. Vol. 4, p. 107 (relaying understanding of a coffee house hypothetical from a "Supreme Court case" at City Commission meeting).

device, figure, *painting*, drawing, message, placard, poster, billboard, or other thing which is *designed, intended, or used to advertise or inform* . . ." (emphasis added)). Like the federal definition, Salina's definition of "sign" simply reflects longstanding common understandings about what signs are.

Salina's constitutional authority to regulate signs in a content-neutral fashion is well beyond dispute. The First Amendment does not compel this Court to redefine commonly understood words like "sign" in a way that reaches a "bizarre result." *Austin*, 596 U.S. at 76. Indeed, the fact that under the federal definition, "Sign means any outdoor sign . . ." suggests that the common understanding about what signs are is actually precise enough for a reflexive definition. 23 CFR § 750.102(m). There is no legal reason to compel Salina to regulate mere decorative elements in the same way it regulates signs.

Salina implemented its common-sense, content-neutral definition of "sign" as adopted for nearly 60 years before the District Court struck it down. App. Vol. 15, p. 52. If this Court were unsure about the definition's meaning, "[c]areful attention to the judgment" of Salina in interpreting its own code "may help inform [the] inquiry." *Loper Bright Ent. v. Raimondo*, 603 U.S. 369, 412-13 (2024). To that end, the weight that the Court accords to Salina's interpretation depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give

it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

In its opening brief, Salina cited *Ward v. Rock Against Racism* for the proposition "individual cases" and hypotheticals are "beside the point" in this case. *See Ward v. Rock Against Racism,* 491 U.S. 781 (1989). That is controlling law. "Facial attacks on the discretion granted a decisionmaker are not dependent on the facts surrounding any particular permit decision." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 133 n.10 (1992). Still, the Response doubles down with lengthy recitations about individual cases and hypotheticals, urging this Court to amplify the District Court's misapplication of law. The Response's relentless focus on individual cases and hypotheticals distracts from the unavoidable fact that the Sign Code regulates signs "in the aggregate. . . . [it doesn't] just regulate Cozy Inn." App. Vol. 3, p. 73.

The Response's picture book of individual cases is a smokescreen that fails to disclose which depicted displays (or parts of displays) are actually regulated signs. A sign permit was issued for the Sharp Performance sign depicted at Apps. Vol. 4, p. 139; Vol. 15, p. 43. The text on the door depicted at App. Vol. 4, p. 140 is a small sign that is allowed by the Sign Code. App. Vol. 8, p. 45. The "Original Grande" sign at App. Vol. 4, p. 144 is a sign that exceeds the limits of the Sign Code (a code enforcement issue). Apps. Vol. 14, p. 58; Vol. 15, p. 31. The historic Bull Durham

sign at App. Vol. 4., p. 134 is a "nonconforming sign" that is allowed to remain in place not by way of an "unwritten policy," but pursuant to SMC § 42-581. Apps. Vol. 13, p. 58; Vol. 13, p. 64; Vol. 4, p. 25 (¶158); Vol. 11, p. 118 (¶158). The Yard "mural" is not a sign because it is inside of a covered structure, built for the support, shelter or enclosure of persons, which is permanently affixed to the land, which constitutes a "building" under SMC § 42-637. App. Vol. 7, p. 149. The facts surrounding the "Symphony of Sunflowers" are disputed, as discussed in the Opening Brief. Doc. 18 at 58-59. The Response mentions a "bike-themed mural" apparently painted by Colin Benson, but it does not show or provide foundation for it, and its identity, location and permit status are not part of the summary judgment record. Doc. 21 at 24. Even if *Ward* and *Forsyth County* did not clear the smoke by ruling out their relevance, Appellees' representations about these displays are inaccurate or disputed, precluding summary judgment.

The Response also wrongly represents that certain messages are "prohibited" by the Sign Code, including: "Turn to Jesus," "coffee branch mural," "dove mural," and "Romney mural." Doc. 21 at 41-42. Even if these were signs, they would not be prohibited by the Sign Code. They would simply be subject to content-neutral size, number, and location regulations, just like other signs.

Content-neutral sign regulations have long been upheld by courts. Salina's definition of sign is commonly used and unremarkable. App. Vol. 15, pp. 106-21.

Considerable history, experience, and precedent, let alone common understandings, would be upended if *all* outdoor displays and decorative elements were swept into the term "sign." The First Amendment does not require a definition of the term "sign" that is far afield from common understandings about what signs are.

Finally, as to prior restraint, Appellees submitted an application that they knew could not be approved, and had it been timely processed, it would have been denied. App. Vol. 16, p. 77. As such, *permissible speech* was not restrained. The permit hold was a courtesy, not a civil rights violation. Moreover, whether Appellees consented to the permit hold was a matter of disputed fact that precluded summary judgment. App. Vol. 8, pp. 260-62, 264.

The District Court did not decide the "unbridled discretion" element of prior restraint. App. Vol. 16, p. 75. However, it decided the closely related vagueness claim in Salina's favor, finding that the Sign Code does not "authorize or even encourage[] arbitrary and discriminatory enforcement." App. Vol. 16, p. 77 (quotation omitted). The District Court correctly found that the text of the Sign Code has the requisite clarity. App. Vol. 16, p. 78. The text of the Sign Code fetters the discretion of the decision-maker, avoiding impermissible prior restraints based on "unbridled discretion."

# ARGUMENT

## I. THE DISTRICT COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT BECAUSE THE SIGN CODE IS CONTENT-NEUTRAL AND SATISFIES INTERMEDIATE SCRUTINY.

### A. Appellees' Definition of "Sign" Is a Straw Man That Does Not Appear In the Sign Code, District Court Order, or Record. The Actual Text Is Content-Neutral.

The Response concocts and then attacks several definitions of "sign" that do not actually exist. Salina's actual regulation is facially content-neutral because: (1) it "does not draw content-based distinctions on its face," and (2) it was not adopted because of the government's disagreement with a message. *Evans v. Sandy City*, 944 F.3d 847, 854 (10th Cir. 2019).

Part one of the test turns on the text. *See Austin*, 596 U.S. at 64, 76; *Harmon v. Norman*, 981 F.3d 1141, 1148 (10th Cir. 2020). The Response does not dispute that the text is content-neutral. *See* App. Vol. 7, p. 150. This Court should not accept the Response's invitation to rewrite the plain language of the Sign Code by deleting key provisions or injecting new ones. *Commonwealth of Puerto Rico v. Franklin Cal. Tax-free Trust*, 579 U.S. 115, 125 (2016). Adjudicating the constitutionality of a regulation that does not actually exist is arguably beyond the jurisdiction of the Court. *Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) ("federal judges are not counselors or academics; they are not free to take up hypothetical questions that pique a party's curiosity or their own.").

Part two of the test involves Salina's purpose for adopting the regulation. Salina's articulated purposes do not reference content. App. Vol. 7, p. 142. The Response cites no undisputed material facts to the contrary. Instead, without evidence, the Response suggests that the 1966 City Commission "disagree[d] with certain messages." Doc. 21 at 47.

It is common knowledge that in 1966, Vietnam War escalation, anti-war protests, race riots, counter-culture, and mass shootings weighed heavily on the national conscience. Yet according to the Response, the 1966 City Commission "disagreed with" images of "steaming cups of coffee," "coffee pots," "airplanes," "flying pizza slices," "soup cans," "doves," and "coffee branches," and text like "Let's Go Chiefs!", so it adopted the Sign Code to censor them. Doc 21 at 18-20, 27, 41, 47. The Court should not "countenance[] such linguistic prestidigitation." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 769 (1988). Appellees' hypotheticals are not evidence of a content-based purpose. They are not evidence at all. The Sign Code is content-neutral.

**B. <u>This Is Not a Commercial Speech Case.</u>**

This is not a commercial speech case. "The Court . . . must determine which level of scrutiny applies to the manner in which the provisions *actually regulate speech*." *Austin*, 596 U.S. at 69 n.3 (emphasis added). The contention in the Response that Salina only regulates displays that are "part of a commercial

transaction," contain a "commercial message," or "include[] a message that pertains to the goods or services for sale" is not supported by the record. Doc. 21 at 40; App. Vol. 12, p. 133. Indeed, even the Response cannot maintain that false premise—it speculates that "a Turn to Jesus' painting would be a regulated sign . . . ." Doc. 21 at 27. It also suggests that the Cozy Sign is not commercial speech. Doc. 21 at 11-13, 59.

"Commercial speech" is relevant as to the Cozy Sign not because the Sign Code is concerned with "commercial speech"—it is not—but because the Cozy is a business, business advertisements are "commercial speech," and the Cozy Sign is plainly "used to . . . advertise." However, the record shows that the Sign Code is also applied to noncommercial signs, including by way of example the KU School of Medicine / School of Nursing sign, for which a sign permit was issued. Apps. Vol. 5, pp. 33-34, Vol. 14, p. 40.

### C. <u>The Sign Code Is Neither Content-Based Nor Speaker-Based.</u>

The Sign Code is not content-based. A regulation is "content-based" if its text "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The definition of "sign" does not reference any "topic, idea, or message." There is "not even a hint of bias or censorship" in it. *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) ("*Vincent*"). Moreover, despite the Response's

suggestions to the contrary, regulation of "solicitation" (advertising) is "not content-based" if it does not "discriminate based on topic, subject matter, or viewpoint." *Austin*, 596 U.S. at 72. The definition of "sign" addresses the purpose of the display, but it does not "swap[] an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result." *Id.* at 74-75. It is therefore constitutionally sound.

A regulation may also be "content-based" if it was "*adopted* . . . because of disagreement with the message [the speech] conveys." *Reed*, 576 U.S. at 164. (emphasis added; quotation omitted). As detailed in Section I.A., *supra*, at 21, that situation is not present here. Incidental "here, not there" situations will happen. These are both permissible and unavoidable. *See Ward*, 491 U.S. at 797; *Austin*, 596 U.S. at 75. Yet even if "here, not there" impacts were intentional, "[a]s early as 1932, the Court had already approved a location-based differential for advertising signs." *Austin*, 596 U.S. at 75. That 1932 case addressed signs "on any . . . object or place of display," not just billboards. *Packer Corp. v. State of Utah*, 285 U.S. 105, 107 (1932).

The Sign Code is not "speaker-based" either because it is not "based on the identity of the speaker." *VoteAmerica v. Schwab*, 121 F.4th 822, 846 (10th Cir. 2024). The Response does not identify anything in the text that singles out particular speakers for differential treatment. The Cozy Sign is subject to regulation because it

is a sign, not because of Appellees' identities. A content-neutral regulation may permissibly have "an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791. The Response attempts to bootstrap that "incidental effect" into a "speaker based" charge.

Yet even if there were a speaker basis, "laws favoring some speakers over others demand strict scrutiny" only "*when the legislature's speaker preference reflects a content preference.*" *VoteAmerica*, 121 F.4th at 846 (emphasis in original). The Sign Code does not relate to or confine topics, ideas, messages, or viewpoints, and the definition of "sign" was not adopted to effectuate a content preference.

The Response urges this Court to apply cases from outside of the Tenth Circuit with facts that are far afield from this case. Salina's sign code is different in that it applies to all outdoor displays that are "used to announce, direct attention to, or advertise." That means, while displays depicting products, services, or businesses could be regulated if they are "used to advertise" (because that is what signs do), such advertisements are not differentiated from any other type of advertisement (*e.g.*, an advertisement for an event, a charitable organization, a public service, or a political candidate). Salina's definition of "sign" has no content-based exceptions, and Salina officials do not have to judge whether a display is "art."

*Central Radio Co. Inc. v. City of Norfolk, Va*. presents a different case. *See* 811 F.3d 625 (4th Cir. 2016). The regulation at issue in Central Radio "exempted

'works of art' that 'in no way identif[ied] or specifically relate[d] to a product or service,' but it applied to art that referenced a product or service." 811 F.3d at 633. It also "exempted governmental or religious flags and emblems, but applied to private and secular flags and emblems." *Id.* As such, not only did Norfolk officials have to be able to identify "art," they also had to look for messaging identifying products or services or "private and secular flags and emblems" to the exclusion of all other types of announcements, directions, or advertisements. As detailed above, that is not the case in Salina.

The Response relies heavily on *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326 (M.D. Fla. 2009) and *Kersten v. City of Mandan*, 389 F. Supp. 3d 640 (D.N.D. 2019). Not only are they unpersuasive because they are factually distinguishable, but their procedural postures make them of little value. *Complete Angler* was an as-applied challenge at the preliminary injunction stage. 607 F. Supp. 2d at 1334. *Kersten* was an *ex parte* temporary restraining order. 389 F. Supp. 3d at 641. As such, they are not even binding on subsequent proceedings in the courts that decided them. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

The *Complete Angler* Court specifically did not consider the plaintiff's facial challenge. *Id.* at 1335 n.13. *Complete Angler* is not that different from *Central Radio*, in that the issue pertained to specific regulatory exemptions, including "drawings,

pictures, symbols, paintings or sculpture which do not identify a product or business and which are not displayed in conjunction with a commercial, for profit or nonprofit enterprise." *Id*. at 1331. Unlike Clearwater's code, Salina's regulation does not identify content or speakers. Moreover, unlike the Cozy Sign, the display at issue in *Complete Angler* contained no text and did not depict anything that was for sale in the plaintiff's bait shop. *Id*. at 1329.

In *Kersten*, the regulations at issue parsed speech in several ways (including subjugating political speech), prohibiting "murals that (1) 'convey a commercial message,' (2) use words that are a 'dominant feature of the art,' or (3) have 'political messages.'" 389 F. Supp. 3d at 643. Salina's Sign Code is not at all like Mandan's. It is unconcerned with whether messages are commercial or noncommercial, whether "words are a 'dominant feature,'" or whether "political messages" are depicted.

*Young v. Town of Conway*, *New Hampshire*, 783 F. Supp. 3d 588 (D.N.H. 2025) is far from "virtually identical." Doc. 21 at 48. In *Young*, "plaintiffs [made] no facial challenge to Conway's sign code." *Id*. at 592. The court held "Conway's sign code is at least arguably content-neutral," because, consistent with *Austin*, reading a sign to determine "only" if it depicts "products sold inside of a building it sits on" does not concern a "'substantive message.'" *Id*. at 601, 605. The court did "not rule that the sign code is unlawful or unconstitutional as written." *Id*. at 592.

"Neither does it rule that Conway could not lawfully regulate the Leavitt's display, or that the display does not violate the sign code *as written*." *Id*. "The court rules only that Conway's application of its sign code, and specifically its enforcement of the sign code to the Leavitt's sign in the particular manner it employed in this case, does not withstand any level of constitutional scrutiny." *Id.*

All of the other cases in the Response's string cite are similarly not pertinent because the regulations in those cases reached specific, substantive content. Doc. 21 at 43-44. *Clark v. City of Williamsburg, Kansas* was about "political signs." 388 F. Supp. 3d 1346, 1358-59 (D. Kan. 2019), *aff'd*, 844 F. App'x 4 (10th Cir. 2021). So was *Ficker v. Talbot County, Md*. *See* 553 F. Supp. 3d 278, 281 (D. Md. 2021). *Neighborhood Enterprises, Inc. v. City of St. Louis*, involved exceptions to the definition of sign that were based on substantive content (*e.g.*, "flags of nations, states and cities . . . ."). 644 F.3d 728, 738-39 (8th Cir. 2011). *Solantic, LLC v. City of Neptune Beach* involved similar exceptions. 410 F.3d 1250, 1256-57, 1263-67 (11th Cir. 2005) (*e.g.*, "flags and insignia only of a 'government, religious, charitable, fraternal, or other organization'" and signs for "guiding traffic and parking."). So did *Bee's Auto, Inc. v. City of Clermont* (*e.g.*, signs for "announcing the name of the proprietor and the nature of the business")—and Clermont's sign code also differentiated regulations for political signs. *See* 8 F. Supp. 3d 1369, 1372-72, 1381 (M.D. Fla. 2014).

More persuasive is the Fourth Circuit case of *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*. *See* 680 F.3d 359 (4th Cir. 2012). *Wag More Dogs* involved the following definition of "sign": "[a]ny word, numeral, figure, design, trademark, flag, pennant, twirler, light, display, banner, balloon or other device of any kind which, whether singly or in any combination, is *used to* direct, identify, or inform the public while viewing the same from outdoors." *Id*. at 362 (emphasis added). The owner of Wag More Dogs (a doggy daycare), painted a 960 square foot sign on the building's rear wall that "incorporated some of the cartoon dogs in Wag More Dogs' logo." *Id*. at 363. The City advised the owner that "For the mural to NOT be considered a sign, it may depict anything you like EXCEPT something to do with dogs, bones, paw prints, pets, people walking their dogs, etc. In other word [sic], the mural can not [sic] show anything that has any relationship with your business. If it does, then it becomes a sign." *Id*. The District Court "held that the Sign Ordinance was a content-neutral restriction on speech that *easily satisfied intermediate scrutiny*, rejecting Wag More Dogs' facial and as-applied challenges." *Id*. The Fourth Circuit affirmed. *Id*. at 374.

The Response urges this Court to apply a strict "read-the-sign" test that would render a regulation content-based if the government must read the sign to determine if and how its regulations apply to it. Doc. 21 at 45. The ink is barely dry on this Court's opinion that categorically rejected that approach. *See StreetMediaGroup,*

*LLC v. Stockinger*, 79 F.4th 1243, 1250 (10th Cir. 2023) ("The Court rejected 'the view that any examination of speech or expression inherently triggers heightened First Amendment concern.'"); *see also Austin*, 596 U.S. at 75 (opinion), 96 (Thomas, J. Dissenting).

The Response attempts to distinguish *Austin* because *Austin* involved "billboards" or "off-premises, location-based regulations." Doc. 21 at 46. The Response is wrong about that. First, the definition of "off-premise sign" at issue in *Austin* was not limited to billboards. *See Austin*, 596 U.S. at 66. Like the definitions at issue in *Packer* and *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), the definition in *Austin* reaches wall signs. *See Packer*, 285 U.S. at 107; *Metromedia,* 453 U.S. at 493 n.1, 493-94, 494 n.2, *Austin*, 596 U.S. at 66. These are all *sign cases*, not just "billboard" cases. As to the *Austin* case, Austin's content-neutral definition inherently excludes displays that are *not* used for "advertising a business, person, activity, goods, products, or services." *Austin*, 596 U.S. at 66. Finally (and ironically), many of the illustrative hypothetical and individual cases that are presented in the Response involve how the Sign Code would potentially allow a display in one location but not another. Doc. 21 at 11, 18, 23, and 28.

### D. <u>Salina's Definition of "Sign" Satisfies Intermediate Scrutiny.</u>

Because the definition of "sign" is content neutral, the three-pronged "intermediate scrutiny" test applies: (1) the governmental interests must be

substantial; (2) the regulation must advance those interests in a manner that "would be achieved less effectively absent the regulation"; and (3) the regulation must leave open "ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791, 797, 799 (quotation omitted).

Salina's interests in traffic safety, aesthetics, and property values are substantial as a matter of law. *StreetMediaGroup*, 79 F.4th at 1251; *Vincent*, 466 U.S. at 795. That these interests are implicated in a case involving a sign code does not have to be relitigated every time it comes up. *See Reed*, 576 U.S. at 173. Despite the Response's contentions to the contrary, substantial interests in traffic safety, aesthetics, and property values are not "billboard-specific." Doc. 21 at 50.

The Sign Code limits the size, number, and location of signs. That reduces sign clutter. That promotes Salina's substantial interests. The narrowly-tailored requirement does not require the regulation to be "the least restrictive or least intrusive means." *Hill v. Colorado*, 530 U.S. 703, 726 (2000). Since aesthetic interests are not quantifiable, deference is due to the "common-sense judgments of local lawmakers" to strike appropriate balances regarding the relationship between the size, number, and location of signs and the governmental interests that are implicated. *See Metromedia*, 453 U.S. at 508-09; *see also Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 64 F.4th 287, 293 (5th Cir. 2023). Even underinclusiveness is allowed, provided that it does not constitute an "attempt to

give one side of a debatable public question an advantage in expressing its views to the people." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994).

The Response inaccurately represents that Salina "did not produce any credible evidence . . ." regarding the elements of intermediate scrutiny. Doc. 21 at 48, 53. First, "[o]n summary judgment, a district court may not weigh the credibility of the witnesses." *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). The question is whether material facts are contested. Fed. R. Civ. P. 56(a). Second, as set out in detail in the Opening Brief, regardless of whether evidence is required as a legal matter, Salina produced ample evidence to establish the undisputed material facts of this case in its favor. Doc. 18 at 55-57, 59-64. That evidence included testimony that:

> [T]he more signs you have, the more information there is, sometimes the harder it is to really soak in information that you're trying to and it can become distracting when you're focusing on signs rather than driving or walking. And by limiting the number of signs, you reduce clutter. By limiting the size of signs, you limit signs that might be a distraction.

App. Vol. 3, p. 78. The Response confesses, "there is no evidence, caselaw, or accumulated judgments in the record that suggest *murals* create unique problems, or that they pose any safety hazards at all. Quite the opposite, in fact." Doc. 21 at 51 (emphasis added). But the Cozy Sign is not a "mural." It is a sign. The record shows that the fact that signs are "used to announce, direct attention to, or advertise," makes

them more distracting than a "mural" that is not used for those purposes. Apps. Vol. 12, p. 218; Vol. 15, pp. 206-08.

The Response contends that the alternative channels for communication are "not constitutionally adequate." Doc. 21 at 59. "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). Ample alternatives may include different fora or media. *Id*. at 654; *Frisby v. Schultz*, 487 U.S. 474, 483-84 (1988).

Appellees' dissatisfaction with the size limitations in the Sign Code is not a constitutional issue. Appellees have up to 63 square feet of sign area to allocate, and it is their choice how to do so based on what they want to announce, direct attention to, or advertise. App. Vol. 4, p. 173. The contention that a 63 square foot sign would be "incredibly difficult to see" is nonsense. The fact that Appellees do not want to use their ample alternative channels of communication does not make them constitutionally inadequate. App. Vol. 1, p. 30 ("Mr. Howard does not want to change, alter, or deviate from the rendition directly above ('completed rendition') . . . I want to paint my wall.").

## II. **THE DISTRICT COURT ERRED IN FINDING SALINA'S CONDUCT CONSTITUTED AN UNCONSTITUTIONAL PRIOR RESTRAINT AS APPLIED.**

### A. **The District Court Granted Salina's Motion for Summary Judgment on Appellees' Vagueness Claim, and Did Not Find that the Sign Code Lacked Narrow, Objective and Definite Standards.**

The Response incorrectly contends that "Salina does not have any 'narrow, objective, and definite standards' to differentiate signs from murals." Doc. 21 at 61. That is because the Response goes to great length to ignore or distort those standards. *See* pp. 12-15, 18, *supra*. The definition of "sign" includes objective criteria that fetter the discretion of the official to identify any given display as the subject of regulation. First, the official must determine whether the sign is a display (*see* p. 8, *supra*, for definition). Next the official must determine whether it is "a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure or on the ground." App. Vol. 7, p. 150. Next, the official must determine whether the display is "used to announce, direct attention to, or advertise." App. Vol. 7, p. 150. Finally, the official must determine that the display "is not located inside a building," as that term is defined by SMC § 42-637. App. Vol. 7, pp. 149-50. If the official finds that any one of these objective criteria is not met, then the display is not a sign.

The Response misapprehends *Forsyth County*. Mere errors in administration, even allegations of "uneven enforcement," are not grounds for striking the regulation

down as an unconstitutional prior restraint. *Forsyth County*, 505 U.S. at 133 n.10. Under *Forsyth County*, the prior restraint flaw must be present in the text of the regulation itself. In Salina, the definition of "sign" reflects common understandings, and even if there is imprecision in particular cases, it provides constitutionally sufficient clarity to allow for consistent application of the Sign Code to signs. *See Ward*, 491 U.S. at 794 (1989) (emphasis added) ("perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."); *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 21 (2018).

Appellees' challenge regarding "unbridled discretion" (and while Appellees never brought a selective enforcement claim, that suggestion too) is rooted in their misunderstanding (or misrepresentation of the record) regarding how the Sign Code is actually administered (*see* discussion of the Response's "picture book," pp. 17-18, *supra*). As the District Court correctly concluded in closely related context, the Sign Code contains objective criteria that fetter the discretion of the decision-maker. It is therefore not an impermissible prior restraint.

### B. Under the Circumstances of This Case, Salina's Decision to Hold Appellees' Sign Permit Application Was a Courtesy, Not an Impermissible Prior Restraint.

Instead of denying Appellees' sign permit application outright, Salina placed it on hold while it attempted to work with Howard to see if a code-based solution could be reached. Whether Appellees consented to the hold was a matter of disputed

fact. App. Vol. 8, pp. 260-62, 264. The Response does not resolve that dispute. It does not contend that a rational juror could conclude that a person who rejected Salina's offer to help would most likely have taken some action to communicate that decision, like rejecting the offer outright, demanding a decision on the application, withdrawing the pending application, or submitting an application for a code-compliant sign. Because the fact of Appellees' consent was disputed, summary judgment for Appellees on their claims regarding as-applied prior restraint was improper. *See Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 756 (10th Cir. 2021).

Yet the First Amendment does not require Appellees' consent in this nuanced case. App. Vol. 7, pp. 72-73. That is because "[t]ime limits upon a prior restraint allay the risk of indefinitely suppressing *permissible speech*." *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1253 (10th Cir. 2000) (citation omitted, emphasis added). Appellees rail against a so-called "deep freeze" that is "preventing Mr. Howard from finishing the mural." Doc. 21 at 62. However, Appellees knew their application, if timely processed, would be denied outright. App. Vol. 16, p. 77.

Salina's Sign Code is an adopted ordinance. Staff are charged with administering it. Even if "the public adores it," Staff did not have the discretion to favor Appellees' sign, give Appellees special treatment, waive the size limitations of the sign code for them, and then issue a sign permit to allow them to paint a sign that is much larger than the code allows. App. Vol. 5, p. 64.

Moreover, at any time, Appellees had the option to apply for a sign permit for a code-compliant sign. App. Vol. 5, p. 65. The Response does not contend otherwise. Consequently, the District Court's holding that Salina's actions were an unconstitutional prior restraint because they "forbade additional expressions while [Howard was] awaiting governmental approval" of his application is in error. App. Vol. 16, p. 76.

This Court should reverse the District Court Order granting summary judgment for Appellees as to as-applied prior restraint, and enter judgment in favor of Salina on that point.

## CONCLUSION

For the foregoing reasons, Salina respectfully requests this honorable Court: (1) **REVERSE** the District Court Order denying Salina's Motion for Summary Judgment, Doc. 106; (2) **REVERSE** the District Court Order granting Appellee's Motion for Summary Judgment, Doc. 104, and (3) **ENTER** judgment in **FAVOR** of Salina that (a) the definition of sign is constitutional on its face and (b) Salina did not impose an unconstitutional prior restraint as-applied.

Respectfully submitted this 15th day of April, 2026.

Todd G. Messenger
Name of Counsel

s/ Todd G. Messenger
Signature of Counsel

1801 California St., Ste 2600
Denver, CO 80202
(303) 830-2400
Mailing Address and Telephone Number

tmessenger@fwlaw.com
Email Address

Amanda C. Jokerst
Name of Counsel

s/ Amanda C. Jokerst
Signature of Counsel

1801 California St., Ste 2600
Denver, CO 80202
(303) 830-2400
Mailing Address and Telephone Number

ajokerst@fwlaw.com
E-Mail Address

Lee Katherine Goldstein
Name of Counsel

s/ Lee Katherine Goldstein
Signature of Counsel

1801 California St., Ste 2600
Denver, CO 80202
(303) 830-2400
Mailing Address and Telephone Number

lgoldstein@fwlaw.com
Email Address

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), this document contains 6,450 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 in 14-point Times New Roman font.

Fairfield and Woods, P.C.

*s/ Todd Messenger*
Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com

*Attorneys for Defendant-Appellant City of Salina, Kansas*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2026, I electronically filed the foregoing **OPENING BRIEF,** with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system and was served on the following counsel of record for the parties and movants for *amicus curiae* briefs ("Movants") in this case:

Samuel G. MacRoberts, Esq.
Jeffrey Shaw, Esq.
Sam@KansasJusticeInstitute.org
Jeff@KansasJusticeInstitute.org

**MOVANTS:**
Pacific Legal Foundation
Amy Peikoff, Esq.
Jeremy Talcott, Esq.
APeikoff@pacificlegal.org
JTalcott@pacificlegal.org

Goldwater Institute and Manhattan Institute
Timothy Sandefur, Esq.
litigation@goldwaterinstitute.org

Alliance Defending Freedom
John B. Bursch, Esq.
James A. Campbell, Esq.
Christine N. Marsden, Esq.
jbursch@ADFlegal.org
jcampbell@ADFlegal.org
cmarsden@ADFlegal.org

Institute for Justice
Robert Frommer, Esq.
Elizabeth (Betsy) Sanz, Esq.
Riley Grace Borden, Esq.
rfrommer@ij.org
bsanz@ij.org
rgborden@ij.org

Liberty Justice Center

Brendan J. Philbin, Esq.
bphilbin@libertyjusticecenter.org

National Federation of Independent Business, Inc.
J. Michael Connolly, Esq.
Paul R. Draper, Esq.
mike@consovoymccarthy.com
paul@consovoymccarthy.com

Fairfield and Woods, P.C.

*s/ Todd Messenger*
Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com

*Attorneys for Defendant-Appellant*
*City of Salina, Kansas*

## CERTIFICATE OF DIGITAL SUBMISSION

**Privacy Redaction Certification:** No privacy redactions were required.

**Paper Copy Certification:** If required to file additional hard copies, that the ECF submission is an exact copy of those documents.

**Virus Scan Certification:** The digital form of this document submitted to the Court was scanned for viruses using SentinelOne, Version 25.1.4.434, and according to the program the document is virus free.

Fairfield and Woods, P.C.

*s/ Todd Messenger*
Todd G. Messenger
Amanda C. Jokerst
Lee Katherine Goldstein
1801 California Street, Suite 2600
Denver, Colorado 80202
Tel: (303) 830-2400
Email: tmessenger@fwlaw.com
ajokerst@fwlaw.com
lgoldstein@fwlaw.com

*Attorneys for Defendant-Appellant*
*City of Salina, Kansas*